Case 1:00-cv-00148   Document 1   Filed in TXSD on 09/18/2000   Page 1 of 80

### IN THE UNITED STATES DISTRICT COURT
### FOR THE SOUTHERN DISTRICT OF TEXAS
### BROWNSVILLE DIVISION

H-00-3214

B-00-148

| | | |
|---|---|---|
| MARIA McKENZIE, on behalf of herself and all others similarly situated, | § § § | CIVIL ACTION NO. _____ JURY |
| Plaintiffs, | § § | |
| v. | § § | |
| WORLDCOM, INC. a/k/a MCI WORLDCOM, INC. a/k/a MCI WORLDCOM COMMUNICATIONS, INC., | § § § § | |
| Defendant. | § § § | |

### DEFENDANT MCI WORLDCOM COMMUNICATIONS, INC.'S NOTICE OF REMOVAL

Pursuant to 28 U.S.C. § 1446, Defendant MCI WORLDCOM Communications, Inc. ("WorldCom")[1], by its attorneys, submits its Notice of Removal. In support of this Notice, WorldCom states as follows:

### I.    INTRODUCTION

1.    On August 9, 2000, Plaintiff Maria McKenzie ("Plaintiff") filed a putative class action petition in the 357th District Court of Cameron County, Texas, entitled *Maria McKenzie, et al. v.*

---

[1]    The Plaintiff incorrectly assumes that WorldCom, Inc., MCI WORLDCOM, Inc., and MCI WORLDCOM Communications, Inc. are the same entity. WorldCom, Inc., which prior to May 1, 2000, was named MCI WORLDCOM, Inc., and MCI WORLDCOM Communications, Inc. are distinct corporate entities.  MCI WORLDCOM Communications, Inc. is the proper party to this lawsuit as it provides telecommunications services to consumers and engages in marketing and advertising for those services. WorldCom, Inc. is an improper party because it does not provide services to consumers and does not engage in marketing or advertising of such services.

NOTICE OF REMOVAL - PAGE 1

Dallas3 596993 v 1, 46943 00103

*WorldCom, Inc. a/k/a MCI WorldCom, Inc. a/k/a MCI WorldCom Communications, Inc.,* Cause No. 2000-08-3297-E.  Plaintiff filed a First Amended Petition (the "Petition") on August 18, 2000.

2.  Plaintiff served WorldCom with a citation and Plaintiff's First Amended Petition (the "Petition") on August 24, 2000.  This Notice is filed within 30 days of service on WorldCom, and therefore is timely pursuant to 28 U.S.C. § 1446(b).  Murphy Bros., Inc. v. Michetti Pipe Stringing, Inc., 119 S. Ct. 1322, 1325 (1999).  Pursuant to 28 U.S.C. § 1446(a), true and correct copies of the following documents, which have been received by WorldCom, are attached as indicated:

Exhibit A    Plaintiff's First Amended Petition

Exhibit B    WorldCom, Inc. Citation

WorldCom has not been served with any other pleading, process or order except those attached as Exhibits A and B.  Pursuant to Rule 3(K) of the Local Rules for the Southern District of Texas, a list of all counsel of record, the state court docket sheet, and an index of matters being filed are attached as, respectively, Exhibits C, D and E.  WorldCom has not filed an answer in the state court proceeding.

3.  Written notice of the filing of this Notice of Removal will be given promptly to Plaintiff and, together with a copy of the Notice of Removal, will be filed with the Clerk of the  District Court of Cameron County, Texas, pursuant to 28 U.S.C. § 1446(d).

4.  This case is a civil action over which this Court has original jurisdiction under 28 U.S.C. §§ 1331 and 1337.  Plaintiff's claims necessarily arise under the federal Communications Act of 1934, 47 U.S.C. §§ 151 et seq. (the "Act"), because the Act has completely preempted the state law basis for those claims.  Plaintiff's claims necessarily involve a challenge to WorldCom's rates for interstate services and the federal tariffs which WorldCom files with the Federal Communications Commission ("FCC").

WorldCom's rates for interstate services and its federal tariffs are governed exclusively by federal law. Thus, the state court action is properly removed to this Court under 28 U.S.C. § 1441.

## II.   THE PETITION'S ALLEGATIONS

5.   According to the Petition, Plaintiff (and others similarly situated) suffered damages as a result of alleged deceptive advertising and telemarketing by WorldCom which resulted in Plaintiff being charged more for long-distance services than she felt she should pay. Petition at 4, 9. Plaintiff alleges that this conduct gives rise to causes of action under the Texas Deceptive Trade Practices Act ("DTPA") and for negligent misrepresentation.   Petition at 10-13.

6.   The purported deception and misrepresentations about which Plaintiff complains stem from WorldCom's alleged failure to disclose certain charges, fees, rates, and restrictions relating to services WorldCom provides to its customers.  Those charges, fees, rates, and restrictions are set forth in federal tariffs duly filed by WorldCom with the FCC. Any complaint about the fees charged to customers for long-distance telecommunications services necessarily involves an evaluation of WorldCom's FCC tariffs.

## III.   THE STANDARD FOR REMOVAL BASED ON COMPLETE PREEMPTION

7.   The complementary doctrines of complete preemption and artful pleading establish this Court's federal question jurisdiction over this action under 28 U.S.C. §§ 1331 and 1337. Those doctrines establish that federal law extinguishes Plaintiff's artfully pleaded state-law claims, as those claims necessarily arise only under federal law.  That is so because the Amended Petition (though styled as a case based on state common law and a state consumer protection statute) challenges the legality of rates and practices for interstate telephone service, which is governed exclusively by federal law.

8.    Although under the "well-pleaded complaint" doctrine a case may not be removed to federal court solely on the basis of the defense of preemption, Caterpillar, Inc. v. Williams, 482 U.S. 386, 392-93 (1987), the "complete preemption" doctrine exists as a "corollary" to this rule. McClelland v. Gronwaldt, 155 F.3d 507, 512 (5th Cir. 1998).  Under the complete preemption doctrine, as the Fifth Circuit has explained:

> "Congress may so completely preempt a particular area that any civil complaint raising this select group of claims is necessarily federal in character," and the case may be removed even if no federal claim is asserted in the complaint and federal preemption, raised as a defense, is the only issue of federal law implicated in the case.

Anderson v. Electronic Data Systems Corp., 11 F.3d 1311, 1315 (5th Cir.), cert. denied, 513 U.S. 808 (1994) (quoting Metropolitan Life Ins. Co. v. Taylor, 481 U.S. 58, 66-67 (1987)).  See also Rivet v. Regions Bank of Louisiana, 522 U.S. 470, 475-76 (1998); Heimann v. National Elevator Indus. Pension Fund, 187 F.3d 493, 499-500 (5th Cir. 1999).  "Once an area of state law has been completely pre-empted, any claim purportedly based on that pre-empted state law is considered, from its inception, a federal claim, and therefore arises under federal law." Caterpillar, 482 U.S. at 393.  In other words, "'a plaintiff may not defeat removal by omitting to plead necessary federal questions.'" Rivet, 522 U.S. at 475 (citation omitted).  See also Avitts v. Amoco Prod. Co., 53 F.3d 690, 693 (5th Cir. 1995).  As the Fifth Circuit has explained, "[i]f the only remedy available to plaintiff is federal . . . the case is removable regardless of what is in the pleading." Carpenter v. Wichita Falls Indep. School Dist., 44 F.3d 362, 366 (5th Cir. 1995).

## IV.   PLAINTIFF'S ARTFULLY PLED PETITION IS ACTIONABLE ONLY UNDER FEDERAL LAW

9.   Plaintiff claims that through deceptive advertising, she was overcharged for long distance telecommunications services in violation of the DTPA. Plaintiff also claims that WorldCom negligently misrepresented both the rates charged for long distance, and the services included in its long distance program. In other words, Plaintiff's Petition asserts a right under Texas law to pay a charge for interstate telephone service different from the charge presently set forth in WorldCom's tariffs, and asks that the court declare unlawful provisions setting rates and services that are included in WorldCom's duly filed tariffs. However, a claim of this kind "can be maintained," if at all, "only under federal law." Cahnmann, 133 F.3d 484, 489-90 (7th Cir.), cert. denied, 118 S.Ct. 2368 (1998).   All terms and conditions related to the provision of long distance telephone service to consumers are, as a matter of law, governed by a federal tariff. 47 U.S.C. § 203. Indeed, once a tariff is filed with the FCC, it attains the status of binding federal law. See, e.g., Lowden v. Simonds-Shields-Lonsdale Grain Co., 306 U.S. 516, 520 (1939) ("Until changed, tariffs bind both carriers and [customers] with the force of law."); Keogh v. Chicago & N.W. Ry. Co., 260 U.S. 156, 163 (1922); Cahnmann, 133 F.3d at 488 ("A tariff filed with a federal agency is the equivalent of a federal regulation."). The tariff "is the law" and "is not a mere contract." Carter v. American Tel. & Tel. Co., 365 F.2d 486, 496 (5th Cir.), cert. denied, 385 U.S. 1008 (1966). As the Seventh Circuit has explained, "a suit to enforce [a tariff], and even more clearly a suit to invalidate it as unreasonable . . . arise under federal law." Cahnmann, 133 F.3d at 488. Plaintiffs' claims in this case (though artfully pled as state law consumer rights and negligent misrepresentation claims) are, at bottom, nothing more than a challenge to the reasonableness of the charges set forth in WorldCom's federal tariffs. As such, they can only be maintained as federal law claims.

**NOTICE OF REMOVAL - PAGE 5**

Dallas3 596993 v 1, 46943 00103

10.     The Act, regulations implementing the Act, and the tariff -- all federal in nature -- constitute the body of law which creates and enforces the duties of carriers in the provision of long distance telephone services.  This comprehensive federal regulatory scheme, encompassed primarily in the detailed tariff system, governs pricing structures and billing practices for these services.  Congress has thus created a comprehensive regulatory scheme for interstate telecommunications, with the FCC regulating all services provided under the Act.  United States v. Southwestern Cable, 392 U.S. 157, 168 (1968); Benanti v. United States, 355 U.S. 96, 104 (1957).  The Act applies to "all interstate and foreign communication by wire or radio ... and to all persons engaged within the United States in such communication."  47 U.S.C. § 152(a).  Moreover, the purpose of the Act is to provide a uniform and exclusive system of rate-setting and to assure the equal and uniform provision of services.  Cahnmann, 133 F.3d at 487.  It specifically governs all carriers' charges, practices, and rates.  47 U.S.C. §§ 201, 203.  The Supreme Court emphatically reaffirmed the continuing validity of these principles in AT&T v. Central Office Telephone, 524 U.S. 214, 118 S. Ct. 1956 (1998).

11.     Pursuant to the Act, the FCC regulates charges for interstate calls through a tariff system. The Act requires that every common carrier shall "file with the Commission and print and keep open for public inspection schedules [tariffs] showing all charges for itself and its connecting carriers ... and showing the classifications, practices, and regulations affecting such charges."  47 U.S.C. § 203(a).  From this regulatory structure governing both the content and the public availability of tariffs (which is shared by a number of regulated industries), the filed tariff doctrine arises.  The doctrine, a bedrock of federal law, provides that once a tariff is properly filed, no deviation from the rates or practices set forth in the tariff is permitted.  Moreover, because prices are set forth in the tariff, customers are conclusively presumed to

have notice of the tariff, including the tariffed prices. <u>Central Office Telephone</u>, 118 S. Ct. at 1962-64;

<u>Maislin Indus. v. Primary Steel, Inc.</u>, 497 U.S. 116, 127 (1990); <u>Louisville & Nashville R.R. v. Maxwell</u>,

237 U.S. 94, 97 (1915).

12.     Thus, the terms and conditions of telecommunications services are set forth in tariffs that

are, in essence, offers to sell on specified terms. <u>Cahnmann</u>, 133 F.2d at 487. The carrier may not deviate

from the terms of the tariff because the tariff functions as the contract between the carrier and its customers.

<u>Id.</u> Because the Act and tariff define this relationship, all claims relating to a carrier's rates necessarily arise

under the Act. <u>Id.</u> at 488.

13.     In 1998, the Supreme Court unequivocally confirmed the principle that the filed tariff

doctrine pre-empts state law causes of action — like the ones set forth in Plaintiffs' Petition — that

challenge the validity of a duly filed tariff. In <u>Central Office Telephone, Inc.</u>, 118 S. Ct. at 1964-65, the

Court held that the respondent's state law claims of breach of contract and tortious interference with

contract were pre-empted by the filed tariff doctrine. In so holding, the Court rejected respondent's

attempt to circumvent the filed tariff doctrine through state law contract and tort claims, noting that "'[t]he

rights as defined by the tariff cannot be varied or enlarged by either contract or tort of the carrier.'" <u>Id.</u> at

1965 (quoting <u>Keogh</u>, 260 U.S. at 163). Further, the Court emphasized that the filed tariff doctrine

precludes all forms of state law challenges to duly filed rates, even when based on claims of

misrepresentation. <u>Id.</u> at 1963 ("[E]ven if a carrier intentionally misrepresents its rate and a customer relies

on the misrepresentation, the carrier cannot be held to the promised rate if it conflicts with the published

tariff.").

14.     Applying these principles, the Seventh Circuit recently held that state law claims similar to those presented here are removable to federal court. In Cahnmann, a customer of Sprint's "Fridays Free" program filed a class action lawsuit in Illinois state court against Sprint, alleging various claims of "fraud under several Illinois fraud and consumer protection statutes as well as under the state's common law of torts," and a breach of contract claim. 133 F.3d at 490. The plaintiff alleged that Sprint offered her and members of the class $1,000 worth of free long-distance calls on Fridays to anywhere in the world for one year. However, four months into the program, Sprint amended its tariff pertaining to the "Fridays Free" program by deleting ten countries from the "anywhere in the world" portion of the program. Plaintiff and several thousand members of the class who continued to place calls to one or more of the deleted countries brought suit to enforce the original tariff, and asserted that Sprint had committed fraud by failing to disclose to consumers that Sprint never intended to keep the original tariff in force for a full year. Id. at 486-87.

15.     Sprint removed the action to federal court and moved to dismiss plaintiffs claims as barred by the filed tariff doctrine. On appeal, Chief Judge Posner, writing for the Seventh Circuit, affirmed the removal and dismissal. The Court noted that a tariff filed with a federal agency is the equivalent of a federal regulation; thus, a suit to enforce it arises under federal law. Cahnmann, 133 F.3d at 488. Therefore, "[f]ederal law does not merely create a right; it occupies the whole field, displacing state law." Id. at 489. Because the Plaintiffs' state law fraud claims, if successful, would result in setting aside Sprint's amended tariff and changing the rates customers would pay for long distance service, the suit simply could not be maintained under state law. Id. at 490. Such a claim could be brought, if at all, only under federal law.

16.     Numerous other courts have similarly held that complaints against carriers purportedly based on state law claims are properly removed to federal court because they are, of necessity, based on

federal law.  See, e.g., Bastien v. AT&T Wireless Servs. Inc., 205 F.3d 983 (7th Cir. 2000) (upholding

removal in case asserting state-law breach of contract and consumer fraud claims)[2]; World Access USA

Corp. v. AT&T Corp., 2000 WL 297845 (S.D. Fla. 2000) (upholding removal in case asserting state-law

breach of contract); Mellman v. Sprint Communications Co., 975 F. Supp. 1458 (N.D. Fla. 1996)

(Plaintiffs' breach of contract claim was preempted by federal law and, accordingly, raised federal question

upon which removal was proper); In re Comcast Cellular Telecomms. Litig., 949 F. Supp. 1193 (E.D. Pa.

1996) (Plaintiffs' breach of implied duty of good faith and fair dealing and unjust enrichment claims were

preempted under the Act and under the artful pleading doctrine; consequently, complaint was properly

removed from state court); Thermalcraft, Inc. v. U.S. Sprint Communications Co., 779 F. Supp. 1039

(W.D. Mo. 1991) (Plaintiffs' breach of contract and state law tort claims arose under the Act, leading to

proper removal of the complaint from state court).

---

[2]      MCI Telecomms. Corp. v. Credit Builders of Am. Inc., 980 F.2d 1021 (5th Cir.), cert. granted and judgment vacated, 508 U.S. 957, opinion reinstated, 2 F.3d 103 (5th Cir.), cert. denied, 510 U.S. 978 (1993), is not to the contrary. First, Credit Builders is not good law. As several district courts within this Circuit have concluded, the Credit Builders panel impermissibly failed to follow a prior Fifth Circuit case, American Tel. & Tel. Co. v. Florida-Texas Freight, Inc., 357 F. Supp. 977 (S.D. Fla.), aff'd per curiam, 485 F.2d 1390 (5th Cir. 1973), and therefore is not binding precedent.  See, e.g., MCI Telecomms. Corp. v. United Showcase, Inc., 847 F. Supp. 510, 511-13 (N.D. Tex. 1994). In Florida-Texas Freight, which is binding precedent, the district court -- in an opinion expressly adopted by the Fifth Circuit -- concluded that the federal courts have federal question jurisdiction under the Act over actions to collect unpaid long-distance charges. 357 F. Supp. at 978. See also 485 F.2d at 1390 (affirming "[f]or reasons cogently expressed in the district court opinion").

      In any event, Credit Builders is inapposite. In that case, MCI filed an ordinary collection action for unpaid long-distance charges in federal court, asserting that federal common law preempted state contract law in such circumstances. 980 F.2d at 1021-22. The Fifth Circuit rejected this asserted basis for jurisdiction and dismissed the action. Since the case "does not involve the validity, construction, or effect of the Communications Act or any other federal statute," the Fifth Circuit refused to find the existence of federal common law. Id. at 1023. Credit Builders is irrelevant here. In removing the instant case, MCI WorldCom does not rely on preemption of state law by federal common law, but on preemption by federal statute and regulation.

17. The reasoning of these decisions is fully applicable here. Although Plaintiff attempts to base her Petition on state law consumer rights and negligent misrepresentation claims, the case necessarily seeks redress for alleged violations of federal law. The essence of Plaintiff's argument is that WorldCom's tariffed long-distance rates are different than the rates Plaintiff believed she would pay, which resulted in WorldCom collecting more than Plaintiff believes WorldCom is entitled to collect. This is nothing more than a challenge to the reasonableness of WorldCom's tariffed rates. Plaintiff has artfully plead a cause of action based on WorldCom's supposed violation of state law for collection of a charge mandated by the tariff. As the Supreme Court explained in <u>Central Office Telephone, Inc.</u>, the filed tariff doctrine preempts any state law challenge to a filed rate, "even if a carrier intentionally misrepresents its rate and a customer relies on the misrepresentation." 118 S. Ct. at 1963. The only claim that may be brought is one based on the federal tariff.

18. Accordingly, this Court has jurisdiction over this civil action under 28 U.S.C. §§ 1331 and 1441(b).

WHEREFORE, WorldCom requests that this action be removed to this Court, that this Court accept jurisdiction over this action, and that this action be entered on the docket of this Court for further proceedings as though this action had originally been instituted in this Court.

Respectfully submitted,

John C. Eichman
Texas Bar No. 06494800
Kerry C. Ahern
Texas Bar No. 24012195

JENKENS & GILCHRIST
*A Professional Corporation*
1445 Ross Avenue, Suite 3200
Dallas, Texas 75202
Telephone:    (214) 855-4500
Facsimile:     (214) 855-4300

John Alex Huddleston
Texas Bar No. 10148400
JENKENS & GILCHRIST
*A Professional Corporation*
1800 Frost Bank Tower
100 West Houston Street
San Antonio, Texas 78205
Telephone:    (210) 246-5000
Facsimile:     (210) 246-5999
ATTORNEYS FOR DEFENDANT
MCI WORLDCOM COMMUNICATIONS, INC.

OF COUNSEL:
Thomas F. O'Neil III
William E. Smith
WORLDCOM, INC.
1133 19th Street, N.W.
Washington, D.C. 20036
Telephone:    (202)736-6612
Facsimile:     (202) 736-6482

**NOTICE OF REMOVAL - PAGE 11**

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the that instrument was served upon all counsel of record as follows by hand delivery on this _15th_ day of September, 2000:

Richard C. Jaramillo
Ray L. Vela
Law Offices of Richard Jaramillo & Associates, P.C.
1412 Main Street, 22nd Floor
Dallas, Texas 75202
(214) 744-3364
(214) 748-6603 - fax

**NOTICE OF REMOVAL - PAGE 12**

Dallas3 596993 v 1, 46943.00103

CAUSE NO. 2000-08-3297-E

10:35 O'CLOCK ___ M
AURORA DE LA GARZA DIST. CLERK

AUG 18 2000

DISTRICT COURT OF CAMERON COUNTY, TEXAS
_____ DEPUTY

MARIA McKENZIE, on behalf of herself  §
and all others similarly situated,     §
     Plaintiff,                       §
                                 §
                                 §
                                 §
                                 §
WORLDCOM, INC. a/k/a MCI               §
WORLDCOM, INC. a/k/a MCI               §
WORLDCOM COMMUNICATIONS,               §
INC.                                   §
     Defendant.                        §

IN THE ~~DISTRICT COURT~~

357th JUDICIAL DISTRICT

CAMERON COUNTY, TEXAS

## PLAINTIFF'S FIRST AMENDED PETITION

TO THE HONORABLE JUDGE OF SAID COURT:

      COMES NOW Plaintiff MARIA McKENZIE, on behalf of herself and all others similarly

situated complaining of Defendant WORLDCOM, INC. a/k/a MCI WORLDCOM a/k/a MCI

WORLDCOM COMMUNICATIONS, INC. Plaintiff files this her Original Petition, and for

cause of action would show the Court and Jury as follows:

### I.    PARTIES

      1.    Plaintiff MARIA McKENZIE is a natural person who is a citizen and resident of

Cameron County, Texas. Plaintiff sues individually and on behalf of all those similarly situated.

      2.    Defendant, WORLDCOM, INC., (hereinafter "WorldCom", "MCI" or

"Defendant"), is a Georgia corporation with its principal place of business at 500 Clinton Center

Drive, Clinton, Mississippi 39056. WorldCom was formerly known as MCI WORLDCOM,

INC. WorldCom does business in the State of Texas under the name MCI WORLDCOM

COMMUNICATIONS, INC. WorldCom may be served with process by serving its registered

agent, NATIONAL REGISTERED AGENTS, INC. at 800 BRAZOS, AUSTIN, TEXAS 78701

---

Any act of Defendant alleged in this Petition shall be deemed to include the acts of its employees, agents, subsidiaries or other representatives acting under Defendant's direction, control and authority.

## II.    DISCOVERY, JURISDICTION AND VENUE

3.    Discovery is intended to be conducted pursuant to Level III of the Texas Rules of Civil Procedure.

4.    The damages sought by Plaintiff, exclusive of interests and costs, meet the jurisdictional requirements of this Court.

5.    At all times material hereto, the Defendant transacted and has transacted business in the State of Texas, and has had sufficient minimum contacts with Texas such that the exercise of jurisdiction by courts in Texas over Defendant would not offend traditional notions of fair play and substantial justice.  MCI has and is transacting business within the State of Texas and is subject to personal jurisdiction in this State.

6.    All or a majority of the events which lead to this lawsuit occurred in Cameron County, Texas this cause arises from a single occurrence or transaction or series of occurrences or transactions in this County.

## III.    FACTS

### A.    PLAINTIFF AND THE PLAINTIFF CLASS

7.    Plaintiff MARIA McKENZIE is a Texas consumer, as defined by the Texas Deceptive Trade Practices Act, who purchased Defendant's residential telecommunications products and services.

---

8.     The Plaintiff Class is comprised of Texas consumers, as defined by the Texas Deceptive Trade Practices Act, who purchased Defendant's residential telecommunications products and services.

9.     Plaintiff has sent Defendant proper notice pursuant to Tex. Bus. & Com. C. § 17.41 et seq., and all other conditions precedent have been satisfied.

**B.     DEFENDANT IS A TELECOMMUNICATION SERVICE PROVIDER**

10.     Defendant does business in Texas as a provider of telecommunications products and services.  MCI offers its telecommunications products and services to consumers in Texas by advertising its products on television and through other types of media and through the use of telemarketing.  MCI has solicited prospective Texas customers for its long distance calling plans, and other telecommunications services by, *inter alia*, the following methods: (a) running television advertisements in Texas; (b) mailing print advertisements and solicitations directly to Texas consumers; (c) running print advertisements in publications with national distributions; (d) advertising and hosting a web site on the Internet; and (e) making unsolicited telemarketing calls to Texas consumers and encouraging Texas consumers to contact telemarketers through advertised 1-800 numbers.  MCI represents that by subscribing to one of MCI's services consumers can utilize MCI's services at specified rates and prices.

11.     In connection with the advertisement, offering for sale and sale of the above-described merchandise, Defendant, individually and through the acts of its employees, representatives and agents, or others acting on its behalf and/or at its direction, has employed misrepresentations, false promises, deception, and unfair practices, and has utilized concealment, suppression or omission of material facts.

---

12.     Plaintiff and members of the Plaintiff Class, after reasonably relying on MCI's representations, selected MCI as his/her/their preferred long distance carrier and subscribed to one of MCI's long distance calling plans.  Plaintiff and members of the Plaintiff Class were induced to have MCI provide long distance service from a particular phone number and made use of MCI's long distance service when he or she dialed one (1) plus a long distance phone number from that telephone.  MCI provided various pricing plans for consumers who choose to use its long distance service in this fashion.

## C.     DECEPTIVE ADVERTISING AND TELEMARKETING

13.     Beginning at a date unknown and continuing to the present, MCI has made untrue and misleading statements in its advertising and solicitations regarding its services.

14.     MCI's advertisements are deceptive and misleading in a number of ways.  Several themes are common to these practices.  MCI's advertisements claim low per-minute rates, but fail to clearly and conspicuously disclose, and sometimes fail to disclose at all, substantial monthly charges that apply.  In addition, MCI fails to adequately disclose other material restrictions, such as location restrictions and time of day restrictions, that apply to its advertised services.  As a result of these deceptive and misleading advertisements, Texas consumers incur charges substantially in excess of the advertised rate.

15.     The following paragraphs set forth examples of the deceptive advertisements used to induce consumers to utilize MCI's services.  The examples discussed below are not intended to be all-inclusive.   Other MCI advertisements and solicitations regarding these and other services have been deceptive in similar ways.

16.     MCI, through its telemarketing agents, has made numerous untrue and/or misleading statements regarding many of MCI's services.  MCI's telemarketing practices have

deceived and misled consumers in that such practices have falsely represented MCI's calling plan rates, including but not limited to, the rates for the consumer's long distance service, the rates for the consumer's international calls, and the rates for calls made by the consumer using an MCI calling card.   In addition, MCI, through its telemarketing agents, has failed to disclose material terms and conditions of MCI calling plans including but not limited to, monthly recurring charges, monthly minimum charges, location restrictions, and time of day restrictions.

17.   The untrue and misleading statements made by MCI's telemarketers are unfair and deceptive, have the tendency and capacity to mislead consumers, and do in fact mislead consumers.

18.   Consumers pay substantially more than what MCI represented its services would cost.   In addition, by misrepresenting and failing to adequately disclose other restrictions in its solicitations, MCI has prevented consumers from making fully informed choices regarding their choice of long distance carrier and their choice of long distance calling plan.   Consumers have been induced to switch their long distance carrier to MCI and/or to subscribe to an MCI calling plan based on misrepresentations and inadequate representations made by MCI.

19.   In short, consumers have been assigned and billed under MCI calling plans that were substantially different plans than those that were marketed to them and, as a result, incurred charges substantially in excess of the represented rates.

### D.   MCI's FIVE CENT CALLING PLAN

20.   MCI's advertisements and solicitations regarding its "Five Cents Everyday" calling plan emphasize a purported five (5) cents per minute rate.

21.   However, MCI also imposes additional charges on its "Five Cents Everyday" calling plan customers which result in consumers paying more than five (5) cents per minute for

---

long distance calls they make using the calling plan.   MCI does not adequately disclose these additional charges, if it discloses them at all.  Among these additional charges are the following:

   a.   MCI charges a monthly "Carrier Access Charge" that can be as much as $1.46.

   b.   MCI charges a "Federal Universal Service Fee" that can be as much as 7.2% of the total cost of the customer's interstate and international long distance calls for the month;

   c.   MCI charges another monthly fee that can be as much as $4.95;

   d.   MCI charges a five-dollar ($5.00) monthly minimum under the plan which is imposed regardless of whether a subscriber makes any long distance calls under the plan.

   22.   Neither the "Carrier Access Charge" nor the "Federal Universal Service Fee" is a tax or surcharge that the government requires MCI to collect from consumers.  Instead, MCI imposes these charges solely at its own discretion.

   23.   MCI also imposes additional restrictions on its "Five Cents Everyday" calling plan customers.  Among these additional restrictions are the following:

   a.   Customers cannot obtain the five (5) cents a minute rate for intrastate long distance calls, i.e., long distance calls made within Texas.

   b.   Customers can only obtain the five (5) cents a minute rate during certain times of the day.  Specifically, the five (5) cents a minute rate only applies on weekends and on weekday nights from seven o'clock (7:00) p.m. to six fifty-nine o'clock (6:59) a.m.   The weekday rate MCI charges during the day, from six fifty-nine o'clock (6:59) a.m. to seven o'clock (7:00) p.m., is  substantially in excess of  five cents per minute.

---

24.     All of the additional charges and other restrictions set forth above significantly impact the price consumers pay for service under MCI's calling plan and are material terms and conditions when MCI offers its plan to prospective customers.  These additional charges are frequently substantially larger charges to the consumer than the total of all per minute charges.

25.     MCI does not clearly and conspicuously disclose these additional charges and restrictions in its advertisements and solicitations.  In some instances, MCI does not disclose the restrictions at all in its advertisements and solicitations.  Examples of MCI advertisements containing inadequate disclosures regarding these charges and restrictions include MCI's "Billboard of the Millennium" and "Jordan Calls Bugs" television advertisements.  Many other MCI advertisements for the "Five Cents Everyday" plan, and for its other calling plans, also have contained similar inadequate disclosures.

26.     First, MCI does not disclose in its advertisements and solicitations the MCI "Carrier Access Charge."  For instance, this charge is not disclosed at all in MCI's "Billboard of the Millennium" advertisement  or "Jordan Calls Bugs" advertisement.

27.     Second, MCI does not disclose in its advertisements and solicitations the MCI "Federal Universal Service Charge."  For instance, as with the "Carrier Access Charge," this charge is not disclosed at all in MCI's "Billboard of the Millennium" advertisement  or "Jordan Calls Bugs" advertisement.

28.     Third, MCI does not clearly and conspicuously disclose in its advertisements and solicitations its other "monthly fee."  For instance, in the "Billboard of the Millennium" advertisement, a $1.95 monthly fee is flashed across the bottom of the television screen, for a brief period of time, in fine print against a varied and light background with considerable movement and/or distraction.  Likewise, in the "Jordan Calls Bugs" advertisement, a $4.95

---

monthly fee is not disclosed clearly and conspicuously but instead is flashed across the bottom of

the television screen, for a brief period of time, in fine print while Michael Jordan is speaking

and a cartoon character is moving about on a basketball court accompanied by distracting special

effects.

29.     Fourth, MCI does not clearly and conspicuously disclose in its advertisements and

solicitations its $5.00 monthly minimum charge.  For instance, in MCI's "Billboard of the

Millennium" advertisement, a phrase reading "$5 monthly minimum" is flashed across the

bottom of the television screen, for a brief period of time, in fine print against a varied and light

background with considerable movement and/or distraction.

30.     Fifth, MCI does not clearly and conspicuously disclose in its advertisements and

solicitations that the advertised rates under the plan do not apply to intrastate long distance calls.

For instance, in MCI's "Billboard of the Millennium" advertisement and "Jordan Calls Bugs"

advertisement, a phrase reading "For Interstate Calls from Home" is flashed across the bottom of

the television screen, for a brief period of time, in fine print against a varied and light

background with considerable movement and/or distraction.

31.     Sixth, MCI does not clearly and conspicuously disclose in its advertisements and

solicitations that the five (5) cents a minute rate only applies on weekends and weekday nights.

Nonetheless, MCI touts and emphasizes that the five (5) cents per minute rate is available

"everyday" even though the five (5) cents per minute rate is not available during the day Monday

through Friday but instead is only available at night on those days.  For instance, in MCI's

"Billboard of the Millennium" advertisement, a phrase reading "7PM-7AM" is flashed across the

bottom of the television screen, for a brief period of time, in fine print.  Moreover, at the same

time this information is flashed across the bottom of the screen, Michael Jordan is speaking to

the audience and a cartoon character is moving about the screen, distracting the consumer's attention away from the fine print.    Throughout the advertisement, a large, neon-lit sign emphasizes "five cents everyday."    Likewise, in the "Jordan Calls Bugs" advertisement, a phrase reading "7PM-7AM" is flashed across the bottom of the television screen, for a brief period of time, in fine print.    Nonetheless, the advertisement emphasizes on numerous occasions "five cents everyday" and the spokesperson states that "thanks to five cents everyday" other persons can be called at "anytime."

32.    MCI's bold and dramatic emphasis on its five (5) cents per-minute rate and its intentional effort to withhold from potential customers the additional costs and restrictions of its plan is unfair and deceptive, has the tendency and capacity to mislead consumers, and does in fact mislead consumers.

33.    Each consumer pays substantially more than what MCI represented its services would cost.    In addition, by failing to adequately disclose these restrictions in its advertisements and solicitations, MCI has prevented consumers from making fully informed choices regarding their choice of long distance carrier and their choice of long distance calling plan.    Consumers have been induced to switch their long distance carrier to MCI and/or to subscribe to an MCI calling plan based on misrepresentations and inadequate representations made by MCI.    In short, consumers have been assigned and billed under MCI calling plans that were substantially different plans than those that were advertised to them and, as a result, incurred charges substantially in excess of the advertised rates.

## E.    CRAMMING

34.    Cramming is a term used to refer to the practice of providing services without valid authorization, written or verbal, from a consumer; or, undertaken with some indicia of

---

authority obtained from a consumer through misrepresentation, deception or unfair practice. These enhanced services include a personal toll-free telephone number service.

35.     Defendant engaged in the unfair practice of cramming unwanted enhanced services onto Plaintiffs' phone bills in that such practice is unethical, oppressive, unscrupulous and causes substantial injury to consumers.

36.     Defendant engaged in deceptive trade practices by cramming unwanted enhanced services onto Plaintiffs' phone bills in that such practice has the tendency and/or capacity to mislead, deceive or cheat or tendency to create a false impression.

## IV.     CAUSES OF ACTION FOR DTPA VIOLATIONS BY DEFENDANT

37.     From during or about late 1998 until the present, and in connection with the advertising, offering for sale and sale of telecommunications services, MCI, individually and through its agents, employees, representatives and others on its behalf or at its direction, has and is engaged in the act, use and employment of deception, false promises, misrepresentations, unfair practices, and has employed and continues to employ concealment, suppression and omission of material facts - all declared to be unlawful under Tex. Bus. & Com. C. §§ 17.46(b)(5), (7), (9), (12) and (23). These DTPA violations include, but are not limited to:

a.      Failing to clearly and conspicuously disclose the MCI "Carrier Access Charge" in its advertisements and solicitations;

b.      Failing to clearly and conspicuously disclose the MCI "Federal Universal Service Fee" in its advertisements and solicitations;

c.      Failing to clearly and conspicuously disclose other MCI monthly fees in its advertisements and solicitations;

d.      Failing to clearly and conspicuously disclose the MCI monthly minimum charge in its advertisements and solicitations;

e.      Failing to clearly and conspicuously disclose restrictions pertaining to location (e.g., intrastate long distance calls) in its advertisements and solicitations;

f.      Failing to clearly and conspicuously disclose time of day restrictions in its advertisements and solicitations;

g.      Labeling an MCI charge a "Federal Universal Service Fee" when said charge is not imposed on consumers by the federal government and the federal government does not require MCI to collect this charge from consumers;

h.      Representing a rate of five (5) cents "everyday" when in fact the rate does not apply during daytime hours Monday through Friday;

i.      Misrepresenting, directly or impliedly, that consumers will receive a certain rate when, in truth and in fact, consumers are charged different and/or higher rates for the calling plans for which they are signed-up;

j.      Misrepresenting, directly or impliedly, that MCI's bill for its long distance services will be included with the consumer's local telephone bill so that the consumer will, in effect, receive and have to pay only one telephone bill; when, in truth and in fact, consumers receive two bills - one from their local exchange carrier and one from MCI;

k.      Falsely promising that consumers will receive a certain rate when, in truth and in fact, consumers are charged different and/or higher rates for the calling plans for which they are signed-up;

l.      Engaging in deceptive advertising and solicitation practices by representing a rate the consumer will receive without disclosing all other costs, limitations, restrictions and conditions attendant to that rate, in that such practice has the tendency and/or capacity to mislead, deceive or cheat or tendency to create a false impression;

m.      Engaging in deceptive advertising and solicitation practices by cramming unwanted enhanced services onto consumers' phone bills in that such practice has the tendency and/or capacity to mislead, deceive or cheat or tendency to create a false impression;

n.      Concealing, suppressing and/or omitting by failing to clearly and conspicuously disclose the material fact that the five (5) cents per minute rate is only applicable during certain times and disclosing those times or other time of day restrictions;

o.      Concealing, suppressing and/or omitting by failing to clearly and conspicuously disclose the material fact that the rates for instate calling are different and/or that there are location restrictions;

p.      Concealing, suppressing and/or omitting by failing to clearly and conspicuously disclose the material fact that there are monthly recurring charges and their amounts;

q.      Concealing, suppressing and/or omitting by failing to clearly and conspicuously disclose the material fact that there is a monthly minimum charge and its amount;

r.      Concealing, suppressing and/or omitting by failing to clearly and conspicuously disclose the material fact that there is a "Carrier Access Charge" and its amount;

s.      Concealing, suppressing and/or omitting by failing to disclose the material fact that there is a "Federal Universal Service Fee" and its amount;

t.      Concealing, suppressing and/or omitting by failing to clearly and conspicuously disclose the material fact that there is a surcharge on all calling card calls;

u.      Misleading consumers into believing that calling card calls will be charged at the same rate as home telephone calls when in fact such was not the case;

v.      Engaging in the unfair practice of cramming unwanted enhanced services onto consumers' phone bills in that such practice is unethical, oppressive, unscrupulous and causes substantial injury to consumers.

38.      By virtue of the foregoing violations of law, Plaintiff and Plaintiff Class are entitled to the relief provided for below.

## V.     CAUSES OF ACTION FOR NEGLIGENT MISREPRESENTATION

39.      Plaintiff incorporates herein by reference all of the facts stated above.

40.      The Defendant supplied the false information for the Plaintiffs' benefit and guidance in its transaction with Defendant, knowing that the Plaintiffs would in fact rely on it. Plaintiffs reasonably and justifiably relied on the false information provided by the Defendant. The foregoing acts and omissions of the Defendant, taken separately or collectively, constitute a direct and proximate cause of the Plaintiffs' pecuniary loss set forth herein.

## VI.     CLASS ACTION AGAINST DEFENDANT

**A.    The Prerequisites Are Met By The Proposed Class.**

41.      Plaintiff brings this suit on behalf of herself, and on behalf of all those similarly situated, and as representatives of a class as defined by Tex. R. Civ. P. 42. The Court should enter an Order certifying a Plaintiff class consisting of: All Texas consumers who have

---

purchased Defendant's residential telecommunications products and services, specifically excluding all Cameron County District Judges, class counsel, Defendants and their directors, officers, employees, agents and attorneys.

42.     The Plaintiff notes that the proposed Plaintiff Class meets the prerequisites of a class:

**(a)     Numerosity**

43.     The Plaintiff Class is so numerous that joinder of all members is impracticable. The Plaintiff is unable to state the exact number of the members of the Plaintiff Class without the discovery of information in the hands of the Defendants.

**(b)     Commonality**

44.     There are questions of law and facts common to the Class.  The questions of fact and law affecting the Plaintiff Class as a whole include:

(1) Whether Defendant is guilty of advertising goods or services with intent not to sell them as advertised;

(2) Whether the actions of Defendants constitute (a) violations of the DTPA, (b) malicious conduct, or (c) negligent misrepresentation.

**(c)     Typicality**

45. The claims of the Plaintiff are typical of the claims of the Class.  The Plaintiff has a claim against Defendants.  These claims have the same essential characteristics as the claims of the Class as a whole and are based upon the identical or similar legal theory.  The claims are based, in part, upon injuries resulting from the misrepresentations made by Defendants and their employees, acting in the course and scope of their employment for the Defendants.  The

members of the Plaintiff Class have suffered the same injury and possess the same interests as the Plaintiff.

**(d)**     **Adequacy**

46. The Plaintiff, as a representative party, will fairly and adequately protect the interests of the Class. The attorneys representing the class representatives are qualified, experienced and able class action counsel.

**B.      The Plaintiff Class Is Maintainable**

47. The proposed Plaintiff Class is maintainable as required by Tex. R. Civ. P. 42(b) for the following reasons:

**(a)**     **Generally Applicable Conduct**

48.     Defendants have acted on grounds generally applicable to the class, thereby making appropriate final injunctive relief with respect to the Class as a whole. Tex. R. Civ. P. 42(b).

**(b)**     **Predominance and Superiority**

49.     This suit is maintainable as a class action because common questions of law and fact predominate over any questions affecting only individual members, making a class action superior to all other methods available for the fair and efficient adjudication of this controversy. Tex. R. Civ. P. 42(b)(4).

## VII.     RELIEF REQUESTED

**Actual Damages**

50.     As a direct result of Defendants' actions, the Named Plaintiffs and the Plaintiff Class have suffered damages, both actual and consequential, in excess of the minimum

---

jurisdictional limits of this Court. Each individual claim in this cause is equal to or less than $75,000.00 exclusive of interest and costs.

## Attorneys Fees

51.     Plaintiff requests that she and the Plaintiff Class recover all reasonable and necessary attorneys fees allowed pursuant to their DTPA claims and any other applicable, cause(s) of action.

## Prejudgment and Post-judgment Interest

52.     Plaintiff and the Plaintiff Class request both prejudgment and post-judgment interest at the maximum rate allowed by law in the State of Texas.

## Injunctive Relief

53.     Named Plaintiffs request on behalf of themselves and on behalf of the Class that the Defendants be prohibited from engaging in the deceptive trade practices as stated herein.

## Discovery Rule and Fraudulent Concealment

54.     Plaintiff hereby affirmatively pleads the discovery rule as that legal principal concept is applied and understood under the laws of the State of Texas and all other applicable state laws, in response to any claim by any Defendants that any of Plaintiff Class member's causes of action are barred by any statute of limitations. Plaintiff further pleads that all actions are timely plead in that they were recently discovered. Further, the Defendants fraudulently concealed their wrongful acts and omissions from the Plaintiff Class. Defendants' conduct constitutes fraudulent concealment and non-disclosure as that term has meaning under Texas law.

## VIII.   JURY DEMAND

55.     Plaintiff hereby requests that a jury decide all factual issues in this case.

---

## IX.    PRAYER

WHEREFORE, PREMISES CONSIDERED, Plaintiff respectfully requests that Defendants be cited to appear and answer this Petition and that upon final jury trial, Plaintiff and the Plaintiff Class recover judgment from the Defendants in an amount sufficient to compensate Plaintiff and the Plaintiff Class for her damages and for court costs, and that an injunction issue prohibiting Defendants from engaging in unlawful practices, and such other relief to which they may show themselves to be justly entitled.

Respectfully submitted,

**LAW OFFICES OF RICHARD JARAMILLO
& ASSOCIATES, P.C.**
1412 Main Street, 22nd Floor
Dallas, Texas 75202
(214) 744-3364
(214) 748-6603 (Fax)
**ATTORNEYS FOR PLAINTIFFS**

By: _____
RICHARD C. JARAMILLO
State Bar No. 10573200
RAY L. VELA
State Bar No. 00795075

Citation for Personal Service  – BY CERTIFIED MAIL    Lit. Seq. No. 6-002.01

No. 2000-08-003297-E

T H E   S T A T E   O F   T E X A S

NOTICE TO DEFENDANT:  You have been sued.  You may employ an attorney.  If you or your attorney do not file a written answer with the clerk who issued this citation by 10:00 a.m. on the Monday next following the expiration of twenty days after you were served this citation and petition, a default judgment may be taken against you.

TO: WORLDCOM, INC.
AKA MCI WORLDCOM COMMUNICATION
INC., C/O NATIONAL REGISTERED AGENTS, INC
800 BRAZOS, AUSTIN,TX 78701

The       DEFENDANT     , GREETING:

You are commanded to appear by filing a written answer to the

PLAINTIFF'S FIRST AMENDED PETITION

at or before 10:00 o'clock a.m. of the Monday next after the expiration of 20 days after the date of service of this citation before the Honorable District Court 357th Judicial District of Cameron County, Texas at the Courthouse of said county in Brownsville, Texas.  Said    AMENDED PETITION    was filed on AUGUST 18, 2000 .  A copy of same accompanies this citation.

The file number of said suit being No. 2000-08-003297-E.

The style of the case is:

MARIA MCKENZIE, ON BEHALF OF HERSELF AND ALL OTHER
VS.
WORLDCOM, INC. F/K/A MCI WORLCOM

Said petition was filed in said court by        HON RICHARD C JARAMILLO
Attorney for           PLAINTIFF           ), whose address is
412 MAIN ST. 22ND FLOOR DALLAS, TEXAS 75202    00000        .

The nature of the demand is fully shown by a true and correct copy of the petition accompanying this citation and made a part hereof.

The officer executing this writ shall promptly serve the same according to requirements of law, and the mandates thereof, and make due return as the law directs.

Issued and given under my hand and seal of said Court at Brownsville, Texas, this the 21st day of  AUGUST , A.D. 2000.

AURORA DE LA GARZA      , DISTRICT CLERK
Cameron County, Texas
974 E. Harrison St.
Brownsville, Texas 78521

By: _____ , Deputy

# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF TEXAS
# BROWNSVILLE DIVISION

| | | |
|---|---|---|
| **MARIA McKENZIE, on behalf of herself** | § | **CIVIL ACTION NO.** _____ |
| **and all others similarly situated,** | § | **JURY** |
| | § | |
| **Plaintiffs,** | § | |
| | § | |
| **v.** | § | |
| | § | |
| **WORLDCOM, INC. a/k/a MCI** | § | |
| **WORLDCOM, INC. a/k/a MCI** | § | |
| **WORLDCOM COMMUNICATIONS,** | § | |
| **INC.,** | § | |
| | § | |
| **Defendant.** | § | |

## INDEX OF ATTORNEYS

1.   Richard C. Jaramillo
     Ray L. Vela
     Law Offices of Richard Jaramillo & Associates, P.C.
     1412 Main Street, 22nd Floor
     Dallas, Texas 75202
     (214) 744-3364
     (214) 748-6603 - fax
     Attorneys for Plaintiffs

2.   John C. Eichman                John Alex Huddleston
     Kerry C. Ahern                 Jenkens & Gilchrist
     Jenkens & Gilchrist            *A Professional Corporation*
     *A Professional Corporation*   1400 Frost Bank Tower
     1445 Ross Avenue               100 West Houston Street
     Dallas, Texas 75202            San Antonio, Texas 78205-1457
     (214) 855-4500                 (210) 246-5000
     (214) 855-4300 - fax           (210) 246-5999 - fax
     Attorneys for Defendant

SOLO PAGE

```
RUN DATE 09/14/00                                                    PAGE: 01
RUN TIME 11:12 AM                                                    2000-08-003297-E


MARIA MCKENZIE, ON BEHALF OF HERSELF AND ALL OTHER      * * *  C L E R K ' S  E N T R I E S  * * *

                                                        00545101                    (06)          08     09     00
                                                        HON RICHARD C JARAMILLO
                        VS                              1412 MAIN ST. 22ND FLOOR
                                                        DALLAS, TEXAS 75202
                                                                                    BREACH OF CONTRACT
WORLDCOM, INC. F/K/A MCI WORLCOM
                                                                                    RICHARD C JARAMILLO
                                                                                                        30.00

                                                        08/09/00  ORIGINAL PETITION FILED
                                                        08/09/00  JURY FEE: Pd. by HON RICHARD C
                                                                  JARAMILLO
                                                        08/11/00  CITATION (CM): WORLDCOM, INC.    FILED: 08/21/00
                                                        08/11/00     SERVED: 08/16/00
                                                        08/18/00  PLTF'S FIRST AMENDED PETITION(IGARCIA)
                                                        08/21/00  CITATION (CM): WORLDCOM, INC.
                                                        08/21/00     SERVED: 08/24/00    FILED: 08/28/00
```

# IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF TEXAS
### BROWNSVILLE DIVISION

| | | |
|---|---|---|
| **MARIA McKENZIE, on behalf of herself** | § | **CIVIL ACTION NO.** _____ |
| **and all others similarly situated,** | § | **JURY** |
| | § | |
| **Plaintiffs,** | § | |
| | § | |
| **v.** | § | |
| | § | |
| **WORLDCOM, INC. a/k/a MCI** | § | |
| **WORLDCOM, INC. a/k/a MCI** | § | |
| **WORLDCOM COMMUNICATIONS,** | § | |
| **INC.,** | § | |
| | § | |
| **Defendant.** | § | |

## INDEX OF DOCUMENTS FILED

1.   Civil Cover Sheet

2.   Notice of Removal with the following attachments:

        a.   Plaintiff's First Amended Petition
        b.   Worldcom, Inc. Citation
        c.   Index of Attorneys
        d.   State Court Docket Sheet
        e.   Index of Matters being filed

3.   Notice of Removal to Plaintiff

4.   Notice of Removal to State Court

# Jenkens & Gilchrist
### A PROFESSIONAL CORPORATION

1445 ROSS AVENUE
SUITE 3200
DALLAS, TEXAS 75202

(214) 855-4500
TELECOPIER (214) 855-4300

www.jenkens.com

AUSTIN, TEXAS
(512) 499-3800

CHICAGO, ILLINOIS
(312) 425-3900

HOUSTON, TEXAS
(713) 951-3300

LOS ANGELES, CALIFORNIA
(310) 820-8800

SAN ANTONIO, TEXAS
(210) 246-5000

WASHINGTON, D.C.
(202) 326-1500

John C. Eichman
(214) 855-4372
jeichman@jenkens.com

September 15, 2000

Richard C. Jaramillo                                            *Via Hand Delivery*
Law Offices of Richard Jaramillo & Associates, P.C.
1412 Main Street, 22nd Floor
Dallas, Texas 75202

Re:  *Maria McKenzie, et al. v. WorldCom, Inc. a/k/a MCI WorldCom, Inc. a/k/a MCI WorldCom Communications, Inc.,* Cause No. 2000-08-3297-E; in the District Court of Cameron County, Texas.

Dear Mr. Jaramillo:

I enclose copies of the Federal and State Court Notices of Removal in the above-referenced action.   Should you have any questions, please contact me at the above number.

Very truly yours,

John C. Eichman

JCE:kca
Enclosures

Dallas3 623261 v 1, 46943.00103

## CAUSE NO. 2000-08-3297-E

| | | |
|---|---|---|
| **MARIA McKENZIE, on behalf of herself** | § | **IN THE DISTRICT COURT** |
| **and all others similarly situated,** | § | |
| | § | |
| **Plaintiffs,** | § | |
| | § | |
| **v.** | § | |
| | § | **357th JUDICIAL DISTRICT** |
| **WORLDCOM, INC. a/k/a MCI** | § | |
| **WORLDCOM, INC. a/k/a MCI** | § | |
| **WORLDCOM COMMUNICATIONS,** | § | |
| **INC.,** | § | |
| | § | |
| **Defendants.** | § | **CAMERON COUNTY, TEXAS** |

## NOTICE OF REMOVAL

PLEASE TAKE NOTICE, that on the 18th day of September, 2000, Defendant MCI

WORLDCOM Communications, Inc. ("WorldCom") filed with the United States District Court for the

Southern District of Texas, Brownsville Division, Defendant MCI WORLDCOM Communications, Inc.'s

Notice of Removal (the "Notice of Removal") removing this case from the District Court of Cameron

County, Texas, 357th Judicial District. A true and correct copy of the Notice of Removal is attached

hereto as Exhibit 1 and incorporated herein by reference for all purposes.

Respectfully submitted,

JENKENS & GILCHRIST
*A Professional Corporation*
1445 Ross Avenue, Suite 3200

Telephone:     (214) 855-4500
Facsimile:     (214) 855-4300

John C. Eichman
State Bar No. 06494800
Kerry C. Ahern
State Bar No. 24012195

John Alex Huddleston
State Bar No. 10148400
JENKENS & GILCHRIST
*A Professional Corporation*
1400 Frost Bank Tower
100 West Houston Street
San Antonio, Texas 78205-1457
Telephone:     (210) 246-5000
Facsimile:     (210) 246-5999

ATTORNEYS FOR DEFENDANT
MCI WORLDCOM COMMUNICATIONS, INC.

# CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the that instrument was served upon all counsel of record as follows by hand delivery on this _15th_ day of September, 2000:

Richard C. Jaramillo
Ray L. Vela
Law Offices of Richard Jaramillo & Associates, P.C.
1412 Main Street, 22nd Floor
Dallas, Texas 75202
(214) 744-3364
(214) 748-6603 - fax

John C. Guclimo

NOTICE OF REMOVAL - PAGE 3

Dallas3 596990 v 1, 46943 00103

## CAUSE NO.  2000-08-3297-E

| | | |
|---|---|---|
| MARIA McKENZIE, on behalf of herself<br>and all others similarly situated, | §<br>§<br>§ | IN THE DISTRICT COURT |
| Plaintiffs, | §<br>§ | |
| v. | §<br>§ | 357ᵗʰ JUDICIAL DISTRICT |
| WORLDCOM, INC. a/k/a MCI<br>WORLDCOM, INC. a/k/a MCI<br>WORLDCOM COMMUNICATIONS,<br>INC., | §<br>§<br>§<br>§ | |
| Defendants. | §<br>§ | CAMERON COUNTY, TEXAS |

### NOTICE OF REMOVAL

PLEASE TAKE NOTICE, that on the 18th day of September, 2000, Defendant MCI

WORLDCOM Communications, Inc. ("WorldCom") filed with the United States District Court for the

Southern District of Texas, Brownsville Division, Defendant MCI WORLDCOM Communications, Inc.'s

Notice of Removal (the "Notice of Removal") removing this case from the District Court of Cameron

County, Texas, 357th Judicial District.  A true and correct copy of the Notice of Removal is attached

hereto as Exhibit 1 and incorporated herein by reference for all purposes.

Respectfully submitted,

JENKENS & GILCHRIST
*A Professional Corporation*
1445 Ross Avenue, Suite 3200

Telephone:     (214) 855-4500
Facsimile:     (214) 855-4300

John C. Eichman
State Bar No. 06494800
Kerry C. Ahern
State Bar No. 24012195

John Alex Huddleston
State Bar No. 10148400
JENKENS & GILCHRIST
*A Professional Corporation*
1400 Frost Bank Tower
100 West Houston Street
San Antonio, Texas 78205-1457
Telephone:     (210) 246-5000
Facsimile:     (210) 246-5999

ATTORNEYS FOR DEFENDANT
MCI WORLDCOM COMMUNICATIONS, INC.

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the that instrument was served upon all counsel of record as follows by hand delivery on this ___15th___ day of September, 2000:

Richard C. Jaramillo
Ray L. Vela
Law Offices of Richard Jaramillo & Associates, P.C.
1412 Main Street, 22nd Floor
Dallas, Texas 75202
(214) 744-3364
(214) 748-6603 - fax

*John C Guclama*

# Jenkens & Gilchrist
### A PROFESSIONAL CORPORATION

1445 ROSS AVENUE
SUITE 3200
DALLAS, TEXAS 75202

(214) 855-4500
TELECOPIER (214) 855-4300

www.jenkens.com

John C. Eichman
(214) 855-4372
jeichman@jenkens.com

AUSTIN, TEXAS
(512) 499-3800

CHICAGO, ILLINOIS
(312) 425-3900

HOUSTON, TEXAS
(713) 951-3300

LOS ANGELES, CALIFORNIA
(310) 820-8800

SAN ANTONIO, TEXAS
(210) 246-5000

WASHINGTON, D.C.
(202) 326-1500

September 15, 2000

Michael N. Milby, Clerk
U.S. District Court, Southern District of Texas
Brownsville Division
515 Rusk Street
Houston, Texas 77002

**VIA FEDERAL EXPRESS**

Re:   *Maria McKenzie, et al. v. WorldCom, Inc. a/k/a MCI WorldCom, Inc. a/k/a MCI WorldCom Communications, Inc.*, Cause No. 2000-08-3297-E; in the District Court of Cameron County, Texas.

Dear Mr. Milby:

Enclosed are the following in the above-reference matter:

1.   Civil Cover Sheet;

2.   Check in the amount of $150.00;

3.   Original and two copies of Notice of Removal;

4.   State Court Notice of Removal; and

5.   Notice of Removal to Plaintiff.

<u>EXHIBIT 1</u>

# Jenkens & Gilchrist
### A PROFESSIONAL CORPORATION

Michael N. Milby, Clerk
September 15, 2000
Page 2

      Please file the Notice of Removal and return a filed-marked copy to me in the enclosed self-addressed stamped envelope.  Thank you in advance for your assistance.

            Very truly yours,

            John C. Eichman

JCE:fg
Enclosures

cc:    Richard C. Jaramillo (w/o encls. - via hand delivery)

# CIVIL COVER SHEET

The JS-44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. (SEE INSTRUCTIONS ON THE REVERSE OF THE FORM.)

## I. (a) PLAINTIFFS

Maria McKenzie

**DEFENDANTS**

MCI Worldcom, Inc.

**(b)** COUNTY OF RESIDENCE OF FIRST LISTED PLAINTIFF ___Cameron___
(EXCEPT IN U.S. PLAINTIFF CASES)

COUNTY OF RESIDENCE OF FIRST LISTED DEFENDANT _____
(IN U.S. PLAINTIFF CASES ONLY)
NOTE:   IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT
OF LAND INVOLVE

**(c)** ATTORNEYS (FIRM NAME, ADDRESS, AND TELEPHONE NUMBER)
Richard C. Jaramillo
Law Offices of Richard Jaramillo & Associates, P.C.
1412 Main Street, 22nd Floor
Dallas, Texas 75202  Phone: 214/744-3364

ATTORNEYS (IF KNOWN)
John C. Eichman
JENKENS & GILCHRIST
1445 Ross Avenue, Suite 3200
Dallas, TX 75202-2799
(214) 855-4500

## II. BASIS OF JURISDICTION   (PLACE AN "X" IN ONE BOX ONLY)

☐ 1 U.S. Government
    Plaintiff

☐ 2 U.S. Government
    Defendant

■ 3 Federal Question
    (U.S. Government Not a Party)

☐ 4 Diversity
    (Indicate Citizenship of Parties
    in Item III)

## III. CITIZENSHIP OF PRINCIPAL PARTIES (PLACE AN "X" IN ONE BOX
(For Diversity Cases Only)    FOR PLAINTIFF AND ONE BOX FOR DEFENDANT

| | PFT | DEF | | | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated or Principal Place of Business In This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated and Principal Place of Business In Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. ORIGIN   *(PLACE AN "X" IN ONE BOX ONLY)*

☐ 1 Original
    Proceeding

■ 2 Removed from
    State Court

☐ 3 Remanded from
    Appellate Court

☐ 4 Reinstated or
    Reopened

☐ 5 Transferred from
    another district
    (specify)

☐ 6 Multidistrict
    Litigation

☐ 7 Appeal to
    District Judge
    from Magistrate
    Judgment

## V. NATURE OF SUIT  *(PLACE AN "X" IN ONE BOX ONLY)*

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | ☐ 610 Agriculture | ☐ 422 Appeal 28 USC 158 | ☐ 400 State Reapportionment |
| ☐ 120 Marine | ☐ 310 Airplane | ☐ 362 Personal Injury - Med. Malpractice | ☐ 620 Other Food & Drug | ☐ 423 Withdrawal 28 USC 157 | ☐ 410 Antitrust |
| ☐ 130 Miller Act | ☐ 315 Airplane Product Liability | ☐ 365 Personal Injury - Product Liability | ☐ 625 Drug Related Seizure of Property 21 USC 881 | | ☐ 430 Banks and Banking |
| ☐ 140 Negotiable Instrument | ☐ 320 Assault, Libel & Slander | ☐ 368 Asbestos Personal Injury - Product Liability | ☐ 630 Liquor Laws | **PROPERTY RIGHTS** | ☐ 450 Commerce/ICC Rates/etc. |
| ☐ 150 Recovery of Overpayment & Enforcement of Judgment | ☐ 330 Federal Employers' Liability | | ☐ 640 R.R. & Truck | ☐ 820 Copyrights | ☐ 460 Deportation |
| ☐ 151 Medicare Act | ☐ 340 Marine | **PERSONAL PROPERTY** | ☐ 650 Airline Regs. | ☐ 830 Patent | ☐ 470 Racketeer Influenced and Corrupt Organizations |
| ☐ 152 Recovery of Defaulted Student Loans (Excl. Veterans) | ☐ 345 Marine Product Liability | ☐ 370 Other Fraud | ☐ 660 Occupational Safety/ Health | ☐ 840 Trademark | ☐ 810 Selective Service |
| ☐ 153 Recovery of Overpayment of Veteran's Benefits | ☐ 350 Motor Vehicle | ☐ 371 Truth in Lending | ☐ 690 Other | **LABOR** | **SOCIAL SECURITY** | ☐ 850 Securities/Commodities/ Exchange |
| ☐ 160 Stockholders' Suits | ☐ 355 Motor Vehicle Product Liability | ☐ 380 Other Personal Property Damage | ☐ 710 Fair Labor Standards Act | ☐ 861 HIA (1395ff) | ☐ 875 Customer Challenge 12 USC 3410 |
| ☐ 190 Other Contract | ☐ 360 Other Personal Injury | ☐ 385 Property Damage Product Liability | ☐ 720 Labor/Mgmt. Relations | ☐ 862 Black Lung (923) | ☐ 891 Agricultural Acts |
| ☐ 195 Contract Product Liability | | | ☐ 730 Labor/Mgmt. Reporting & Disclosure Act | ☐ 863 DIWC/DIWW (405(g)) | ☐ 892 Economic Stabilization Act |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | ☐ 740 Railway Labor Act | ☐ 864 SSID Title XVI | ☐ 893 Environmental Matters |
| ☐ 210 Land Condemnation | ☐ 441 Voting | ☐ 510 Motions to Vacate Sentence Habeas Corpus: | ☐ 790 Other Labor Litigation | ☐ 865 RSI (405(g)) | ☐ 894 Energy Allocation Act |
| ☐ 220 Foreclosure | ☐ 442 Employment | | ☐ 791 Empl. Ret. Inc. Security Act | **FEDERAL TAX SUITS** | ☐ 895 Freedom of Information Act |
| ☐ 230 Rent Lease & Ejectment | ☐ 443 Housing/ Accommodations | ☐ 530 General | | ☐ 870 Taxes (U.S. Plaintiff or Defendant) | ☐ 900 Appeal of Fee Determination Under Equal Access to Justice |
| ☐ 240 Torts to Land | ☐ 444 Welfare | ☐ 535 Death Penalty | | ☐ 871 IRS - Third Party 26 USC 7609 | ☐ 950 Constitutionality of State Statutes |
| ☐ 245 Tort Product Liability | ☐ 440 Other Civil Rights | ☐ 540 Mandamus & Other | | | ☐ 890 Other Statutory Actions |
| ☐ 290 All Other Real Property | | ☐ 550 Civil Rights | | | |

## VI.   CAUSE OF ACTION
(CITE THE U.S. CIVIL STATUTE UNDER WHICH YOU ARE FILING AND WRITE BRIEF STATEMENT OF CAUSE.
DO NOT CITE JURISDICTIONAL STATUTES UNLESS DIVERSITY)

Civil action against telecommunications carrier providing interstate communications services alleging deceptive advertising and negligent misrepresentation.

## VII.   REQUESTED IN COMPLAINT:

Preliminary Injunction

✔ CHECK IF THIS IS A CLASS ACTION
   UNDER F.R.C.P. 23

**DEMAND $**
in excess of minimum
jurisidictional limits

CHECK YES only if demanded in complaint:
**JURY DEMAND:**   ☐ YES  ■ NO

## VIII. RELATED CASE(S) IF ANY See instructions):

JUDGE _____   DOCKET NUMBER _____

DATE  9/15/00

SIGNATURE OF ATTORNEY OF RECORD  *John C. Eichman*

FOR OFFICE USE ONLY

RECEIPT #_____  AMOUNT_____  APPLYING IFP_____  JUDGE_____  MAG. JUDGE_____

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
BROWNSVILLE DIVISION

| | | |
|---|---|---|
| MARIA McKENZIE, on behalf of herself and all others similarly situated, | § § § | CIVIL ACTION NO. _____ JURY |
| Plaintiffs, | § § | |
| v. | § § | |
| WORLDCOM, INC. a/k/a MCI WORLDCOM, INC. a/k/a MCI WORLDCOM COMMUNICATIONS, INC., | § § § § | |
| Defendant. | § § § | |

## DEFENDANT MCI WORLDCOM COMMUNICATIONS, INC.'S NOTICE OF REMOVAL

Pursuant to 28 U.S.C. § 1446, Defendant MCI WORLDCOM Communications, Inc. ("WorldCom")[1], by its attorneys, submits its Notice of Removal. In support of this Notice, WorldCom states as follows:

## I.    INTRODUCTION

1.    On August 9, 2000, Plaintiff Maria McKenzie ("Plaintiff") filed a putative class action petition in the 357th District Court of Cameron County, Texas, entitled *Maria McKenzie, et al. v.*

---

[1]    The Plaintiff incorrectly assumes that WorldCom, Inc., MCI WORLDCOM, Inc., and MCI WORLDCOM Communications, Inc. are the same entity. WorldCom, Inc., which prior to May 1, 2000, was named MCI WORLDCOM, Inc., and MCI WORLDCOM Communications, Inc. are distinct corporate entities.  MCI WORLDCOM Communications, Inc. is the proper party to this lawsuit as it provides telecommunications services to consumers and engages in marketing and advertising for those services. WorldCom, Inc. is an improper party because it does not provide services to consumers and does not engage in marketing or advertising of such services.

NOTICE OF REMOVAL - PAGE 1

Dallas3 596993 v 1, 46943 00103

CutePDF - www.texis.com

*WorldCom, Inc. a/k/a MCI WorldCom, Inc. a/k/a MCI WorldCom Communications, Inc.*, Cause No. 2000-08-3297-E.  Plaintiff filed a First Amended Petition (the "Petition") on August 18, 2000.

2.      Plaintiff served WorldCom with a citation and Plaintiff's First Amended Petition (the "Petition") on August 24, 2000.  This Notice is filed within 30 days of service on WorldCom, and therefore is timely pursuant to 28 U.S.C. § 1446(b). Murphy Bros., Inc. v. Michetti Pipe Stringing, Inc., 119 S. Ct. 1322, 1325 (1999).  Pursuant to 28 U.S.C. § 1446(a), true and correct copies of the following documents, which have been received by WorldCom, are attached as indicated:

Exhibit A        Plaintiff's First Amended Petition

Exhibit B        WorldCom, Inc. Citation

WorldCom has not been served with any other pleading, process or order except those attached as Exhibits A and B.  Pursuant to Rule 3(K) of the Local Rules for the Southern District of Texas,  a list of all counsel of record, the state court docket sheet, and an index of matters being filed are attached as, respectively, Exhibits C, D and E.  WorldCom has not filed an answer in the state court proceeding.

3.      Written notice of the filing of this Notice of Removal will be given promptly to Plaintiff and, together with a copy of the Notice of Removal, will be filed with the Clerk of the  District Court of Cameron County, Texas, pursuant to 28 U.S.C. § 1446(d).

4.      This case is a civil action over which this Court has original jurisdiction under 28 U.S.C. §§ 1331 and 1337.  Plaintiff's claims necessarily arise under the federal Communications Act of 1934, 47 U.S.C. §§ 151 et seq. (the "Act"), because the Act has completely preempted the state law basis for those claims.  Plaintiff's claims necessarily involve a challenge to WorldCom's rates for interstate services and the federal tariffs which WorldCom files with the Federal Communications Commission ("FCC").

**NOTICE OF REMOVAL - PAGE 2**

CutePDF - www.tesisk.com

WorldCom's rates for interstate services and its federal tariffs are governed exclusively by federal law. Thus, the state court action is properly removed to this Court under 28 U.S.C. § 1441.

## II.    THE PETITION'S ALLEGATIONS

5.    According to the Petition, Plaintiff (and others similarly situated) suffered damages as a result of alleged deceptive advertising and telemarketing by WorldCom which resulted in Plaintiff being charged more for long-distance services than she felt she should pay. Petition at 4, 9.   Plaintiff alleges that this conduct gives rise to causes of action under the Texas Deceptive Trade Practices Act ("DTPA") and for negligent misrepresentation.   Petition at 10-13.

6.    The purported deception and misrepresentations about which Plaintiff complains stem from WorldCom's alleged failure to disclose certain charges, fees, rates, and restrictions relating to services WorldCom provides to its customers.  Those charges, fees, rates, and restrictions are set forth in federal tariffs duly filed by WorldCom with the FCC. Any complaint about the fees charged to customers for long-distance telecommunications services necessarily involves an evaluation of WorldCom's FCC tariffs.

## III.    THE STANDARD FOR REMOVAL BASED ON COMPLETE PREEMPTION

7.    The complementary doctrines of complete preemption and artful pleading establish this Court's federal question jurisdiction over this action under 28 U.S.C. §§ 1331 and 1337. Those doctrines establish that federal law extinguishes Plaintiff's artfully pleaded state-law claims, as those claims necessarily arise only under federal law.   That is so because the Amended Petition (though styled as a case based on state common law and a state consumer protection statute) challenges the legality of rates and practices for interstate telephone service, which is governed exclusively by federal law.

8.      Although under the "well-pleaded complaint" doctrine a case may not be removed to federal court solely on the basis of the defense of preemption, <u>Caterpillar, Inc. v. Williams</u>, 482 U.S. 386, 392-93 (1987), the "complete preemption" doctrine exists as a "corollary" to this rule. <u>McClelland v. Gronwaldt</u>, 155 F.3d 507, 512 (5th Cir. 1998).  Under the complete preemption doctrine, as the Fifth Circuit has explained:

> "Congress may so completely preempt a particular area that any civil complaint raising this select group of claims is necessarily federal in character," and the case may be removed even if no federal claim is asserted in the complaint and federal preemption, raised as a defense, is the only issue of federal law implicated in the case.

<u>Anderson v. Electronic Data Systems Corp.</u>, 11 F.3d 1311, 1315 (5th Cir.), <u>cert. denied</u>, 513 U.S. 808 (1994) (quoting <u>Metropolitan Life Ins. Co. v. Taylor</u>, 481 U.S. 58, 66-67 (1987)).  <u>See also</u> <u>Rivet v. Regions Bank of Louisiana</u>, 522 U.S. 470, 475-76 (1998); <u>Heimann v. National Elevator Indus. Pension Fund</u>, 187 F.3d 493, 499-500 (5th Cir. 1999).  "Once an area of state law has been completely pre-empted, any claim purportedly based on that pre-empted state law is considered, from its inception, a federal claim, and therefore arises under federal law." <u>Caterpillar</u>, 482 U.S. at 393. In other words, "'a plaintiff may not defeat removal by omitting to plead necessary federal questions.'" <u>Rivet</u>, 522 U.S. at 475 (citation omitted). <u>See also</u> <u>Avitts v. Amoco Prod. Co.</u>, 53 F.3d 690, 693 (5th Cir. 1995).  As the Fifth Circuit has explained, "[i]f the only remedy available to plaintiff is federal . . . the case is removable regardless of what is in the pleading." <u>Carpenter v. Wichita Falls Indep. School Dist.</u>, 44 F.3d 362, 366 (5th Cir. 1995).

## IV.    PLAINTIFF'S ARTFULLY PLED PETITION IS ACTIONABLE ONLY UNDER FEDERAL LAW

9.      Plaintiff claims that through deceptive advertising, she was overcharged for long distance telecommunications services in violation of the DTPA. Plaintiff also claims that WorldCom negligently misrepresented both the rates charged for long distance, and the services included in its long distance program. In other words, Plaintiff's Petition asserts a right under Texas law to pay a charge for interstate telephone service different from the charge presently set forth in WorldCom's tariffs, and asks that the court declare unlawful provisions setting rates and services that are included in WorldCom's duly filed tariffs. However, a claim of this kind "can be maintained," if at all, "only under federal law." Cahnmann, 133 F.3d 484, 489-90 (7th Cir.), cert. denied, 118 S.Ct. 2368 (1998).   All terms and conditions related to the provision of long distance telephone service to consumers are, as a matter of law, governed by a federal tariff. 47 U.S.C. § 203. Indeed, once a tariff is filed with the FCC, it attains the status of binding federal law.   See, e.g., Lowden v. Simonds-Shields-Lonsdale Grain Co., 306 U.S. 516, 520 (1939) ("Until changed, tariffs bind both carriers and [customers] with the force of law."); Keogh v. Chicago & N.W. Ry. Co., 260 U.S. 156, 163 (1922); Cahnmann, 133 F.3d at 488 ("A tariff filed with a federal agency is the equivalent of a federal regulation."). The tariff "is the law" and "is not a mere contract." Carter v. American Tel. & Tel. Co., 365 F.2d 486, 496 (5th Cir.), cert. denied, 385 U.S. 1008 (1966). As the Seventh Circuit has explained, "a suit to enforce [a tariff], and even more clearly a suit to invalidate it as unreasonable . . . arise under federal law." Cahnmann, 133 F.3d at 488. Plaintiffs' claims in this case (though artfully pled as state law consumer rights and negligent misrepresentation claims) are, at bottom, nothing more than a challenge to the reasonableness of the charges set forth in WorldCom's federal tariffs. As such, they can only be maintained as federal law claims.

CVisPDF - www.heaha.com

10.     The Act, regulations implementing the Act, and the tariff -- all federal in nature -- constitute the body of law which creates and enforces the duties of carriers in the provision of long distance telephone services.  This comprehensive federal regulatory scheme, encompassed primarily in the detailed tariff system, governs pricing structures and billing practices for these services.  Congress has thus created a comprehensive regulatory scheme for interstate telecommunications, with the FCC regulating all services provided under the Act.  <u>United States v. Southwestern Cable</u>, 392 U.S. 157, 168 (1968); <u>Benanti v. United States</u>, 355 U.S. 96, 104 (1957).  The Act applies to "all interstate and foreign communication by wire or radio ... and to all persons engaged within the United States in such communication."  47 U.S.C. § 152(a).  Moreover, the purpose of the Act is to provide a uniform and exclusive system of rate-setting and to assure the equal and uniform provision of services.  <u>Cahnmann</u>, 133 F.3d at 487.  It specifically governs all carriers' charges, practices, and rates.  47 U.S.C. §§ 201, 203.  The Supreme Court emphatically reaffirmed the continuing validity of these principles in <u>AT&T v. Central Office Telephone</u>, 524 U.S. 214, 118 S. Ct. 1956 (1998).

11.     Pursuant to the Act, the FCC regulates charges for interstate calls through a tariff system.  The Act requires that every common carrier shall "file with the Commission and print and keep open for public inspection schedules [tariffs] showing all charges for itself and its connecting carriers ... and showing the classifications, practices, and regulations affecting such charges."  47 U.S.C. § 203(a).  From this regulatory structure governing both the content and the public availability of tariffs (which is shared by a number of regulated industries), the filed tariff doctrine arises.  The doctrine, a bedrock of federal law, provides that once a tariff is properly filed, no deviation from the rates or practices set forth in the tariff is permitted.  Moreover, because prices are set forth in the tariff, customers are conclusively presumed to

have notice of the tariff, including the tariffed prices. <u>Central Office Telephone</u>, 118 S. Ct. at 1962-64;

<u>Maislin Indus. v. Primary Steel, Inc.</u>, 497 U.S. 116, 127 (1990); <u>Louisville & Nashville R.R. v. Maxwell</u>,

237 U.S. 94, 97 (1915).

12.    Thus, the terms and conditions of telecommunications services are set forth in tariffs that

are, in essence, offers to sell on specified terms. <u>Cahnmann</u>, 133 F.2d at 487. The carrier may not deviate

from the terms of the tariff because the tariff functions as the contract between the carrier and its customers.

<u>Id.</u> Because the Act and tariff define this relationship, all claims relating to a carrier's rates necessarily arise

under the Act. <u>Id.</u> at 488.

13.    In 1998, the Supreme Court unequivocally confirmed the principle that the filed tariff

doctrine pre-empts state law causes of action — like the ones set forth in Plaintiffs' Petition — that

challenge the validity of a duly filed tariff. In <u>Central Office Telephone, Inc.</u>, 118 S. Ct. at 1964-65, the

Court held that the respondent's state law claims of breach of contract and tortious interference with

contract were pre-empted by the filed tariff doctrine. In so holding, the Court rejected respondent's

attempt to circumvent the filed tariff doctrine through state law contract and tort claims, noting that "'[t]he

rights as defined by the tariff cannot be varied or enlarged by either contract or tort of the carrier.'" <u>Id.</u> at

1965 (quoting <u>Keogh</u>, 260 U.S. at 163). Further, the Court emphasized that the filed tariff doctrine

precludes all forms of state law challenges to duly filed rates, even when based on claims of

misrepresentation. <u>Id.</u> at 1963 ("[E]ven if a carrier intentionally misrepresents its rate and a customer relies

on the misrepresentation, the carrier cannot be held to the promised rate if it conflicts with the published

tariff.").

14.     Applying these principles, the Seventh Circuit recently held that state law claims similar to those presented here are removable to federal court. In Cahnmann, a customer of Sprint's "Fridays Free" program filed a class action lawsuit in Illinois state court against Sprint, alleging various claims of "fraud under several Illinois fraud and consumer protection statutes as well as under the state's common law of torts," and a breach of contract claim.  133 F.3d at 490.  The plaintiff alleged that Sprint offered her and members of the class $1,000 worth of free long-distance calls on Fridays to anywhere in the world for one year.  However, four months into the program, Sprint amended its tariff pertaining to the "Fridays Free" program by deleting ten countries from the "anywhere in the world" portion of the program.  Plaintiff and several thousand members of the class who continued to place calls to one or more of the deleted countries brought suit to enforce the original tariff, and asserted that Sprint had committed fraud by failing to disclose to consumers that Sprint never intended to keep the original tariff in force for a full year.  Id. at 486-87.

15.     Sprint removed the action to federal court and moved to dismiss plaintiffs claims as barred by the filed tariff doctrine.  On appeal, Chief Judge Posner, writing for the Seventh Circuit, affirmed the removal and dismissal.  The Court noted that a tariff filed with a federal agency is the equivalent of a federal regulation; thus, a suit to enforce it arises under federal law.  Cahnmann, 133 F.3d at 488.  Therefore, "[f]ederal law does not merely create a right; it occupies the whole field, displacing state law."  Id. at 489.  Because the Plaintiffs' state law fraud claims, if successful, would result in setting aside Sprint's amended tariff and changing the rates customers would pay for long distance service, the suit simply could not be maintained under state law.  Id. at 490.  Such a claim could be brought, if at all, only under federal law.

16.     Numerous other courts have similarly held that complaints against carriers purportedly based on state law claims are properly removed to federal court because they are, of necessity, based on

federal law. See, e.g., Bastien v. AT&T Wireless Servs. Inc., 205 F.3d 983 (7th Cir. 2000) (upholding

removal in case asserting state-law breach of contract and consumer fraud claims)[2]; World Access USA

Corp. v. AT&T Corp., 2000 WL 297845 (S.D. Fla. 2000) (upholding removal in case asserting state-law

breach of contract); Mellman v. Sprint Communications Co., 975 F. Supp. 1458 (N.D. Fla. 1996)

(Plaintiffs' breach of contract claim was preempted by federal law and, accordingly, raised federal question

upon which removal was proper); In re Comcast Cellular Telecomms. Litig., 949 F. Supp. 1193 (E.D. Pa.

1996) (Plaintiffs' breach of implied duty of good faith and fair dealing and unjust enrichment claims were

preempted under the Act and under the artful pleading doctrine; consequently, complaint was properly

removed from state court); Thermalcraft, Inc. v. U.S. Sprint Communications Co., 779 F. Supp. 1039

(W.D. Mo. 1991) (Plaintiffs' breach of contract and state law tort claims arose under the Act, leading to

proper removal of the complaint from state court).

---

[2]    MCI Telecomms. Corp. v. Credit Builders of Am. Inc., 980 F.2d 1021 (5th Cir.), cert. granted and judgment vacated, 508 U.S. 957, opinion reinstated, 2 F.3d 103 (5th Cir.), cert. denied, 510 U.S. 978 (1993), is not to the contrary. First, Credit Builders is not good law. As several district courts within this Circuit have concluded, the Credit Builders panel impermissibly failed to follow a prior Fifth Circuit case, American Tel. & Tel. Co. v. Florida-Texas Freight, Inc., 357 F. Supp. 977 (S.D. Fla.), aff'd per curiam, 485 F.2d 1390 (5th Cir. 1973), and therefore is not binding precedent. See, e.g., MCI Telecomms. Corp. v. United Showcase, Inc., 847 F. Supp. 510, 511-13 (N.D. Tex. 1994). In Florida-Texas Freight, which is binding precedent, the district court -- in an opinion expressly adopted by the Fifth Circuit -- concluded that the federal courts have federal question jurisdiction under the Act over actions to collect unpaid long-distance charges. 357 F. Supp. at 978. See also 485 F.2d at 1390 (affirming "[f]or reasons cogently expressed in the district court opinion").
    In any event, Credit Builders is inapposite. In that case, MCI filed an ordinary collection action for unpaid long-distance charges in federal court, asserting that federal common law preempted state contract law in such circumstances. 980 F.2d at 1021-22. The Fifth Circuit rejected this asserted basis for jurisdiction and dismissed the action. Since the case "does not involve the validity, construction, or effect of the Communications Act or any other federal statute," the Fifth Circuit refused to find the existence of federal common law. Id. at 1023. Credit Builders is irrelevant here. In removing the instant case, MCI WorldCom does not rely on preemption of state law by federal common law, but on preemption by federal statute and regulation.

17.     The reasoning of these decisions is fully applicable here. Although Plaintiff attempts to base her Petition on state law consumer rights and negligent misrepresentation claims, the case necessarily seeks redress for alleged violations of federal law. The essence of Plaintiff's argument is that WorldCom's tariffed long-distance rates are different than the rates Plaintiff believed she would pay, which resulted in WorldCom collecting more than Plaintiff believes WorldCom is entitled to collect. This is nothing more than a challenge to the reasonableness of WorldCom's tariffed rates. Plaintiff has artfully plead a cause of action based on WorldCom's supposed violation of state law for collection of a charge mandated by the tariff. As the Supreme Court explained in Central Office Telephone, Inc., the filed tariff doctrine preempts any state law challenge to a filed rate, "even if a carrier intentionally misrepresents its rate and a customer relies on the misrepresentation." 118 S. Ct. at 1963. The only claim that may be brought is one based on the federal tariff.

18.     Accordingly, this Court has jurisdiction over this civil action under 28 U.S.C. §§ 1331 and 1441(b).

WHEREFORE, WorldCom requests that this action be removed to this Court, that this Court accept jurisdiction over this action, and that this action be entered on the docket of this Court for further proceedings as though this action had originally been instituted in this Court.

**NOTICE OF REMOVAL - PAGE 10**

Respectfully submitted,

John C. Eichman
Texas Bar No. 06494800
Kerry C. Ahern
Texas Bar No. 24012195

**JENKENS & GILCHRIST**
*A Professional Corporation*
1445 Ross Avenue, Suite 3200
Dallas, Texas 75202
Telephone:     (214) 855-4500
Facsimile:      (214) 855-4300

John Alex Huddleston
Texas Bar No. 10148400
**JENKENS & GILCHRIST**
*A Professional Corporation*
1800 Frost Bank Tower
100 West Houston Street
San Antonio, Texas 78205
Telephone:     (210) 246-5000
Facsimile:      (210) 246-5999
ATTORNEYS FOR DEFENDANT
MCI WORLDCOM COMMUNICATIONS, INC.

OF COUNSEL:
Thomas F. O'Neil III
William E. Smith
WORLDCOM, INC.
1133 19th Street, N.W.
Washington, D.C. 20036
Telephone:     (202)736-6612
Facsimile:      (202) 736-6482

**NOTICE OF REMOVAL - PAGE 11**

Dallas3 596993 v 1, 46943 00103

# CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the that instrument was served upon all counsel of record as follows by hand delivery on this _15th_ day of September, 2000:

Richard C. Jaramillo
Ray L. Vela
Law Offices of Richard Jaramillo & Associates, P.C.
1412 Main Street, 22nd Floor
Dallas, Texas 75202
(214) 744-3364
(214) 748-6603 - fax

**NOTICE OF REMOVAL - PAGE 12**

Dallas3 596993 v 1, 46943 00103

FILED 10:35 O'CLOCK __ M
AURORA DE LA GARZA, DIST. CLERK

AUG 1 8 2000

DISTRICT COURT
By Aurora Churrado

CAUSE NO. 2000-08-3297-E

| | | |
|---|---|---|
| MARIA McKENZIE, on behalf of herself and all others similarly situated,<br>Plaintiff, | §<br>§<br>§<br>§<br>§<br>§<br>§ | IN THE ~~DISTRICT COURT~~<br><br>357th JUDICIAL DISTRICT |
| WORLDCOM, INC. a/k/a MCI WORLDCOM, INC. a/k/a MCI WORLDCOM COMMUNICATIONS, INC.<br>Defendant. | §<br>§<br>§<br>§<br>§ | CAMERON COUNTY, TEXAS |

## PLAINTIFF'S FIRST AMENDED PETITION

TO THE HONORABLE JUDGE OF SAID COURT:

COMES NOW Plaintiff MARIA McKENZIE, on behalf of herself and all others similarly situated complaining of Defendant WORLDCOM, INC. a/k/a MCI WORLDCOM a/k/a MCI WORLDCOM COMMUNICATIONS, INC. Plaintiff files this her Original Petition, and for cause of action would show the Court and Jury as follows:

### I.    PARTIES

1.    Plaintiff MARIA McKENZIE is a natural person who is a citizen and resident of Cameron County, Texas. Plaintiff sues individually and on behalf of all those similarly situated.

2.    Defendant, WORLDCOM, INC., (hereinafter "WorldCom", "MCI" or "Defendant"), is a Georgia corporation with its principal place of business at 500 Clinton Center Drive, Clinton, Mississippi 39056. WorldCom was formerly known as MCI WORLDCOM, INC. WorldCom does business in the State of Texas under the name MCI WORLDCOM COMMUNICATIONS, INC. WorldCom may be served with process by serving its registered agent, NATIONAL REGISTERED AGENTS, INC. at 800 BRAZOS, AUSTIN, TEXAS 78701

---

**PLAINTIFF'S FIRST AMENDED PETITION**                                          Page 1 of 17

Any act of Defendant alleged in this Petition shall be deemed to include the acts of its employees, agents, subsidiaries or other representatives acting under Defendant's direction, control and authority.

## II.    DISCOVERY, JURISDICTION AND VENUE

3.    Discovery is intended to be conducted pursuant to Level III of the Texas Rules of Civil Procedure.

4.    The damages sought by Plaintiff, exclusive of interests and costs, meet the jurisdictional requirements of this Court.

5.    At all times material hereto, the Defendant transacted and has transacted business in the State of Texas, and has had sufficient minimum contacts with Texas such that the exercise of jurisdiction by courts in Texas over Defendant would not offend traditional notions of fair play and substantial justice.  MCI has and is transacting business within the State of Texas and is subject to personal jurisdiction in this State.

6.    All or a majority of the events which lead to this lawsuit occurred in Cameron County, Texas this cause arises from a single occurrence or transaction or series of occurrences or transactions in this County.

## III.    FACTS

### A.    PLAINTIFF AND THE PLAINTIFF CLASS

7.    Plaintiff MARIA McKENZIE is a Texas consumer, as defined by the Texas Deceptive Trade Practices Act, who purchased Defendant's residential telecommunications products and services.

---

8.     The Plaintiff Class is comprised of Texas consumers, as defined by the Texas Deceptive Trade Practices Act, who purchased Defendant's residential telecommunications products and services.

9.     Plaintiff has sent Defendant proper notice pursuant to Tex. Bus. & Com. C. § 17.41 et seq., and all other conditions precedent have been satisfied.

## B.     DEFENDANT IS A TELECOMMUNICATION SERVICE PROVIDER

10.     Defendant does business in Texas as a provider of telecommunications products and services. MCI offers its telecommunications products and services to consumers in Texas by advertising its products on television and through other types of media and through the use of telemarketing. MCI has solicited prospective Texas customers for its long distance calling plans, and other telecommunications services by, *inter alia*, the following methods: (a) running television advertisements in Texas; (b) mailing print advertisements and solicitations directly to Texas consumers; (c) running print advertisements in publications with national distributions; (d) advertising and hosting a web site on the Internet; and (e) making unsolicited telemarketing calls to Texas consumers and encouraging Texas consumers to contact telemarketers through advertised 1-800 numbers. MCI represents that by subscribing to one of MCI's services consumers can utilize MCI's services at specified rates and prices.

11.     In connection with the advertisement, offering for sale and sale of the above-described merchandise, Defendant, individually and through the acts of its employees, representatives and agents, or others acting on its behalf and/or at its direction, has employed misrepresentations, false promises, deception, and unfair practices, and has utilized concealment, suppression or omission of material facts.

---

**PLAINTIFF'S FIRST AMENDED PETITION**                                    **Page 3 of 17**

12.     Plaintiff and members of the Plaintiff Class, after reasonably relying on MCI's representations, selected MCI as his/her/their preferred long distance carrier and subscribed to one of MCI's long distance calling plans.  Plaintiff and members of the Plaintiff Class were induced to have MCI provide long distance service from a particular phone number and made use of MCI's long distance service when he or she dialed one (1) plus a long distance phone number from that telephone.  MCI provided various pricing plans for consumers who choose to use its long distance service in this fashion.

## C.     DECEPTIVE ADVERTISING AND TELEMARKETING

13.     Beginning at a date unknown and continuing to the present, MCI has made untrue and misleading statements in its advertising and solicitations regarding its services.

14.     MCI's advertisements are deceptive and misleading in a number of ways.  Several themes are common to these practices.  MCI's advertisements claim low per-minute rates, but fail to clearly and conspicuously disclose, and sometimes fail to disclose at all, substantial monthly charges that apply.  In addition, MCI fails to adequately disclose other material restrictions, such as location restrictions and time of day restrictions, that apply to its advertised services.  As a result of these deceptive and misleading advertisements, Texas consumers incur charges substantially in excess of the advertised rate.

15.     The following paragraphs set forth examples of the deceptive advertisements used to induce consumers to utilize MCI's services.  The examples discussed below are not intended to be all-inclusive.  Other MCI advertisements and solicitations regarding these and other services have been deceptive in similar ways.

16.     MCI, through its telemarketing agents, has made numerous untrue and/or misleading statements regarding many of MCI's services.  MCI's telemarketing practices have

---

**PLAINTIFF'S FIRST AMENDED PETITION**                                    **Page 4 of 17**

deceived and misled consumers in that such practices have falsely represented MCI's calling plan rates, including but not limited to, the rates for the consumer's long distance service, the rates for the consumer's international calls, and the rates for calls made by the consumer using an MCI calling card.  In addition, MCI, through its telemarketing agents, has failed to disclose material terms and conditions of MCI calling plans including but not limited to, monthly recurring charges, monthly minimum charges, location restrictions, and time of day restrictions.

17.    The untrue and misleading statements made by MCI's telemarketers are unfair and deceptive, have the tendency and capacity to mislead consumers, and do in fact mislead consumers.

18.    Consumers pay substantially more than what MCI represented its services would cost.  In addition, by misrepresenting and failing to adequately disclose other restrictions in its solicitations, MCI has prevented consumers from making fully informed choices regarding their choice of long distance carrier and their choice of long distance calling plan.   Consumers have been induced to switch their long distance carrier to MCI and/or to subscribe to an MCI calling plan based on misrepresentations and inadequate representations made by MCI.

19.    In short, consumers have been assigned and billed under MCI calling plans that were substantially different plans than those that were marketed to them and, as a result, incurred charges substantially in excess of the represented rates.

D.    **MCI's FIVE CENT CALLING PLAN**

20.    MCI's advertisements and solicitations regarding its "Five Cents Everyday" calling plan emphasize a purported five (5) cents per minute rate.

21.    However, MCI also imposes additional charges on its "Five Cents Everyday" calling plan customers which result in consumers paying more than five (5) cents per minute for

---

long distance calls they make using the calling plan.   MCI does not adequately disclose these additional charges, if it discloses them at all.  Among these additional charges are the following:

    a.    MCI charges a monthly "Carrier Access Charge" that can be as much as $1.46.

    b.    MCI charges a "Federal Universal Service Fee" that can be as much as 7.2% of the total cost of the customer's interstate and international long distance calls for the month;

    c.    MCI charges another monthly fee that can be as much as $4.95;

    d.    MCI charges a five-dollar ($5.00) monthly minimum under the plan which is imposed regardless of whether a subscriber makes any long distance calls under the plan.

    22.    Neither the "Carrier Access Charge" nor the "Federal Universal Service Fee" is a tax or surcharge that the government requires MCI to collect from consumers.  Instead, MCI imposes these charges solely at its own discretion.

    23.    MCI also imposes additional restrictions on its "Five Cents Everyday" calling plan customers.  Among these additional restrictions are the following:

    a.    Customers cannot obtain the five (5) cents a minute rate for intrastate long distance calls, i.e., long distance calls made within Texas.

    b.    Customers can only obtain the five (5) cents a minute rate during certain times of the day.  Specifically, the five (5) cents a minute rate only applies on weekends and on weekday nights from seven o'clock (7:00) p.m. to six fifty-nine o'clock (6:59) a.m.   The weekday rate MCI charges during the day, from six fifty-nine o'clock (6:59) a.m. to seven o'clock (7:00) p.m., is  substantially in excess of five cents per minute.

---

24.     All of the additional charges and other restrictions set forth above significantly impact the price consumers pay for service under MCI's calling plan and are material terms and conditions when MCI offers its plan to prospective customers.   These additional charges are frequently substantially larger charges to the consumer than the total of all per minute charges.

25.     MCI does not clearly and conspicuously disclose these additional charges and restrictions in its advertisements and solicitations.   In some instances, MCI does not disclose the restrictions at all in its advertisements and solicitations.   Examples of MCI advertisements containing inadequate disclosures regarding these charges and restrictions include MCI's "Billboard of the Millennium" and "Jordan Calls Bugs" television advertisements.   Many other MCI advertisements for the "Five Cents Everyday" plan, and for its other calling plans, also have contained similar inadequate disclosures.

26.     First, MCI does not disclose in its advertisements and solicitations the MCI "Carrier Access Charge."   For instance, this charge is not disclosed at all in MCI's "Billboard of the Millennium" advertisement or "Jordan Calls Bugs" advertisement.

27.     Second, MCI does not disclose in its advertisements and solicitations the MCI "Federal Universal Service Charge."   For instance, as with the "Carrier Access Charge," this charge is not disclosed at all in MCI's "Billboard of the Millennium" advertisement or "Jordan Calls Bugs" advertisement.

28.     Third, MCI does not clearly and conspicuously disclose in its advertisements and solicitations its other "monthly fee."   For instance, in the "Billboard of the Millennium" advertisement, a $1.95 monthly fee is flashed across the bottom of the television screen, for a brief period of time, in fine print against a varied and light background with considerable movement and/or distraction.   Likewise, in the "Jordan Calls Bugs" advertisement, a $4.95

---

monthly fee is not disclosed clearly and conspicuously but instead is flashed across the bottom of the television screen, for a brief period of time, in fine print while Michael Jordan is speaking and a cartoon character is moving about on a basketball court accompanied by distracting special effects.

29.     Fourth, MCI does not clearly and conspicuously disclose in its advertisements and solicitations its $5.00 monthly minimum charge.  For instance, in MCI's "Billboard of the Millennium" advertisement, a phrase reading "$5 monthly minimum" is flashed across the bottom of the television screen, for a brief period of time, in fine print against a varied and light background with considerable movement and/or distraction.

30.     Fifth, MCI does not clearly and conspicuously disclose in its advertisements and solicitations that the advertised rates under the plan do not apply to intrastate long distance calls. For instance, in MCI's "Billboard of the Millennium" advertisement and "Jordan Calls Bugs" advertisement, a phrase reading "For Interstate Calls from Home" is flashed across the bottom of the television screen, for a brief period of time, in fine print against a varied and light background with considerable movement and/or distraction.

31.     Sixth, MCI does not clearly and conspicuously disclose in its advertisements and solicitations that the five (5) cents a minute rate only applies on weekends and weekday nights. Nonetheless, MCI touts and emphasizes that the five (5) cents per minute rate is available "everyday" even though the five (5) cents per minute rate is not available during the day Monday through Friday but instead is only available at night on those days.  For instance, in MCI's "Billboard of the Millennium" advertisement, a phrase reading "7PM-7AM" is flashed across the bottom of the television screen, for a brief period of time, in fine print.  Moreover, at the same time this information is flashed across the bottom of the screen, Michael Jordan is speaking to

the audience and a cartoon character is moving about the screen, distracting the consumer's attention away from the fine print. Throughout the advertisement, a large, neon-lit sign emphasizes "five cents everyday." Likewise, in the "Jordan Calls Bugs" advertisement, a phrase reading "7PM-7AM" is flashed across the bottom of the television screen, for a brief period of time, in fine print. Nonetheless, the advertisement emphasizes on numerous occasions "five cents everyday" and the spokesperson states that "thanks to five cents everyday" other persons can be called at "anytime."

32. MCI's bold and dramatic emphasis on its five (5) cents per-minute rate and its intentional effort to withhold from potential customers the additional costs and restrictions of its plan is unfair and deceptive, has the tendency and capacity to mislead consumers, and does in fact mislead consumers.

33. Each consumer pays substantially more than what MCI represented its services would cost. In addition, by failing to adequately disclose these restrictions in its advertisements and solicitations, MCI has prevented consumers from making fully informed choices regarding their choice of long distance carrier and their choice of long distance calling plan. Consumers have been induced to switch their long distance carrier to MCI and/or to subscribe to an MCI calling plan based on misrepresentations and inadequate representations made by MCI. In short, consumers have been assigned and billed under MCI calling plans that were substantially different plans than those that were advertised to them and, as a result, incurred charges substantially in excess of the advertised rates.

### E.   CRAMMING

34. Cramming is a term used to refer to the practice of providing services without valid authorization, written or verbal, from a consumer; or, undertaken with some indicia of

---

authority obtained from a consumer through misrepresentation, deception or unfair practice. These enhanced services include a personal toll-free telephone number service.

35.     Defendant engaged in the unfair practice of cramming unwanted enhanced services onto Plaintiffs' phone bills in that such practice is unethical, oppressive, unscrupulous and causes substantial injury to consumers.

36.     Defendant engaged in deceptive trade practices by cramming unwanted enhanced services onto Plaintiffs' phone bills in that such practice has the tendency and/or capacity to mislead, deceive or cheat or tendency to create a false impression.

## IV.     CAUSES OF ACTION FOR DTPA VIOLATIONS BY DEFENDANT

37.     From during or about late 1998 until the present, and in connection with the advertising, offering for sale and sale of telecommunications services, MCI, individually and through its agents, employees, representatives and others on its behalf or at its direction, has and is engaged in the act, use and employment of deception, false promises, misrepresentations, unfair practices, and has employed and continues to employ concealment, suppression and omission of material facts - all declared to be unlawful under Tex. Bus. & Com. C. §§ 17.46(b)(5), (7), (9), (12) and (23).  These DTPA violations include, but are not limited to:

a.      Failing to clearly and conspicuously disclose the MCI "Carrier Access Charge" in its advertisements and solicitations;

b.      Failing to clearly and conspicuously disclose the MCI "Federal Universal Service Fee" in its advertisements and solicitations;

c.      Failing to clearly and conspicuously disclose other MCI monthly fees in its advertisements and solicitations;

d.   Failing to clearly and conspicuously disclose the MCI monthly minimum charge in its advertisements and solicitations;

e.   Failing to clearly and conspicuously disclose restrictions pertaining to location (e.g., intrastate long distance calls) in its advertisements and solicitations;

f.   Failing to clearly and conspicuously disclose time of day restrictions in its advertisements and solicitations;

g.   Labeling an MCI charge a "Federal Universal Service Fee" when said charge is not imposed on consumers by the federal government and the federal government does not require MCI to collect this charge from consumers;

h.   Representing a rate of five (5) cents "everyday" when in fact the rate does not apply during daytime hours Monday through Friday;

i.   Misrepresenting, directly or impliedly, that consumers will receive a certain rate when, in truth and in fact, consumers are charged different and/or higher rates for the calling plans for which they are signed-up;

j.   Misrepresenting, directly or impliedly, that MCI's bill for its long distance services will be included with the consumer's local telephone bill so that the consumer will, in effect, receive and have to pay only one telephone bill; when, in truth and in fact, consumers receive two bills - one from their local exchange carrier and one from MCI;

k.   Falsely promising that consumers will receive a certain rate when, in truth and in fact, consumers are charged different and/or higher rates for the calling plans for which they are signed-up;

---

l.   Engaging in deceptive advertising and solicitation practices by representing a rate the consumer will receive without disclosing all other costs, limitations, restrictions and conditions attendant to that rate, in that such practice has the tendency and/or capacity to mislead, deceive or cheat or tendency to create a false impression;

m.   Engaging in deceptive advertising and solicitation practices by cramming unwanted enhanced services onto consumers' phone bills in that such practice has the tendency and/or capacity to mislead, deceive or cheat or tendency to create a false impression;

n.   Concealing, suppressing and/or omitting by failing to clearly and conspicuously disclose the material fact that the five (5) cents per minute rate is only applicable during certain times and disclosing those times or other time of day restrictions;

o.   Concealing, suppressing and/or omitting by failing to clearly and conspicuously disclose the material fact that the rates for instate calling are different and/or that there are location restrictions;

p.   Concealing, suppressing and/or omitting by failing to clearly and conspicuously disclose the material fact that there are monthly recurring charges and their amounts;

q.   Concealing, suppressing and/or omitting by failing to clearly and conspicuously disclose the material fact that there is a monthly minimum charge and its amount;

r.   Concealing, suppressing and/or omitting by failing to clearly and conspicuously disclose the material fact that there is a "Carrier Access Charge" and its amount;

s.   Concealing, suppressing and/or omitting by failing to disclose the material fact that there is a "Federal Universal Service Fee" and its amount;

t.   Concealing, suppressing and/or omitting by failing to clearly and conspicuously disclose the material fact that there is a surcharge on all calling card calls;

u.   Misleading consumers into believing that calling card calls will be charged at the same rate as home telephone calls when in fact such was not the case;

v.   Engaging in the unfair practice of cramming unwanted enhanced services onto consumers' phone bills in that such practice is unethical, oppressive, unscrupulous and causes substantial injury to consumers.

38.     By virtue of the foregoing violations of law, Plaintiff and Plaintiff Class are entitled to the relief provided for below.

## V.   CAUSES OF ACTION FOR NEGLIGENT MISREPRESENTATION

39.     Plaintiff incorporates herein by reference all of the facts stated above.

40.     The Defendant supplied the false information for the Plaintiffs' benefit and guidance in its transaction with Defendant, knowing that the Plaintiffs would in fact rely on it. Plaintiffs reasonably and justifiably relied on the false information provided by the Defendant. The foregoing acts and omissions of the Defendant, taken separately or collectively, constitute a direct and proximate cause of the Plaintiffs' pecuniary loss set forth herein.

## VI.   CLASS ACTION AGAINST DEFENDANT

**A.     The Prerequisites Are Met By The Proposed Class.**

41.     Plaintiff brings this suit on behalf of herself, and on behalf of all those similarly situated, and as representatives of a class as defined by Tex. R. Civ. P. 42.  The Court should enter an Order certifying a Plaintiff class consisting of:   All Texas consumers who have

purchased Defendant's residential telecommunications products and services, specifically excluding all Cameron County District Judges, class counsel, Defendants and their directors, officers, employees, agents and attorneys.

42.     The Plaintiff notes that the proposed Plaintiff Class meets the prerequisites of a class:

(a)     **Numerosity**

43.     The Plaintiff Class is so numerous that joinder of all members is impracticable. The Plaintiff is unable to state the exact number of the members of the Plaintiff Class without the discovery of information in the hands of the Defendants.

(b)     **Commonality**

44.     There are questions of law and facts common to the Class.  The questions of fact and law affecting the Plaintiff Class as a whole include:

(1) Whether Defendant is guilty of advertising goods or services with intent not to sell them as advertised;

(2) Whether the actions of Defendants constitute (a) violations of the DTPA, (b) malicious conduct, or (c) negligent misrepresentation.

(c)     **Typicality**

45. The claims of the Plaintiff are typical of the claims of the Class.  The Plaintiff has a claim against Defendants.  These claims have the same essential characteristics as the claims of the Class as a whole and are based upon the identical or similar legal theory.  The claims are based, in part, upon injuries resulting from the misrepresentations made by Defendants and their employees, acting in the course and scope of their employment for the Defendants.  The

---

**PLAINTIFF'S FIRST AMENDED PETITION**                                    **Page 14 of 17**

members of the Plaintiff Class have suffered the same injury and possess the same interests as the Plaintiff.

**(d)** **Adequacy**

46. The Plaintiff, as a representative party, will fairly and adequately protect the interests of the Class. The attorneys representing the class representatives are qualified, experienced and able class action counsel.

**B.** **The Plaintiff Class Is Maintainable**

47. The proposed Plaintiff Class is maintainable as required by Tex. R. Civ. P. 42(b) for the following reasons:

**(a)** **Generally Applicable Conduct**

48. Defendants have acted on grounds generally applicable to the class, thereby making appropriate final injunctive relief with respect to the Class as a whole. Tex. R. Civ. P. 42(b).

**(b)** **Predominance and Superiority**

49. This suit is maintainable as a class action because common questions of law and fact predominate over any questions affecting only individual members, making a class action superior to all other methods available for the fair and efficient adjudication of this controversy. Tex. R. Civ. P. 42(b)(4).

## VII.    RELIEF REQUESTED

**Actual Damages**

50. As a direct result of Defendants' actions, the Named Plaintiffs and the Plaintiff Class have suffered damages, both actual and consequential, in excess of the minimum

---

jurisdictional limits of this Court. Each individual claim in this cause is equal to or less than $75,000.00 exclusive of interest and costs.

**Attorneys Fees**

51.   Plaintiff requests that she and the Plaintiff Class recover all reasonable and necessary attorneys fees allowed pursuant to their DTPA claims and any other applicable, cause(s) of action.

**Prejudgment and Post-judgment Interest**

52.   Plaintiff and the Plaintiff Class request both prejudgment and post-judgment interest at the maximum rate allowed by law in the State of Texas.

**Injunctive Relief**

53.   Named Plaintiffs request on behalf of themselves and on behalf of the Class that the Defendants be prohibited from engaging in the deceptive trade practices as stated herein.

**Discovery Rule and Fraudulent Concealment**

54.   Plaintiff hereby affirmatively pleads the discovery rule as that legal principal concept is applied and understood under the laws of the State of Texas and all other applicable state laws, in response to any claim by any Defendants that any of Plaintiff Class member's causes of action are barred by any statute of limitations. Plaintiff further pleads that all actions are timely plead in that they were recently discovered. Further, the Defendants fraudulently concealed their wrongful acts and omissions from the Plaintiff Class. Defendants' conduct constitutes fraudulent concealment and non-disclosure as that term has meaning under Texas law.

## VIII.   JURY DEMAND

55.   Plaintiff hereby requests that a jury decide all factual issues in this case.

## IX.   PRAYER

WHEREFORE, PREMISES CONSIDERED, Plaintiff respectfully requests that Defendants be cited to appear and answer this Petition and that upon final jury trial, Plaintiff and the Plaintiff Class recover judgment from the Defendants in an amount sufficient to compensate Plaintiff and the Plaintiff Class for her damages and for court costs, and that an injunction issue prohibiting Defendants from engaging in unlawful practices, and such other relief to which they may show themselves to be justly entitled.

Respectfully submitted,

LAW OFFICES OF RICHARD JARAMILLO
& ASSOCIATES, P.C.
1412 Main Street, 22nd Floor
Dallas, Texas 75202
(214) 744-3364
(214) 748-6603 (Fax)
ATTORNEYS FOR PLAINTIFFS

By: _____
    RICHARD C. JARAMILLO
    State Bar No. 10573200
    RAY L. VELA
    State Bar No. 00795075

Citation for Personal Service  – BY CERTIFIED MAIL    Lit. Seq.

No. 2000-08-003297-E

T H E   S T A T E   O F   T E X A S

NOTICE TO DEFENDANT:  You have been sued.  You may employ an attorney.  If you or your attorney do not file a written answer with the clerk who issued this citation by 10:00 a.m. on the Monday next following the expiration of twenty days after you were served this citation and petition, a default judgment may be taken against you.

TO: WORLDCOM, INC.
AKA MCI WORLDCOM COMMUNICATION
INC., C/O NATIONAL REGISTERED AGENTS, INC.
800 BRAZOS, AUSTIN, TX 78701

The _____DEFENDANT_____ , GREETING:

You are commanded to appear by filing a written answer to the

PLAINTIFF'S FIRST AMENDED PETITION

at or before 10:00 o'clock a.m. of the Monday next after the expiration of 20 days after the date of service of this citation before the Honorable District Court 357th Judicial District of Cameron County, Texas at the Courthouse of said county in Brownsville, Texas.  Said ____AMENDED PETITION____ was filed on AUGUST 18, 2000 .  A copy of same accompanies this citation.

The file number of said suit being No. 2000-08-003297-E.

The style of the case is:

MARIA MCKENZIE, ON BEHALF OF HERSELF AND ALL OTHER
VS.
WORLDCOM, INC. F/K/A MCI WORLCOM

Said petition was filed in said court by _____HON RICHARD C JARAMILLO
Attorney for _____PLAINTIFF_____ ), whose address is
412 MAIN ST. 22ND FLOOR DALLAS, TEXAS 75202   00000 .

The nature of the demand is fully shown by a true and correct copy of the petition accompanying this citation and made a part hereof.

The officer executing this writ shall promptly serve the same according to requirements of law, and the mandates thereof, and make due return as the law directs.

Issued and given under my hand and seal of said Court at Brownsville, Texas, this the 21st day of AUGUST , A.D. 2000.

AURORA DE LA GARZA , DISTRICT CLERK
Cameron County, Texas
974 E. Harrison St.
Brownsville, Texas 78521

By: _____ , Deputy

# IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF TEXAS
### BROWNSVILLE DIVISION

| | | |
|---|---|---|
| MARIA McKENZIE, on behalf of herself and all others similarly situated, | § § § | CIVIL ACTION NO. _____ JURY |
| Plaintiffs, | § § | |
| v. | § § | |
| WORLDCOM, INC. a/k/a MCI WORLDCOM, INC. a/k/a MCI WORLDCOM COMMUNICATIONS, INC., | § § § § § | |
| Defendant. | § § | |

## INDEX OF ATTORNEYS

1.  Richard C. Jaramillo
    Ray L. Vela
    Law Offices of Richard Jaramillo & Associates, P.C.
    1412 Main Street, 22nd Floor
    Dallas, Texas 75202
    (214) 744-3364
    (214) 748-6603 - fax
    Attorneys for Plaintiffs

2.  John C. Eichman                        John Alex Huddleston
    Kerry C. Ahern                          Jenkens & Gilchrist
    Jenkens & Gilchrist                     *A Professional Corporation*
    *A Professional Corporation*            1400 Frost Bank Tower
    1445 Ross Avenue                        100 West Houston Street
    Dallas, Texas 75202                     San Antonio, Texas 78205-1457
    (214) 855-4500                          (210) 246-5000
    (214) 855-4300 - fax                    (210) 246-5999 - fax
    Attorneys for Defendant

RUN DATE 09/14/00
RUN TIME 11:12 AM

PAGE: 01

2000-08-003297-E

MARIA MCKENZIE, ON BEHALF OF HERSELF AND ALL OTHER

VS.

WORLDCOM, INC. F/K/A MCI WORLCOM

* * * * C L E R K ' S   E N T R I E S * * * *

00545101
HON RICHARD C JARAMILLO
1412 MAIN ST. 22ND FLOOR
DALLAS, TEXAS 75202

(06)                                    08      09      00

BREACH OF CONTRACT                           30.00

RICHARD C JARAMILLO

08/09/00 ORIGINAL PETITION FILED
08/09/00 JURY FEE: Pd. by HON RICHARD C
         JARAMILLO
08/11/00 CITATION (CM): WORLDCOM, INC.
08/11/00 CITATION (CM): WORLDCOM, INC.
         SERVED: 08/16/00      FILED: 08/21/00
08/18/00 PLTF'S FIRST AMENDED PETITION(IGARCIA)
08/21/00 CITATION (CM): WORLDCOM, INC.
08/21/00 CITATION (CM): WORLDCOM, INC.
         SERVED: 08/24/00      FILED: 08/28/00

# IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF TEXAS
## BROWNSVILLE DIVISION

| | | |
|---|---|---|
| **MARIA McKENZIE, on behalf of herself** | § | **CIVIL ACTION NO.** _____ |
| **and all others similarly situated,** | § | **JURY** |
| | § | |
| **Plaintiffs,** | § | |
| | § | |
| **v.** | § | |
| | § | |
| **WORLDCOM, INC. a/k/a MCI** | § | |
| **WORLDCOM, INC. a/k/a MCI** | § | |
| **WORLDCOM COMMUNICATIONS,** | § | |
| **INC.,** | § | |
| | § | |
| **Defendant.** | § | |

## INDEX OF DOCUMENTS FILED

1.    Civil Cover Sheet

2.    Notice of Removal with the following attachments:

      a.    Plaintiff's First Amended Petition
      b.    Worldcom, Inc. Citation
      c.    Index of Attorneys
      d.    State Court Docket Sheet
      e.    Index of Matters being filed

3.    Notice of Removal to Plaintiff

4.    Notice of Removal to State Court

SOLO PAGE

# Jenkens & Gilchrist
### A PROFESSIONAL CORPORATION

1445 ROSS AVENUE
SUITE 3200
DALLAS, TEXAS 75202

(214) 855-4500
TELECOPIER (214) 855-4300

www.jenkens.com

AUSTIN, TEXAS
(512) 499-3800

CHICAGO, ILLINOIS
(312) 425-3900

HOUSTON, TEXAS
(713) 951-3300

LOS ANGELES, CALIFORNIA
(310) 820-8800

SAN ANTONIO, TEXAS
(210) 246-5000

WASHINGTON, D.C.
(202) 326-1500

John C. Eichman
(214) 855-4372
jeichman@jenkens.com

September 15, 2000

Richard C. Jaramillo
Law Offices of Richard Jaramillo & Associates, P.C.
1412 Main Street, 22nd Floor
Dallas, Texas 75202

*Via Hand Delivery*

Re:   *Maria McKenzie, et al. v. WorldCom, Inc. a/k/a MCI WorldCom, Inc. a/k/a
      MCI WorldCom Communications, Inc.,* Cause No. 2000-08-3297-E; in the
      District Court of Cameron County, Texas.

Dear Mr. Jaramillo:

I enclose copies of the Federal and State Court Notices of Removal in the above-referenced
action.   Should you have any questions, please contact me at the above number.

Very truly yours,

John C. Eichman

JCE:kca
Enclosures

Dallas3 623261 v 1, 46943.00103

## CAUSE NO. 2000-08-3297-E

| | | |
|---|---|---|
| MARIA McKENZIE, on behalf of herself and all others similarly situated, | § § § | IN THE DISTRICT COURT |
| Plaintiffs, | § § | |
| v. | § § | |
| WORLDCOM, INC. a/k/a MCI WORLDCOM, INC. a/k/a MCI WORLDCOM COMMUNICATIONS, INC., | § § § § | 357th JUDICIAL DISTRICT |
| Defendants. | § § | CAMERON COUNTY, TEXAS |

### NOTICE OF REMOVAL

PLEASE TAKE NOTICE, that on the 18th day of September, 2000, Defendant MCI

WORLDCOM Communications, Inc. ("WorldCom") filed with the United States District Court for the

Southern District of Texas, Brownsville Division, Defendant MCI WORLDCOM Communications, Inc.'s

Notice of Removal (the "Notice of Removal") removing this case from the District Court of Cameron

County, Texas, 357th Judicial District. A true and correct copy of the Notice of Removal is attached

hereto as Exhibit 1 and incorporated herein by reference for all purposes.

Respectfully submitted,

JENKENS & GILCHRIST
*A Professional Corporation*
1445 Ross Avenue, Suite 3200

Telephone:     (214) 855-4500
Facsimile:      (214) 855-4300

John C. Eichman
State Bar No. 06494800
Kerry C. Ahern
State Bar No. 24012195

John Alex Huddleston
State Bar No. 10148400
JENKENS & GILCHRIST
*A Professional Corporation*
1400 Frost Bank Tower
100 West Houston Street
San Antonio, Texas 78205-1457
Telephone:     (210) 246-5000
Facsimile:      (210) 246-5999

ATTORNEYS FOR DEFENDANT
MCI WORLDCOM COMMUNICATIONS, INC.

# CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the that instrument was served upon all counsel of record as follows by hand delivery on this _15th_ day of September, 2000:

Richard C. Jaramillo
Ray L. Vela
Law Offices of Richard Jaramillo & Associates, P.C.
1412 Main Street, 22nd Floor
Dallas, Texas 75202
(214) 744-3364
(214) 748-6603 - fax