

**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
BROWNSVILLE DIVISION**

United States District Court
Southern District of Texas
FILED

DEC 1 1 2000

Michael N. Milby
Clerk of Court

| | | |
|---|---|---|
| MARIA McKENZIE, on behalf of herself and all others similarly situated, | § § § | CIVIL ACTION NO. B-00-148 JURY |
| Plaintiffs, | § § | |
| v. | § § | |
| WORLDCOM, INC. a/k/a MCI WORLDCOM, INC. a/k/a MCI WORLDCOM COMMUNICATIONS, INC., | § § § § § | |
| Defendant. | § § | |

### MCI WORLDCOM COMMUNICATIONS, INC'S
### SUPPLEMENTAL BRIEF IN OPPOSITION TO PLAINTIFF'S MOTION TO REMAND

Defendant MCI WORLDCOM Communications, Inc. ("WorldCom") supplements its Brief in Opposition to Plaintiff's Motion for Remand filed on November 6, 2000 as follows:

### INTRODUCTION

The Court has jurisdiction over this removed action. Although Plaintiff Maria McKenzie ("Plaintiff") has tried to plead only state law claims, one or more of her claims arises exclusively under the Communications Act of 1934, 47 U.S.C. §151, et seq. The Communications Act completely preempts those claims, thereby giving this Court jurisdiction. In addition, this Court has jurisdiction under the corollary doctrine of artful pleading.

1

## ARGUMENT

**I.**     **Plaintiff's Claims and Requested Relief Are an Attack on Worldcom's Tariff.**

In arguing that her claims are not completely preempted and have not been artfully pled, Plaintiff completely ignores what it is she is claiming and what relief she is seeking. The Plaintiff alleges that WorldCom misrepresented or did not disclose in advertisements and solicitations certain rates, fees, charges and restrictions relating to its long-distance service.  Plaintiff complains about time of day restrictions in connection with WorldCom's "Five Cents Everyday" program as well as WorldCom's Carrier Access Charge, its Federal Universal Service Fee, other monthly fees, a monthly minimum and a surcharge on calling cards.  Each of those matters is covered by WorldCom's tariff. See WorldCom's Tariff F.C.C. No. 1.[1] Plaintiff contends that, because of those various limitations, charges, and fees, she paid more for service than was represented to her in the advertisements.  She seeks damages equal to the difference between what she says was represented to her as the cost of the service and what she has actually paid.  Plaintiff essentially is saying to WorldCom, "your rates and billing practices are unreasonable and unjust because they are not what you represented to me."

Plaintiff's claims obviously are an attack on WorldCom's tariff.  In determining whether a complaint challenges an FCC-approved rate, and therefore invokes federal jurisdiction, courts look both to the nature

---

[1]     Relevant excerpts from WorldCom's Tariff F.C.C. No. 1 are attached as Exhibit "A" to WorldCom's Opposition to Plaintiff's Motion to Remand.  WorldCom's Five Cents Everyday Plan ("Basic Calling Plan 11") and the monthly minimum charge associated with it are set forth on Tariff Pages 378, 397-98, and 736-37 in Section C.3. WorldCom's Carrier Access Charge and Federal Universal Service Fee are set forth on Tariff Pages 288, 293, and 297-98 in Section C.1.  The calling card surcharge applicable to Plaintiff's calling plan is provided for on Tariff Page 397 in Section C.3.

2

of the claim as well as to the relief sought. *See Cahnmann v. Sprint Corp.*, 133 F.3d 484 (7ᵗʰ Cir. 1998);

*see also Hunt v. Prison Realty Trust, Inc.*, No. 3:00-0244, *slip opinion* (M.D. Tenn. August 28, 2000).

Plaintiff contends that she can label her claims as state claims and thereby avoid a federal question and this

Court's jurisdiction.  Plaintiff is simply wrong.[2]

## II.    Plaintiff's Claims are Preempted by the Filed Tariff Doctrine under the Communication Act.

The first inquiry in the complete preemption analysis is whether Plaintiff's claims are subject to

ordinary preemption.  *See McClelland v. Gronwaldt*, 155 F.3d 507, 517 (5ᵗʰ Cir. 1998).  In light of

*AT&T v. Central Office Telephone, Inc.*, 118 S.Ct. 1956 (1998) and the numerous other cases

WorldCom cited in its opposition to the motion to remand and in its brief in support of its motion to dismiss,

Plaintiff cannot successfully contend that her claims survive ordinary preemption.

In *Central Office*, a reseller of long distance telephone services sued AT&T for breach of contract

and breach of a duty of good faith and fair dealing arising out of alleged promises made by AT&T with

respect to AT&T's services and billings.  Based on representations by an AT&T agent and advertising

in an AT&T sales brochures, the reseller argued that AT&T had promised various service, provisioning

and billing options in addition to those in AT&T's tariff. *Id.* at 1961-62.  The question before the Court

was "whether the federal filed-rate requirements of § 203 [of the Communications Act] pre-empt

respondents claims." *Id.* at 1962. The Court rejected the Ninth Circuit's narrow reading of the filed tariff

doctrine of the Communications Act:

---

[2]    WorldCom need demonstrate that only one of Plaintiff's claims challenges tariffed rates and is therefore completely preempted to establish federal jurisdiction; to the extent any of Plaintiff's state-law claims survive, this Court has supplemental jurisdiction over them. *See* 28 USC §1367(a).

3

> The Ninth Circuit thought the filed-rate doctrine inapplicable "because this case does not involve rates or ratesetting, but rather involves the provisioning of services and billing." 108 F.3d at 990. Rates, however, do not exist in violation....The Communications Act recognizes this when it requires the filed tariff to show not only "charges," but also "the classifications, practices, and regulations affecting such charges," 47 U.S.C. § 203(a); and when it makes it unlawful to extend to any person any privileges or facilities in such communication, or employ or enforce any classification, regulations, or practices affecting such charges" except those set forth in the tariff. 47 U.S.C. § 203.

*Id.* at 1963.

The Supreme Court held that even a carrier's intentional misrepresentation of rates or services cannot entitle the customer to something other than the published rate. *Id.* at 1965. The Court concluded that plaintiff's state-law contract claims were barred and further held that plaintiff's tort claims, as derivative of the contractual relationship, were barred because to allow recovery would have the effect of awarding the reseller a discriminatory rate: "Respondent asks for privileges not included in the tariff... [r]espondent can no more obtain unlawful preferences under the cloak of a tort claim than it can by contract." *Id.* at 1965. In so holding, the Court flatly rejected the argument that the Communications Act's savings clause, section 414, preserved the reseller's state contract and tort claims. The Court reasoned that "[a] claim for services that constitute unlawful preferences or that directly conflict with the tariff . . . cannot be "saved" under § 414." *Id.* at 1965.

By her claims and the relief she requests, Plaintiff seeks rates, charges, fees and limitations different from those set forth in WorldCom's tariff. Plaintiff's claims and the relief she seeks more directly target WorldCom's tariff than even those in *Central Office*. Even if WorldCom did make misrepresentations to Plaintiff about those matters (which WorldCom denies), her state law claims fall squarely within the

4

CVisPDF - www.fesoi.com

scope of the filed tariff doctrine and are preempted by the Communications Act. Plaintiff's only recourse is to assert a claim in federal district court under section 206 of the Communications Act or to file a complaint with the FCC. *Cahnmann,* 133 F.3d at 488 ("[t]he plaintiff could thus have obtained all the relief to which she is entitled . . . in a judicial or administrative proceeding . . . under the Federal Communications Act").

**III.** ***Central Office* is Critical to this Court's Jurisdiction.**

*Central Office* is critical to the complete preemption analysis for at least two reasons that Plaintiff has failed to recognize. First, the Supreme Court in *Central Office* took an expansive view of the preemptive effect of the filed tariff doctrine and the Communications Act. As the Seventh Circuit has noted in applying *Central Office,* "[i]n practice, most consumer complaints will involve the rates charged by their telephone companies or the quality of service." *Bastien v. AT&T Wireless Servs., Inc.*, 205 F.3d 983, 987 (7th Cir. 2000). Second, the Supreme Court flatly rejected a broad interpretation of the Communications Act's savings clause. Nearly all of the cases Plaintiff relies on in her reply brief in support of remand either predate *Central Office* and do not survive its holding or post-date *Central Office* and do not square with its holding.

In several cases Plaintiff cites, the courts held that there was no federal jurisdiction and remanded the cases because the courts narrowly, and incorrectly, construed what type of claim challenges rates and therefore falls within the scope of the Communications Act and the filed tariff doctrine. *See, e.g., DeCastro v. AWACS, Inc.*, 935 F. Supp. 541, (D. N.J. 1996)(noting that "it may be true that Congress intended claims against telecommunications providers directly challenging the provider's rates ... to be completely

5

preempted...," but holding that a challenge to billing practices did not implicate rates); *Weinburg v. Sprint Corporation*, 165 F.R.D. 431, 439 (D. N.J. 1996) (noting that "[c]laims involving the quality of Sprint's services, the reasonableness of its rates, or the lawfulness of the rates would clearly be preempted by the Act," but holding that deceptive advertising and misrepresentation did not implicate rates). Thus, while the courts in these earlier cases understood that challenges to rates, fees, and services were *completely preempted* by the Communications Act, the courts construed too narrowly what constituted a challenge to rates, fees, and services.[3]

In many other cases Plaintiff cites, the courts held there was no federal jurisdiction and remanded the cases based on a narrow, and now erroneous, interpretation of the Savings Clause in the Communications Act. Those courts found that Congressional intent to preempt was negated by the presence of the Savings Clause in Section 414 because it "saved" state law causes of action. *See, e.g., Bauchelle v. AT&T Corp.,* 989 F. Supp. 636 (D. New Jersey 1997); ("the savings clause does indeed evidence an intent by Congress that the complete pre-emption doctrine is inapplicable"); *Castellanos v. U.S. Long Distance Corp.*, 928 F. Supp. 753 (N.D. Ill. 1996) ("Congress intended the FCA to supplement, and not to completely preempt, the state law..."); *American Inmate Phone Systems v. U.S. Sprint Communications Co. Ltd. Partnership*, 787 F. Supp. 852 (N.D. Ill. 1992) (consumer fraud claim is preserved by savings clause); *Heichman v. American Telephone and Telegraph Co.*, 943 F. Supp. 1212 (C.D. Cal. 1995) (rejecting reasoning of *Ivy Broadcasting* because of failure of that court to address

---

[3]      *Access Telecom, Inc. v. MCI Telecommunications Corp.*, 197 F.3d 694 (5th Cir. 1999) is not inconsistent with this point.  In *Access*, the Fifth Circuit held that a claim for tortious interference with contract arising out of release of confidential information did not implicate rates and services.  This case is distinguishable from *Access* because the unlike the release of confidential information, the charges Plaintiff complains of are expressly provided for in WorldCom's duly filed tariffs.

Dallas3 648293 v 7, 46943.00103

savings clause); *Financial Planning Institute, Inc. v. American Telephone and Telegraph Co.*, 788 F. Supp. 75 (D. Mass. 1992) ("by enacting the savings clause, congress specifically provided for [state claims] in additional to federal causes of action"). This reasoning is not sustainable in light of the Supreme Court's ruling in *Central Office*.[4]

Plaintiff has asked this Court to follow three rulings by federal cases in Texas. All of those cases predate *Central Office* and none of them mandates remand in this case. In *Esquivel v. Southwestern Bell*, 920 F. Supp. 713 (S.D. Tex. 1996), the court determined that a challenge to the validity of a liquidated damages clause in a cellular telephone contract did not implicate the Communications Act. *Id.* at 716. The court relied first on the language of Section 332(c)(3)(A), which specifically declines to prohibit the states from regulating terms and conditions, and second on the fact that the liquidated damages clause was not provided for in the tariff. *See id.* Section 332 only applies to cellular carriers, it does not apply to WorldCom in this case. Moreover, this case involves substantively different claims. Plaintiff has challenged several rates, fees, and services that are specifically provided for in the tariff: "Five Cents" a minute; the Federal Universal Service Fee; the calling card surcharges; the Carrier Access Charge; the monthly minimum charge, and the location and time of day restrictions. Petition ¶ 37a-t. Plaintiff cannot hide a challenge to federally tariffed rates under the guise of state tort and consumer rights law. *See Cahnmann,* 133 F.3d at 502. Finally, the *Esquivel* court relied on the Savings Clause as militating against complete preemption of plaintiff's state-law claims. *Esquivel,* 920 F. Supp. at 716. As stated in *Central*

---

[4]     To further illustrate this point, the reasoning of the Northern District of Illinois in *Castellanos* and in *American* Inmate is displaced by the Seventh Circuit's decision in *Cahnmann*, and the District of Massachusetts' opinion in *Financial Planning* is displaced by that same court's recent opinion in *Kline & Co. v. MCI Communications,* 98 F.Supp.2d 69 (D. Mass 2000).

7

*Office*, there are no state claims that are saved where the Plaintiff challenges tariffed rates, fees, and services. Thus, *Esquivel* does not require remand in this case.[5]

Similarly, *KVHP TV Partners, Ltd. v. Channel 12 of Beaumont, Inc.*, 874 F. Supp. 756 (1995), is also of no import here. The case had nothing to do with tariffed carriers and challenges against their rates and services. The court in *KVHP* held that a television station's tortious interference claims for an alleged violation of an exclusivity agreement by another television station was not preempted by the Communications Act because of the savings clause. *Id.* 874 F. Supp. at 761. Because the claims at issue did not challenge rates and services, that court's reliance on the Savings Clause is irrelevant here.

*Ashley v. Southwestern Bell Telephone Co.*, 410 F. Supp. 1389 (W.D. Tex. 1976), also involved factually distinct circumstances and different aspects of the Communications Act. *Ashley* involved a claim for invasion of privacy arising out of a wiretap on the Plaintiff's phone line. The court held that state law controlled Plaintiff's allegations for tortious invasion of privacy, and the federal remedies set forth in the Communications Act were not exclusive, again relying on the Savings Clause. *Ashley*, 410 F. Supp.

---

[5]     At the hearing on the Motion to Remand, Plaintiff called the Court's attention to a New York state trial court opinion, *Naevus International, Inc. v. AT&T Corp.*, 7/19/2000 NYLJ 22 (col. 1). *Naevus* is a proposed class action against several wireless carriers, alleging breach of contract, false advertising, and deceptive practices. Because the defendants in that case are all wireless carriers, the court looked to Section 332 of the Communications Act in analyzing whether or not these claims were preempted. Section 332 reserves rate and entry regulation of wireless carriers for the federal government, but leaves the "terms and conditions" of service for state regulation. The court held that the breach of contract claims were preempted because they amounted to retroactive rate-setting but, in a ruling that might not be reconcilable with *Central Office*, held that the consumer fraud claims were not preempted under Section 332. To the extent that it relies on Section 332, the opinion in *Naevus* is not relevant here, because that section is not applicable to Plaintiff's claims against WorldCom. Also, there is no indication that the plaintiffs there were seeking the rate-modifying relief sought by the plaintiffs here, namely the difference between the rate as allegedly represented and the tariffed rate. Plaintiff's reliance on *Sanderson, Thompson, Ratledge & Zimny v. AWACS, Inc.*, 958 F. Supp 947 (D. Del. 1997), is misplaced for the same reasons.

8

at 1389. The case did not involve the preemptive effect of the Communications Act with respect to challenges against the rates, services, and fees of tariffed carriers.

**IV.   The Communications Act Satisfies the 5th Circuit Test for Complete Preemption.**

Having established that Plaintiff's claims are preempted under the Communications Act, the next issue in determining whether this Court has jurisdiction is whether the Communications Act completely preempts one or more of Plaintiff's claims. As discussed more fully in WorldCom's Brief in Opposition to Plaintiff's Motion to Remand, the Communications Act satisfies the Fifth Circuit test for complete preemption. *See Heiman v. National Elevator Indus. Pension Fund*, 187 F.3d 493, 500 (5th Cir.1999).

**A.     Civil Enforcement Provision.**

One or more of Plaintiff's claims is covered by a civil enforcement provision within the Communications Act. The Communications Act places an affirmative duty on carriers such as WorldCom to be just and reasonable in "[a]ll charges, practices, classifications, and regulations for and in connection with such communications service..." 47 U.S.C. § 201(b). The Act declares that all charges, practices, and classifications regarding services that are unjust or unreasonable are unlawful. *Id.*   If a common carrier does anything prohibited or unlawful under the Communications Act, that carrier "shall be liable to the person or persons injured thereby for the full amount of damages sustained in consequence of any such violation..." 47 U.S.C.  § 206. Section 207 provides that any person aggrieved by a carrier's unreasonable acts may make a complaint to the FCC or "[m]ay bring suit...in any district court of the United States of competent jurisdiction." 47 U.S.C. § 207.

9

Plaintiff claims that WorldCom committed wrongful acts with respect to its advertising and lack of disclosures of tariffed rates and services. Though plead as a claim for violation of the Texas Deceptive Trade Practices Act and for negligent misrepresentation, Plaintiff has actually plead a claim under the Communications Act for a violation of WorldCom's duty to be just and reasonable in all "charges, practices, classifications, and regulations for and in connection with" its long-distance service. The Communications Act therefore satisfies the first prong of the *Aaron* test because it creates a civil enforcement provision for violations of the Act.

Plaintiff wrongly asserts that the enforcement provision under Section 207 is limited to situations where the carrier "fail[s] to file tariffs, or files deceptive tariffs..." Plaintiff's Reply ¶ 2.8. A plain reading of Sections 203, 206 and 207, particularly after *Central Office*, reveals that an aggrieved consumer's cause of action is not so limited. The civil enforcement procedure established by these sections applies to all situations where a person is damaged by a carrier's unjust or unreasonable actions concerning its charges and practices. Plaintiff's complaints concerning WorldCom's "Five-Cents Everyday" program, its time of day restrictions, its Federal Universal Service Fee and its other charges and fees fall squarely within the Communication Act's civil enforcement provision.

B.    **Specific Jurisdictional Grant**.

As discussed above, Section 207 of the Communications Act gives this Court jurisdiction of Plaintiff's claims that she was damaged by WorldCom's unreasonable and unjust acts concerning its tariffed services.[6] Plaintiff argues that *MCI WorldCom, Inc. v. Federal Communications Commission*,

---

[6]    WorldCom no longer relies on section 401 cited in its Opposition to the Motion to Remand as a jurisdiction grant for the claims Plaintiff asserts here.

10

209 F.3d 760 (D.C. Cir. 2000), shows that the Communication Act does not contain specific jurisdictional

grant. This proposition is simply wrong. In that case, the court upheld an FCC order directing carriers to

stop filing federal tariffs for certain long distance service. The FCC order, however, will not go into effect

until April 2001[7] and will not have retrospective effect on the filed tariff doctrine. Significantly, the Supreme

Court's decision in *Central Office*, the Seventh Circuit's decisions in *Cahnmann* and *Bastien,* and the

Second Circuit's decision in *Marcus v. AT&T Corp.*, 138 F.3d 46 (2d Cir. 1998), which expansively

applied the filed tariff doctrine, all post-date the FCC's 1996 de-tariffing order but accord that order no

weight in their analysis. Sections 206 and 207 do not vanish when the carriers are detariffed. The Act still

will place a duty on carriers to act in a just and reasonable manner. Sections 206 and 207 will still provide

a cause of action and a jurisdictional grant to the courts for persons such as Plaintiff, who claim they have

been damaged by a carrier's wrongful act. The FCC order therefore does not affect the jurisdictional grant

relevant to this case.

C.    **Congressional Intent.**

Sections 206 and Section 207 show that through the Communications Act, Congress has

created a "parallel cause of action" to the state-law claims Plaintiff brings. This federalizing of Plaintiff's

claims illustrates the intent of Congress to complete preempt claims against telecommunications providers

that effectively challenge the provider's rates. *See Hunt* at 10. Moreover, the Supreme Court in *Central

Office* found the Congressional intent to create a uniform system that is free from state infringement is so

pervasive that "regardless of the carrier's motive - whether it seeks to benefit or harm a particular customer

---

[7]    Public Notice, *Common Carrier Bureau Extends Transition Period for Detariffing Consumer Long Distance Services,* CC Docket No. 96-61 (November 6, 2000).  A copy of this notice is attached as Exhibit "A".

11

- the policy of non-discriminatory rates is violated where similarly situated customers pay different rates for the same services." *Central Office* at 1963.

Plaintiff has requested relief in the form of a rebate from the tariffed rate. *Central Office* leaves no doubt that such relief is strictly prohibited under state law because it violates the non-discrimination strand of the filed tariff doctrine. "Congress has decreed that suits related to rates and service of telephone companies be handled in federal court. . . ." *Bastien,* 205 F.3d at 984. Congress has completely displaced Plaintiff's state-law challenges to WorldCom rates and services through Sections 206 and 207 of the Communications Act. "Accordingly, [where] Plaintiff's claims challenge the validity of the rates contained in FCC-approved tariffs, and thus fall within the scope of the federal cause of action, they necessarily arise under federal law and are subject to removal via the complete preemption doctrine." *Hunt* at 10. Thus, the three-part *Aaron* test for complete preemption is satisfied.

## V.     Plaintiff has Artfully Plead State Claims to Avoid Federal Jurisdiction.

"The artful pleading doctrine recognizes that the characterization of a federal claim as a state claim will not in all cases prohibit removal when the plaintiff has no state claim at all." *Carpenter v. Wichita Falls Independent School District,* 44 F.3d 362, 366 (5th Cir. 1995). Because she challenges tariffed rates and asks for relief in the form of a discriminatory rate, Plaintiff has no State claim. The Plaintiff cannot challenge the tariffed rates, services and fees of WorldCom in state court by refusing to plead federal causes of action.

> Although a defense, preemption may so forcibly and completely displace
> state law that the plaintiff's cause of action is either wholly federal or
> nothing at all...This doctrine represents a narrow exception to the rule
> requiring that basis of federal question jurisdiction to be found on the face

12

of the plaintiff's well-pleaded complaint and not in any anticipated defense.

*Id.* at 367.

Plaintiff cannot deny that she (1) intends to place restrictions on the rates WorldCom charges; and (2) intends to place restrictions on the way WorldCom advertises those rates. As discussed more fully in WorldCom's Brief in Opposition to the Plaintiff's Motion to Remand, Section 207 of the Communications Act provides a civil enforcement provision and a parallel cause of action to do exactly what the Plaintiff seeks to accomplish. Several of her claims are indistinguishable from a cause of action under Section 207. The fact that the Plaintiff has attempted to avoid pleading a federal cause of action does not conceal the exclusively federal nature of her claim.

> An examination of the Plaintiffs' complaint and the remedies that they seek demonstrates that the driving force behind their allegations is a desire to impose restrictions... upon the way in which Comcast advertises it rates....[and] also upon the rates which Comcast may charge for mobile telephone service...As such, a cause of action for damages under § 207 of the Communications Act would have been available to Plaintiffs.

*In re Comcast Cellular Telecommunications Litigation*, 949 F.Supp. 1193, 1200 (E.D.Pa. 1996). "This court will not allow Plaintiffs to engage in artful pleading in an effort to deny the Defendant a federal forum." *Id.* at 1204.

Plaintiff challenges tariffed services and requests relief in the form of damages that would effectively permit her to pay a reduced rate. These claims fall within the exclusive scope of the Communications Act, are indistinguishable from Section 207 claims and cannot be brought under state law. Plaintiff should not be permitted to avoid federal jurisdiction by artfully pleading causes of action which are maintainable exclusively under federal law.

13

# CONCLUSION

Under *Central Office,* Plaintiff's challenges to the rates, fees, and services set forth in WorldCom's tariff are clearly within the scope of the Communciations Act. The only two circuit courts, the Seventh Curcuit and the Second Circuit, to consider the removability of such claims have held them to be removable. *See Bastien*, 205 F.2d 989; *Cahnmann*, 133 F.3d 490; *Marcus*, 138 F.3d at 55-56. This Court should come to the same conclusion.

Respectfully submitted,

John C. Eichman
State Bar No. 06494800
Kerry C. Ahern
State Bar No. 24012195
JENKENS & GILCHRIST
*A Professional Corporation*
1445 Ross Avenue, Suite 3200
Dallas, Texas  75202
Telephone:    (214) 855-4500
Facsimile:    (214) 855-4300

John Alex Huddleston
Texas Bar No. 10148400
JENKENS & GILCHRIST
*A Professional Corporation*
1800 Frost Bank Tower
100 West Houston Street
San Antonio, Texas 78205
Telephone:    (210) 246-5000
Facsimile:    (210) 246-5999

**ATTORNEYS FOR DEFENDANT MCI WORLDCOM COMMUNICATIONS, INC.**

14

Dallas3 648293 v 7, 46943.00103

OF COUNSEL:

Thomas F. O'Neil III
William E. Smith
WORLDCOM, INC.
Law and Public Policy
1133 19th Street, N.W.
Washington, D.C. 20036
Telephone:      (202)736-6612
Facsimile:      (202) 736-6482


## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the above and foregoing instrument was served on the following counsel of record by first class mail, on this the 8th day of December, 2000:

Richard C. Jaramillo
Ray L. Vela
Law Offices of Richard Jaramillo &
Associates, P.C.
1412 Main Street, 22nd Floor
Dallas, Texas 75202
(214) 744-3364
(214) 748-6603 - fax

15



# PUBLIC NOTICE

**Federal Communications Commission**
**445 12th St., S.W.**
**Washington, D.C. 20554**

News Media Information  202 / 418-0500
Fax-On-Demand  202 / 418-2830
TTY  202 / 418-2555
Internet: http://www.fcc.gov
ftp.fcc.gov

November 6, 2000

## COMMON CARRIER BUREAU EXTENDS TRANSITION PERIOD FOR DETARIFFING CONSUMER LONG DISTANCE SERVICES

**DA 00-2489**
**CC Docket No. 96-61**

On May 1, 2000, the Commission's 1996 Order detariffing the interstate, domestic, interexchange services of nondominant interexchange carriers (IXCs) became effective.[1] On May 9, 2000, pursuant to a grant of delegated authority,[2] the Common Carrier Bureau implemented a nine-month transition period ending January 31, 2001, in the manner specified by the Commission in the *Detariffing Order*, and sought comment on possible modifications to the requirements for that transition period.[3]

By this Public Notice the Bureau extends the transition period until April 30, 2001, for mass market consumer services only. IXCs must still complete the process of detariffing domestic contract-type services by January 31, 2001.

For additional information, contact Judy Nitsche, Competitive Pricing Division, (202) 418-1520.

---

[1] *Policy and Rules Concerning the Interstate, Interexchange Marketplace, Implementation of 254(g) of the Communications Act of 1934*, CC Docket No. 96-61, Second Report and Order, 11 FCC Rcd 20730 (1996)(*Detariffing Order*); *Policy and Rules Concerning the Interstate, Interexchange Marketplace, Implementation of Section 254(g) of the Communications Act of 1934*, CC Docket No. 96-61, Order on Reconsideration, 12 FCC 15014 (1997)(*Reconsideration Order*); *Policy and Rules Concerning the Interstate, Interexchange Marketplace, Implementation of Section 254(g) of the Communications Act of 1934*, CC Docket No. 96-61, Second Order on Reconsideration and Erratum, 14 FCC Rcd 6004 (1999)(*Second Reconsideration Order*).

[2] *See Reconsideration Order*, 12 FCC Rcd at 15044, para. 52.

[3] *Domestic, Interexchange Carrier Detariffing Order Takes Effect*, CC Docket No. 96-61, Public Notice, DA 00-1028 (Com. Car. Bur. May 9, 2000).

## EXHIBIT "A"