2 7

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
BROWNSVILLE DIVISION

United States District Court
Southern District of Texas
FILED

JAN 1 1 2001

Michael N. Milby
Clerk of Court

| | | |
|---|---|---|
| MARIA McKENZIE, on behalf of herself and all others similarly situated, Plaintiffs, | § § § § § | |
| vs. | § § | CAUSE NO.: B-00-148 |
| WORLDCOM, INC. a/k/a MCI WORLDCOM, INC. a/k/a MCI WORLDCOM COMMUNICATIONS, INC., Defendant. | § § § § § | JURY |

## PLAINTIFF'S REPLY TO DEFENDANT MCI WORLDCOM COMMUNICATIONS, INC.'S SECOND SUPPLEMENTAL BRIEF IN OPPOSITION TO PLAINTIFF'S MOTION TO REMAND

COMES NOW, Plaintiff in the above styled and numbered cause, and files this PLAINTIFF'S REPLY TO DEFENDANT MCI WORLDCOM COMMUNICATIONS, INC.'S SECOND SUPPLEMENTAL BRIEF IN OPPOSITION TO PLAINTIFF'S MOTION TO REMAND. In support of this Reply and *Plaintiff's Motion to Remand*, Plaintiff shows the Court the following:

### I.    PROCEDURAL HISTORY

1.1    The instant lawsuit was originally filed as cause number 2000-08-3297-E in the 357th Judicial District Court of Cameron County, Texas. Plaintiff, on behalf of herself and others similarly situated, brings a class action suit against Defendant ("Defendant" or "MCI") for violations of state consumer protection and deceptive trade practices statutes.

1.2    On January 5, 2001 MCI filed its *Second Supplemental Brief in Opposition to Plaintiff's Motion to Remand.*

1.3     Plaintiff files this Reply in response to MCI's January 5, 2001 *Second Supplemental Brief in Opposition to Plaintiff's Motion to Remand.*

1.4     Pursuant to 28 U.S.C. § 1447(c), Plaintiff moves for the remand of this case back to the state court and for costs and attorney's fees associated with the improvident removal of this case.

## II.   THE FEDERAL COMMUNICATIONS ACT OF 1934 DOES NOT MEET THE FIFTH CIRCUIT'S TRIPARTITE TEST FOR COMPLETE PREEMPTION

2.1     MCI has failed to meet its burden to show that the Federal Communications Act of 1934, 47 U.S.C. § 151, *et seq.* ("the FCA") is a statute that has the preemptive power to confer federal jurisdiction pursuant to the extraordinary doctrine of complete preemption. *See Heimann v. National Elevator Indus. Pension Fund,* 187 F.3d 493, 500 (5th Cir. 1999); *Aaron v. National Union Fire Ins. Co.,* 876 F.2d 1157 (5th Cir. 1989). MCI has not identified any provision of the FCA demonstrating that Congress clearly intended that claims brought under the FCA be removable as required by the Fifth Circuit's tripartite test.  Furthermore, MCI has not identified any authority demonstrating that Congress intended the FCA to regulate the advertisement of interstate long distance telephone services.  Complete preemption is the only basis for subject matter jurisdiction that MCI has argued in this case.  Because the Fifth Circuit's three pronged test cannot be met in this case, it should be remanded.

2.2     As additional support of Plaintiff's position that this action should be remanded to the state court, Plaintiff attaches hereto as Exhibit "A" a copy the December 27, 2000 opinion and remand order in a case styled *State of Minnesota v. Worldcom, Inc.,*

3.3     At the time MCI removed the instant case, the unanimous opinion of all Texas Federal Courts was that the FCA was not a statute which conferred complete preemption jurisdiction to the federal courts. *Esquivel v. Southwestern Bell Mobile Sys., Inc.*, 920 F. Supp. 713, 715-16 (S.D. Tex. 1996); *KVHP TV Partners, LTD. v. Channel 12 of Beaumont, Inc.*, 874 F. Supp. 756, 760-62 (E.D. Tex. 1995); *Ashley v. Southwestern Bell Tel. Co.*, 410 F. Supp. 1389 (W.D. Tex. 1976). MCI argues that the *Central Office* opinion muddied these waters. A fair reading of the *Central Office* opinion will leave no reader with the impression that it stands for the principle that the FCA's savings clause is without meaning and the Supreme Court was turning the FCA into an ERISA-type statute that meets the Fifth Circuit's three prong test for complete preemption jurisdiction. This case was removed improvidently.

3.4     Since this case was removed, an additional Texas Federal Court has held that the FCA is not a statute which confers complete preemption jurisdiction to the federal courts. *Bryceland v. AT&T Corp.*, No. 3-99-CV-2279-L Consolidated With: No. 3-00-CV-0084- L (N.D. Tex. November 27, 2000).

3.5     The issue of subject matter jurisdiction in this case is not as complicated as MCI suggests. The clear and simple fact is, there is none. MCI improvidently removed Plaintiff's purely state law claims to this court. Failing to provide Plaintiff with "just costs and any actual expenses, including attorney fees, incurred as a result of the removal" as provided by 28 U.S.C. § 1447(c) will encourage MCI to continue the practice of the improvident removal of any purely state law case despite the clear and controlling legal precedent.

PLAINTIFF'S REPLY TO DEFENDANT MCI WORLDCOM COMMUNICATIONS, INC.'S SECOND
SUPPLEMENTAL BRIEF IN OPPOSITION TO PLAINTIFF'S MOTION TO REMAND          Page 4 of 7
CAUSE NO · B-00-148

## IV.   CONCLUSION

4.1     There is no federal question on the face of Plaintiff's well-pleaded complaint. MCI has not carried its burden to show that removal in this case under the FCA or the filed tariff doctrine was proper.  MCI has not demonstrated any other justification for the exercise of removal jurisdiction in this matter.

4.2     MCI improvidently removed the instant case to this court.  After a review of the relevant authority, it is clear that there exists no objective reasonable basis for the removal of this case.

## V.   PRAYER

5.1     Pursuant to 28 U.S.C. § 1447(c) and for the reasons stated herein, for the reasons stated in *Plaintiff's Motion to Remand*, in the subsequent briefing in this cause and for the reasons stated in this document, Plaintiff requests the remand of this action to the state court from whence it came.  Plaintiff further prays for costs associated with the improvident removal and other relief to which Plaintiff may be entitled at law and equity.

Respectfully submitted,

**LAW OFFICES OF RICHARD JARAMILLO
& ASSOCIATES, P.C.**
1412 Main Street, 22nd Floor
Dallas, Texas 75202
(214) 744-3364
(214) 748-6603 (Fax)

**LAW OFFICES OF FRANK COSTILLA, P.L.L.C.**
5 East Elizabeth Street
Brownsville, Texas 78520
(956) 541-4982
(956) 544-3152 (Fax)

***ATTORNEYS FOR PLAINTIFFS***

By: _____
     RICHARD C. JARAMILLO
     "Attorney-In-Charge"
     Texas State Bar No. 10573200
     Appearing Pro Hac Vice
     RAY L. VELA
     Texas State Bar No. 00795075
     S.D. Tex. Bar No. 20357
     FRANK COSTILLA
     Texas State Bar No. 04856500
     S.D. Tex. Bar No. 1509

## CERTIFICATE OF CONFERENCE

I certify that John C. Eichman, counsel for the Defendant, was contacted on January 8, 2001 by counsel for Plaintiff regarding the filing of this document and he was not opposed the filing of the same.


By:_____
        RICHARD C. JARAMILLO


## CERTIFICATE OF SERVICE

I certify that on this the 10th day of January 2001, a true copy of the above document has been either delivered in person or delivered in person by my agent or delivered by courier with receipted delivery or sent by certified mail, return receipt requested, or sent by telephonic document transfer before 5:00 p.m. the recipient's local time to the following pursuant to the Federal Rules of Civil Procedure for each party listed on the attached service list.

VIA US CMRRR # 7079 3400 0018 2809 1294
John C. Eichman
Jenkins & Gilchrist
1445 Ross Avenue, Suite 3200
Dallas, Texas 75202
(214) 855-4300 - fax


By:_____
        RICHARD C. JARAMILLO

# UNITED STATES DISTRICT COURT
# DISTRICT OF MINNESOTA

State of Minnesota, by its Attorney
General, Mike Hatch,

Plaintiff,

v.

Worldcom, Inc., f/k/a MCI
WORLDCOM, Inc., doing
business through a subsidiary,
MCI WORLDCOM
Communications, Inc.,

Defendant.

Civil No. 00-2065 (RHK/JMM)
**MEMORANDUM OPINION
AND ORDER**

---

Prentiss Cox and Erik A. Lindseth, Assistant Attorneys General for the State of
Minnesota, Saint Paul, Minnesota for Plaintiff.

Laura J. Hein, Gray Plant Mooty, Mooty & Bennett, P.A., Minneapolis, Minnesota, and
Charles P. Scheeler, Glen K. Allen, and Quincy M. Crawford, Piper Marbury, Rudnick &
Wolfe LLP, Baltimore, Maryland for Defendant.

---

## Introduction

This lawsuit arises out of Defendant Worldcom Inc.'s ("Worldcom") "Five Cents

Everyday" advertising campaign for long distance telecommunication services, which

included television spots featuring Michael Jordan and the Looney Tunes™ cartoon

characters. On July 20, 2000, the State of Minnesota, through its Attorney General

(hereinafter "the State"), filed suit in Ramsey County District Court alleging that the

"Five Cents Everyday" advertisements were false and deceptive, in violation of several

1

PLAINTIFF'S
EXHIBIT
"A"

PENGAD-Bayonne, N. J.

FILED_____  DEC 27 2000

FRANCIS E. DOSAL, CLERK
JUDGMENT ENTD___DEC 27 2000
DEPUTY CLERK_____

state trade practice and consumer protection statutes. Worldcom removed the State's lawsuit to this Court on the grounds that the State's Complaint is completely preempted to the extent that it challenges Worldcom's federally filed tariffs for interstate long distance telecommunications services and the billing practices associated with those rates.[1] Presently before the Court is the State's motion to remand this matter to state district court. For the reasons set forth below, the Court will grant the motion.

## Background

### I.      Factual History

An individual can make long distance telephone calls in a variety of ways. (Compl. ¶ 9; Answer ¶ 9.) A consumer may, for example, subscribe to a long distance calling plan offered by a long distance carrier such as Worldcom; that carrier is said to be the consumer's "presubscribed" long distance carrier. (Id.) The consumer may further choose to have the presubscribed long distance carrier handle either interLATA long distance service, intraLATA long distance service, or both.[2] (Id.) When a consumer

---

[1] To the extent the State's claims relate to intrastate long distance telephone calls, Worldcom asks this Court to exercise supplemental jurisdiction over such claims pursuant to 28 U.S.C. § 1367.

[2] Local Access and Transport Area ("LATA") boundaries were created when the national Bell telephone system broke up in the 1980s. Some intrastate long distance telephone calls are "interLATA" calls (e.g., a call from Duluth to Saint Paul), whereas others are "intraLATA" calls (e.g., a call from Minneapolis to Red Wing). Due to federal laws prohibiting certain carriers from transmitting calls across LATA boundaries, long distance carriers offer two types of long distance services to their customers: interLATA service and intraLATA service. (Compl. ¶ 8; Answer ¶ 8.)

CHAPDF - www.tenlio.com

chooses to have the presubscribed carrier handle "interLATA" calls, that carrier will provide long distance service for all of the consumer's <u>interstate</u> long distance calls and all of the consumer's <u>intrastate</u> long distance calls that cross LATA boundaries.[3]  (<u>Id.</u>)

Beginning in August of 1999, Worldcom offered "Five Cents Everyday" interLATA calling plans.  (Compl. ¶ 11; Answer ¶ 11.)  Under the "Five Cents Everyday" calling plans, consumers pay five cents per minute on evening and weekend interstate calls.  (Compl. ¶ 12; Answer ¶ 12.)   Worldcom also charged consumers additional fees in connection with the "Five Cents Everyday" calling plans, including

* service charges of between $1.95 and $4.95 per month;

* "Carrier Access Charges" of $1.46 per month (discontinued by Worldcom on August 1, 2000);

* "Federal Universal Service Fees" calculated as a percentage of the consumer's monthly interstate long distance charges; and

* under certain of the "Five Cent Everyday" calling plans, monthly minimum call charges.

(Compl. ¶ 13; Answer ¶ 13.)  In addition, Worldcom charged Minnesota consumers between ten and twenty cents per minute for <u>intrastate</u>, interLATA long distance telephone calls, depending on the "Five Cents Everyday" calling plan to which the consumer had subscribed.  (Answer ¶ 14; <u>see also</u> Compl. ¶ 14.)

---

[3] Domestic long distance telephone calls and charges are regulated differently depending on whether the call is interstate or intrastate.  (Compl. ¶ 7, Answer ¶ 7.)  An interstate long distance telephone call is one that crosses state boundaries.  (<u>Id.</u>)  An intrastate long distance telephone call is call that begins and ends in the same state.  (<u>Id.</u>)

3

CutePDF - www.hxvia.com

Worldcom advertised its "Five Cents Everyday" presubscribed long distance calling plans by sending direct mail solicitations to Minnesota consumers and by frequent television advertisements broadcast in Minnesota. (Compl. ¶ 15; Answer ¶ 15.) Worldcom has sent direct mail advertisements to Minnesota consumers since at least March 2000. (Compl. ¶ 16; Answer ¶ 16.) Worldcom also broadcast several television advertisements in Minnesota promoting its "Five Cents Everyday" calling plans beginning in at least August 1999. (Compl. ¶ 18; Answer ¶ 18.)

## II.    Procedural History

In December of 1999, a group of officials from state Attorneys General offices met with Worldcom to discuss a resolution of the states' concerns that Worldcom's advertisements for its "Five Cents Everyday" calling programs were deceptive. (Cox Aff. ¶ 4.) When those negotiations fell through, the Attorneys General of Minnesota, California, Missouri, New Jersey, and Maine filed consumer protection lawsuits on July 20, 2000, against Worldcom. (Id.)

In its Complaint, the State alleges that Worldcom's "Five Cents Everyday" advertisements have the capacity and tendency to deceive consumers or mislead them into believing that Worldcom will only charge a five-cent-per-minute rate for their long distance calls. (Compl. ¶ 15.) The State complains that Worldcom either fails to disclose or inadequately discloses the material terms of the "Five Cents Everyday" calling plans. (Compl. ¶¶ 30-46.) The State further contends that, due to additional costs and

4

limitations imposed by Worldcom, it is impossible for any consumer to realize the advertised per-minute rate on long distance telephone calls. (Compl. ¶ 15.) The State claims that Worldcom's advertising violates Minn. Stat. § 325F.67 (False Statement in Advertising Act); Minn. Stat. § 325D.44 (Deceptive Trade Practices Act); Minn. Stat. § 325F.69, subd. 1 (Prevention of Consumer Fraud Act); and Minn. Stat. § 237.662 (Notice and Disclosure Requirements of Long Distance Providers). (Compl. ¶¶ 47-61.) The State seeks declaratory and injunctive relief against Worldcom, and an award of civil penalties, costs and fees. (Compl. ¶¶ I-VI, VIII.) The State also seeks "restitution under the _parens patriae_ doctrine, the general equitable powers of this Court, and any other authority for all persons subjected to Defendant's acts described herein." (Compl. ¶ VII.)

Worldcom denies that its advertising violates state law and asserts that the State's claims are preempted by federal law and barred by the "filed rate" or "filed tariff" doctrine. (Answer at 8.) Worldcom timely removed the State's lawsuit to this Court pursuant to 28 U.S.C. § 1441.[4] (Notice of Removal of Action (Doc. No. 1).) Worldcom

---

[4] Worldcom cites sections 1441(a) and (b) as grounds for removal. Section 1441(a) provides:

> Except as otherwise expressly provided by Act of Congress, any civil action brought in a State court of which the district courts of the United States have original jurisdiction, may be removed by the defendant or defendants to the district court of the United States for the district and division embracing the place where such action is pending.

28 U.S.C. § 1414(a). Section 1441(b) provides that "[a]ny civil action of which the district courts have original jurisdiction founded on a claim or right arising under the

asserts that this Court has original jurisdiction over the State's Complaint pursuant to 28 U.S.C. §§ 1331, 1337 and 1368.[5]  (Id.)

## Analysis

### I.  Standard of Decision

Where a case has been removed from state court to federal court, "if at any time before final judgment it appears that the district court lacks subject matter jurisdiction, the case shall be remanded." 28 U.S.C. § 1447(c).  In applying § 1447(c), the federal courts have established a presumption in favor of state court jurisdiction.  As a result, the party seeking removal bears the burden in showing the action was properly removed, and all doubts as to the propriety of the removal are to be resolved in favor of remand.  In re Business Men's Assur. Co. of Am., 992 F.2d 181, 183 (8th Cir. 1993).  Worldcom

---

Constitution, treaties, or laws of the United States shall be removable without regard to the citizenship or residence of the parties." 28 U.S.C. § 1441(b).

[5] Pursuant to 28 U.S.C. § 1331, federal district courts have "original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States." 28 U.S.C. § 1331.  Section 1337 provides that federal district courts have "original jurisdiction of any civil action or proceeding arising under any Act of Congress regulating commerce or protecting trade and commerce against restraints and monopolies . . . ." 28 U.S.C. § 1337(a).  Section 1368 states that federal district courts

> . . . shall have original jurisdiction of any civil action based on a counterclaim raised pursuant to section 337(c) of the Tariff Act of 1930, to the extent that it arises out of the transaction or occurrence that is the subject matter of the opposing party's claim in the proceeding under section 337(a) of that Act.

28 U.S.C. § 1368.  Although Worldcom has filed an Answer to the State's Complaint, it has not asserted any counterclaims.

argues that the doctrines of "complete preemption" and "artful pleading" give rise to federal question jurisdiction because, by seeking restitution on behalf of Minnesota consumers, the State is trying to alter – after the fact and through litigation – Worldcom's federally filed long distance rates with respect to those consumers. The Court considers Worldcom's arguments in turn.

## II.    Complete Preemption

Worldcom removed the State's Complaint on the grounds that it is a "federal question" case. Generally, "[a] defendant may remove a state court claim to federal court only if the claim originally could have been filed in federal court, and the well-pleaded complaint rule provides that a federal question must be presented on the face of the properly pleaded complaint to invoke federal court jurisdiction." Gore v. Trans World Airlines, 210 F.3d 944, 948 (8th Cir. 2000) (citing Caterpillar, Inc. v. Williams, 482 U.S. 386, 392, 107 S.Ct. 2425, 2429 (1987)). "The well-pleaded complaint' rule is the basic principle marking the boundaries of the federal question jurisdiction of the federal district courts." Metropolitan Life Ins. Co. v. Taylor, 481 U.S. 58, 63, 107 S. Ct. 1542, 1546 (1987). "Congress has long since decided that federal defenses do not provide a basis for removal." Caterpillar, Inc., 482 U.S. at 399, 107 S.Ct. at 2433. "Thus, a case may not be removed to federal court on the basis of a federal defense, even if the defense is anticipated in the plaintiff's complaint, and even if both parties admit that the defense is the only question truly at issue in the case." Gore, 210 F.3d at 948 (internal quotation

7

marks and citation omitted).

Removal jurisdiction may be predicated upon what might be viewed as a defense

in the limited circumstances in which the doctrine of complete preemption applies.

Charles A. Wright et al, Federal Practice and Procedure § 3722. The doctrine of

"complete preemption" is a narrow exception to the "well-pleaded complaint" rule.

Krispin v. May Dep't Store Co., 218 F.3d 919, 922 (8th Cir. 2000). This "corollary of the

well-pleaded complaint rule" applies in circumstances where "Congress [has] so

completely pre-empt[ed] a particular area that any civil complaint raising this select group

of claims is necessarily federal in character." Metropolitan Life, 481 U.S. at 63-64, 107

S. Ct. at 1546. "The complete preemption doctrine applies only when a federal statute

possesses "extraordinary pre-emptive power," a conclusion courts reach reluctantly."

Magee v. Exxon Corp., 135 F.3d 599, 601 (8th Cir. 1998) (quoting Metropolitan Life Ins.

Co., 481 U.S. at 65, 107 S.Ct. at 1547); Gaming Corp. of Am. v. Dorsey & Whitney,

88 F.3d 536, 543 (8th Cir.1996).

"[T]he touchstone of the federal district court's removal jurisdiction is not the

'obviousness' of the pre-emption defense but the intent of Congress. Indeed, . . . even an

'obvious' pre-emption defense does not, in most cases, create removal jurisdiction."

Metropolitan Life, 481 U.S. at 66, 107 S. Ct. at 1548. In Metropolitan Life, the plaintiff's

state law cause of action was not only subject to ERISA's preemption provision, 29

U.S.C. § 1144(a), but also was a suit seeking to recover benefits from a covered plan.

8

Thus, the plaintiff's suit fell squarely within the provision of ERISA creating an exclusive federal cause of action for the resolution of such disputes. See id. at 62-63, 107 S. Ct. at 1546. The existence of the exclusive federal cause of action was the conclusive element in the Supreme Court's decision that Congress had intended to completely preempt state law with respect to suits seeking to recover benefits.

Worldcom argues that the State's Complaint is completely preempted by the rate filing provisions of the Federal Communications Act ("FCA") – specifically, by sections 203 and 207. Section 203(a) of the FCA requires every common carrier (except connecting carriers) to file with the Federal Communications Commission ("FCC") "schedules showing all charges for itself and its connecting carriers for interstate . . . wire or radio communication . . . and showing the classifications, practices, and regulations affecting such charges." 47 U.S.C. § 203(a). These schedules of rates must be posted and kept open for public inspection pursuant to FCC regulation. Id. The carrier may not change the charges, classifications, regulations or practices that have been filed without prior written notice to the Commission and the public. Id. § 203(b). Furthermore, once the carrier has filed its charges and published them, the carrier cannot

> (1) charge, demand, collect, or receive a greater or less or different compensation for [its] communication [services], or for any service in connection therewith . . . that the charges specified in the schedule then in effect, or (2) refund or remit by any means or device any portion of the charges so specified, or (3) extend to any person any privileges or facilities in such communication [services] or employ or enforce any classifications, regulations, or practices affecting such charges, except as specified in such

9

schedule.

47 U.S.C. § 203(c). The purpose of these rate-filing provisions is to prevent "unreasonable and discriminatory charges" for long distance telephone services, American Tel. & Tel. Co. v. Central Office Tel., Inc., 524 U.S. 214, 222, 118 S. Ct. 1956, 1962 (1998), and, specifically, to "prevent carriers from intentionally 'misquoting' rates" to customers "as a means of offering them rebates or discounts." Maislin Indus. U.S., Inc. v. Primary Steel, Inc., 497 U.S. 116, 127, 110 S. Ct. 2759, 2766 (1990), quoted in Central Office Tel., 524 U.S. at 223, 118 S. Ct. at 1963. Any common carrier that does something prohibited by the chapter of the FCA governing wire and radio communication, or fails to do something required by that chapter, shall be liable to the person or persons injured thereby for the full amount of the damages sustained as a consequence of the violation. 47 U.S.C. § 206. Congress further provided that

> [a]ny person claiming to be injured by any common carrier subject to the provisions of this chapter may either make complaint to the Commission as hereinafter provided for, or may bring suit for the recovery of the damages for which such common carrier may be liable under the provisions of this chapter in any district court of the United States of competent jurisdiction; but such person shall not have the right to pursue both such remedies.

47 U.S.C. § 207. Congress thus imposed monetary liability on long distance carriers for acts or omissions violating the chapter of the FCA governing wire and radio communications and designated the FCC and the federal district courts as the fora for recovering such damages. At oral argument, Worldcom acknowledged that, had the State

10

not requested restitution, there would have been no basis for removing this action to federal court. Worldcom contends, however, that the State's restitution claim is "necessarily federal" because it cannot be resolved without affecting the tariffs Worldcom filed with the FCC.

Neither the Supreme Court nor the Eighth Circuit has specifically addressed whether the rate-filing provisions of the FCA reflect the requisite intent of Congress to so completely preempt that area such that any civil complaint raising claims related to that area must be deemed federal in character.[6] Worldcom therefore relies extensively on the Seventh Circuit's decision in Cahnmann v. Sprint Corp., 133 F.3d 484 (7th Cir.), cert denied, 524 U.S. 952 (1998). Suzanne Cahnmann was one of several thousand small business owners who had signed up for a Sprint "Fridays Free" calling plan that included up to $1,000 worth per month of free long distance calls on Fridays to anywhere in the world for one year. 133 F.3d at 486. At the time Cahnmann signed up for the calling plan, those were indeed the terms of the tariff Sprint had filed with the FCC. Id. Four months later, however, Sprint amended its tariff to delete ten countries from the free

---

[6] Although Worldcom contends that the Supreme Court found the requisite degree of preemption in the rate-filing provisions of the FCA in the Central Office Telephone case, this Court notes that Central Office Telephone did not come to federal court by means of removal jurisdiction. Central Office Telephone filed suit against AT&T in federal district court. Central Office Tel., 524 U.S. at 220, 118 S. Ct. at 1961. The Court in Central Office Telephone was therefore addressing the scope of AT&T's affirmative defense of preemption, which was based on the "filed-rate" doctrine. Id. at 221, 118 S. Ct. at 1962.

11

Friday calling offer. Id.

Cahnmann filed a class action lawsuit in Illinois state court alleging breach of contract and claims of fraud under the common law and several Illinois fraud and consumer protection statutes. Id. at 486-87, 490. Cahnmann's fraud claim was based on allegations that Sprint misrepresented to prospective customers that the "Fridays Free" service would entitle them to a full year of free calls on Friday to anywhere in the world (as opposed to what the customers got, which was four months of free Friday calls to anywhere in the world and eight months of free Friday calls to all but ten countries). Id. at 490. Sprint removed the case to federal district court. Id. at 486. The district court denied Cahnmann's motion for a remand and entered judgment on the pleadings in favor of Sprint. Id. In challenging the denial of her motion to remand, Cahnmann argued to the Seventh Circuit that a suit cannot be removed to federal court merely on the basis of a federal defense. Id. at 487.

The Seventh Circuit rejected Cahnmann's argument, ruling that the FCA does more than "just provide a defense that the carrier might interpose in a suit under state law" and in fact "extinguishes the right to bring a suit for breach of contract under state law when the effect of the suit would be to challenge a tariff." Cahnmann, 133 F.3d at 488. The Seventh Circuit concluded that Cahnmann's fraud claims sought the same relief as was sought in the breach of contract claim: an invalidation and setting aside of the amended tariff and enforcement of the terms of the original tariff. Id. at 490.

12

intended to preempt the claims.

Bastien, 205 F.3d at 988-89.

The State's restitution claim is closer to the Long Distance Telecommunications case than to Cahnmann. Nothing in the State's action requires a determination of whether the rates Worldcom filed with the FCC are valid or enforceable. The State does not allege that the rates Worldcom charged Minnesota consumers were inconsistent with the rates filed with the FCC. Nor does the State allege that Worldcom's filed rates were improper or unreasonable in light of the services Worldcom actually provided to Minnesota consumers. See Central Office Telephone, 524 U.S. at 223, 118 S. Ct. at 1963 (observing that rates "have meaning only when one knows the services to which they are attached. Any claim for excessive rates can be couched as a claim for inadequate services and vice versa."). Furthermore, the State's restitution claim does not implicate the purpose underlying the rate-filing provisions of the FCA -- the prevention of carriers from "misquoting" their rates in order to offer some (but not all) consumers a discount or rebate.[7] On balance, this case is not sufficiently dissimilar to the Long Distance Telecommunications case.

---

[7] As Justice Rehnquist noted in his concurrence in Central Office Telephone, "in order for the filed rate doctrine to serve its purpose . . . it need pre-empt only those suits that seek to alter the terms and conditions provided for in the tariff." Central Office Telephone, 524 U.S. at 229, 118 S. Ct. at 1966. "The tariff does not govern, however, the entirety of the relationship between the common carrier and its customers." Id. at 230, 118 S. Ct. at 1966.

14

Neither the text nor the structure of the FCA evidences an intent of Congress to regulate long-distance telecommunication services so extensively as to preempt a lawsuit brought by a state law enforcement official to enforce state laws prohibiting deceptive advertising. Worldcom has not identified any provision of the FCA demonstrating that Congress intended to regulate the advertisement of interstate long distance telephone services. While § 203 of the FCA addresses the "classifications, practices, and regulations affecting" the rates charged for long distance telephone services, Worldcom has cited no authority construing those terms to include advertising. Nor has Worldcom shown that either § 203 of the FCA or, indeed, any other section of the FCA imposes any duties or confers any rights on a carrier regarding the advertisement of long distance telephone services.

Furthermore, Worldcom has pointed to no express language in the FCA vesting exclusive jurisdiction in either the FCC or the federal district courts for claims regarding the advertising of long distance rates. See Deford v. Soo Line R.R. Co., 867 F.2d 1080, 1088-89 (8th Cir. 1989) (finding that the exclusivity of the Interstate Commerce Commission to govern railway transactions is expressly set out in § 10501 of the Interstate Commerce Act); see also Bastien, 205 F.3d at 986-87 (reasoning that Congress intended complete preemption where it expressly said that "no State or local government shall have any authority to regulate the entry of or the rates charged by any commercial mobile service.") Nor has Worldcom demonstrated that Congress created an exclusive

15

federal remedy in the FCA that would displace overlapping or inconsistent state remedies. See M. Nahas & Co. v. First Nat'l Bank of Hot Springs, 930 F.2d 608, 612 (8th Cir. 1991) (holding that Congress enacted § 86 of the National Bank Act "to prevent the application of overly-punitive state law usury penalties against national banks.") Indeed, Worldcom has not shown that the State's restitution claim can be characterized as an action to recover damages either for conduct prohibited by the chapter governing wire and radio communication, or for a failure by Worldcom to do something required by that chapter. See 47 U.S.C. § 206 (creating civil liability where carrier acts or fails to act, in violation of the FCA); see also id. § 208 (providing that any person, body politic or municipal organization, or State commission may complain to the FCC regarding "anything done or omitted to be done by any common carrier subject to this chapter, in contravention of the provisions thereof . . . ."). Finally, it does not appear that the State's restitution claim requires the interpretation of -- as opposed to "a mere need to reference or consult" -- Worldcom's federally filed rates for long distance services. See Gore, 210 F.3d at 949 (reasoning that, under the Labor Management Relations Act and the Railway Labor Act, a state law claim that depends upon an interpretation of a collective bargaining agreement is preempted.)

In light of the foregoing, the Court concludes that Congress did not intend, in enacting the FCA, to completely preempt state law claims seeking monetary relief for the false or deceptive advertising of long distance telephone rates. "Complete preemption"

16

<u>Missouri ex rel. Nixon v. Coeur D'Alene Tribe</u>, 164 F.3d 1102, 1109 n.4 (8th Cir.), <u>cert.</u>

<u>denied</u>, 527 U.S. 1039 (1999).  Accordingly, the Court concludes that the "artful pleading

doctrine" does not provide a separate basis for the exercise of removal jurisdiction.

### Conclusion

Based on the foregoing, and all of the files, records and proceedings herein, **IT IS**

**ORDERED THAT** the State's Motion for Remand (Doc. No. 10) is hereby **GRANTED**.

The Clerk of Court is directed to remand this case to the Ramsey County District Court.

**LET JUDGMENT BE ENTERED ACCORDINGLY.**

Dated: December 27, 2000

RICHARD H. KYLE
United States District Judge

18