

United States District Court
Southern District of Texas
FILED

FEB 2 3 2001

Michael N. Milby
Clerk of Court

# IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF TEXAS
### BROWNSVILLE DIVISION

| | | |
|---|---|---|
| MARIA McKENZIE, on behalf of herself and all others similarly situated, | § § § | CIVIL ACTION NO. B-00-148 JURY |
| Plaintiffs, | § § | |
| v. | § § | |
| WORLDCOM, INC. a/k/a MCI WORLDCOM, INC. a/k/a MCI WORLDCOM COMMUNICATIONS, INC., | § § § § § | |
| Defendant. | § | |

## MCI WORLDCOM COMMUNICATIONS, INC'S OBJECTIONS TO THE MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

Defendant MCI WORLDCOM Communications, Inc. ("WorldCom") objects to the Magistrate Judge's Report and Recommendation (the "Magistrate's Report") issued on February 8, 2001 in which the Magistrate Judge recommends that this Court grant Plaintiff's motion to remand. The Court has jurisdiction over this removed action. Although Plaintiff Maria McKenzie ("Plaintiff") has tried to plead only state law claims, one or more of her claims arises exclusively under the Communications Act of 1934, 47 U.S.C. §151, et seq. The Communications Act completely preempts those claims, thereby giving this Court jurisdiction. In addition, this Court has jurisdiction under the corollary doctrine of artful pleading.

I.    **The Magistrate's Report is inconsistent with the law of every circuit to consider this issue.**

Worldcom is a telecommunications provider that is required by the Federal Communications Act ("FCA") to file tariffs describing the rates, fees and service it will offer to consumers. Plaintiff contends that there is a difference between the rates, fees and services conspicuously disclosed in WorldCom's advertisements and solicitations and the rates, fees and services she actually received from WorldCom. The FCA requires WorldCom to charge the rates set forth in its FCC tariffs and specifically prohibits upward or downward deviations. *See* 47 U.S.C. § 203(c). This prohibition on altering the tariff is known as the 'filed-tariff' doctrine. The relief Plaintiff seeks - an award of damages - would alter the tariff because it would result in her being charged a different rate from that set forth in WorldCom's tariff. This relief is prohibited by the FCA and the filed-tariff doctrine. *See AT&T vs. Central Office Telephone*, 118 S.Ct. 1956, 1965 (1998) (even an intentional misrepresentation of rates or services cannot entitle the customer to something other than the published rate). The issue in this case is whether claims implicating the FCA's regulation of rates and the filed-tariff doctrine may be properly removed to federal court.

While the Supreme Court in Central Office did not address the issue of removability under the FCA, the only two federal circuit courts of appeal to do so -the Seventh Circuit and Second Circuit - have held that claims challenging the lawfulness of interstate rates are removable to federal court under the FCA. *See Cahnmann v. Sprint Corp.*, 133 F.3d 484 (7th Cir. 1997)(upholding removal in case asserting state-law breach of contract and fraud claims); *Marcus v. AT&T Corp.*, 138 F.3d 46, 55-56 (2d Cir. 1998)(upholding removal in case asserting, *inter alia*, state-law breach of warranty claims); *Bastien v. AT&T Wireless Servs., Inc.*, 205 F.3d 983, 984 (7th Cir.

2000)("Congress has decreed that suits related to rates and service of telephone companies be handled in federal court...").

Cahnmann, Marcus, and Bastien are directly on point. In each of the cases a federal appeals court was called upon to consider the issue, the court held the FCA supported removal. Where there is a lack of precedent on an issue in this Circuit, federal courts are to turn to the law of other circuits for guidance. *United States v. Goynes*, 175 F.3d 350, 353 (5th Cir. 1999). There is no spilt on this issue in the circuit courts; while not binding precedent on this Court, such consistency should at least be considered as persuasive authority. The Magistrate's Report fails to address these cases or explain why they should not be accorded deference.[1]

## II.    The Magistrate's Report did not apply the Fifth Circuit *Aaron* test for complete preemption.

It is unclear from the face of the Report whether the Magistrate Judge applied the test in *Aaron v. National Union Fire Ins. Co.*, 876 F.2d 1157 (5th Cir. 1989), which sets out the standard in the Fifth Circuit for complete preemption. *See Heiman v. National Elevator Indus. Pension Fund*, 187 F.3d 493, 500 (5th Cir.1999). The Magistrate's Report does not set out the three elements of the *Aaron* test, nor does it contain an analysis of whether Plaintiff's claims under the FCA meet any of those elements.

---

[1]    There are district court cases that have held there is no basis for removal under the FCA. *See, e.q. Guglielmo v. WorldCom, Inc.*, 2000 WL 1507426, (D. N.H. July 27, 2000)(refused to follow the *Cahnmann* court because it failed to identify a specific statement of Congressional intent to create removal jurisdiction); *see also Minnesota v. WorldCom, Inc.*, 125 F.Supp.2d 365 (D. Minn. 2000)(holding that the State of Minnesota's restitution claim could not be characterized as an action to recover damages for prohibited actions under the FCA, and thus was not completely preempted by the FCA).

The first issue for a court to consider in the complete preemption analysis is whether the claims are subject to ordinary preemption. *See McClelland v. Gronwaldt*, 155 F.3d 507, 517 (5th Cir. 1998). As described above, one or more of Plaintiff's claims and most importantly, the relief she seeks, are entirely barred by the FCA's filed-tariff doctrine. *Central Office*, 118 S.Ct. at 1965. The Magistrate's Report did not state whether Plaintiff's claims met this threshold issue.[2]

Once it has been determined that the Plaintiff's claims are subject to ordinary preemption, the Court should apply the *Aaron* three-part test. To establish complete preemption in the Fifth Circuit, a defendant must show that:

(1)  the statute contains a civil enforcement provision that creates a cause of action that both replaces and protects the analogous area of state law;

(2)  there is a specific jurisdictional grant to the federal courts for enforcement of the right; and

(3)  there is a clear Congressional intent that claims brought under the federal law be removable.

*Heimann*, 187 F.3d at 500. The FCA meets all three prongs of the *Aaron* test with respect to Plaintiff's claims.

**1.  Plaintiff's claims are within the scope of the FCA's civil enforcement provision.**

One or more of Plaintiff's claims is covered by a civil enforcement provision within the FCA. The FCA places an affirmative duty on carriers such as WorldCom to be just and reasonable in "[a]ll charges, practices, classifications, and regulations for and in connection with such communications service..." 47 U.S.C. § 201(b). The FCA declares that all charges, practices, and

---

[2]  MCI fully briefed the ordinary preemption issue in its Motion to Dismiss and in responding to the Motion to Remand. The Plaintiff has never expressly challenged MCI's ordinary preemption arguments. The Magistrate's Report did not address the merits of the Motion to Dismiss but recommended it be denied as moot due to the recommended remand.

classifications regarding services that are unjust or unreasonable are unlawful. *Id.* If a common carrier does anything prohibited or unlawful under the Communications Act, that carrier "shall be liable to the person or persons injured thereby for the full amount of damages sustained in consequence of any such violation..." 47 U.S.C. § 206.

The Magistrate's Report does not consider the civil enforcement provisions found in these sections in the FCA or consider whether Plaintiff's claims fall within the scope of these sections. Plaintiff attacks WorldCom's advertising and its disclosures concerning tariffed rates and services. Though plead as a claim for violation of the Texas Deceptive Trade Practices Act and for negligent misrepresentation, Plaintiff has actually plead a claim under the FCA for a violation of WorldCom's duty to be just and reasonable in all "charges, practices, classifications, and regulations for and in connection with" its long-distance service. Plaintiff's complaints concerning WorldCom's "Five-Cents Everyday" program, its time of day restrictions, its Federal Universal Service Fee and its other charges and fees fall squarely within the FCA's civil enforcement provision. *See, e.g. Brown v. Crop Hail Management, Inc.*, 813 F. Supp. 519, 526 (S.D. Tex. 1993)(finding civil action created under Federal Crop Insurance Act replaces Plaintiff's state law claims and adequately protects the interest at heart of those claims).

 2.      **The FCA contains a specific jurisdictional grant.**

The FCA satisfies the second prong of the *Aaron* test because it contains a specific jurisdictional grant. Section 207 provides that any person aggrieved by a carrier's unreasonable acts may make a complaint to the FCC or "[m]ay bring suit...in any district court of the United States of competent jurisdiction." 47 U.S.C. § 207. Section 207 of the FCA thus gives this Court jurisdiction

of Plaintiff's claims that she was damaged by WorldCom's unreasonable and unjust acts concerning its tariffed services.

### 3. There is clear Congressional intent that claims challenging tariffed rates, fees, and services be brought under federal law.

As discussed more fully in Section III, there is a clear Congressional intent that Plaintiff's claims be removable under the FCA. Sections 206 and Section 207 show that through the FCA, Congress created a "parallel cause of action" to the state-law claims Plaintiff brings. This federalizing of Plaintiff's claims illustrates the intent of Congress to completely preempt claims against telecommunications providers that effectively challenge the provider's rates.[3]

"Congress has expressed the necessary intent to confer removal jurisdiction through complete preemption by creating a parallel federal cause of action via Section 207 of the FCA that would 'convert' a state-law cause of action into a federal cause of action for purposes of the well-pleaded complaint rule." *Hunt v. Prison Realty Trust, Inc.*, No. 3:00-0244, slip opinion (M.D. Tenn. August 28, 2000)(holding state-law consumer fraud and breach of contract claims to be completely preempted under the FCA).[4]

### III. Congress has manifested a clear intent to displace state regulation of interstate rates.

In his report, the Magistrate Judge stated "[i]n light of the existence of the FCA's savings clause and the Supreme Court's holding in *Head*, the Court cannot reasonably infer that Congress manifested a clear intention to occupy the entire interstate telecommunications field to the exclusion of any state regulation in that area." *Magistrate's Report*, Page 6. The Report cited Justice

---

[3] The lack of legislative history should not weigh against a finding of Congressional intent to completely preempt, as the FCA was passed in 1934, long before the complete preemption arose as a legal doctrine.

[4] A copy of the opinion in *Hunt vs. Prison Realty Trust, Inc.* is attached as Exhibit A.

Brennan's concurrence in *Head* for the proposition that "even as to [telephone and telegraph] communications some subjects and remedies are saved to state regulation." Magistrate's Report, Page 6; *quoting Head*, 374 U.S. at 444. The Magistrate's Report overlooks the Supreme Court's ruling in *Central Office*, which held that claims such as Plaintiff's <u>could</u> <u>not</u> be "saved" under the savings clause in Section 414 of the FCA. As the Court explained:

> Section 414 copies the savings clause of the [Interstate Commerce Act], and we have long held that the latter preserves only those rights that are not inconsistent with the statutory filed-tariff requirements. A claim for services that constitute unlawful preferences or that directly conflict with the tariff . . . cannot be 'saved' under § 414. 'The [savings] clause . . . cannot in reason be construed as continuing in [customers] a common law right, the continued existence of which would be absolutely inconsistent with the provisions of the act. In other words, the act cannot be held to destroy itself.'

524 U.S. at 227-28 (quoting *Texas & P. Ry. v. Abilene Cotton Oil Co.*, 204 U.S. 426, 446 (1907)) (second omission and brackets in the original) (citations omitted).[5] The Supreme Court "has repeatedly 'decline[d] to give broad effect to savings clauses where doing so would upset the careful regulatory scheme established by federal law." *Grier v. American Honda Motor Co.*, 529 U.S. 861, 869 (2000); *quoting United State v. Locke*, 529 U.S. 89 (2000). In *Cahnmann*, the Seventh Circuit anticipated *Central Office's* discussion:

> Although the [savings clause] is broadly written, if it were interpreted literally as permitting a state-law breach of contract suit regarding a tariffed service it would impair the Act's policy of confining telecommunications common carriers to tariffed services and vesting the FCC with primary jurisdiction to determine the validity of tariffs; indeed, it would effectively nullify the tariff provisions of the Communications Act. Such interpretations of savings clauses in common carrier statutes -- interpretations that would empower state

---

[5]Neither an express preemption provision nor a saving clause 'bar[s] the ordinary working of conflict preemption principles. *Grier*, 529 U.S. at 866.

courts to gut the federal regulatory scheme or would place the carrier
under inconsistent obligations -- are therefore rejected.

133 F.3d at 488.[6]

Respectfully, the standard is not whether Congress intended to occupy the field of interstate

telecommunications, but whether Congress intended to completely preempt any one of Plaintiff's

particular claims.[7]   WorldCom need demonstrate that only one of Plaintiff's claims challenges

tariffed rates and is therefore completely preempted; to the extent any of Plaintiff's state-law claims

survive, this Court has supplemental jurisdiction over them. *See* 28 USC § 1367(a).

"[E]ven if a carrier intentionally misrepresents its rate and a customer relies on the

misrepresentation, the carrier cannot be held to the promised rate if it conflicts with the public tariff."

*Central Office*, 118 S.Ct. at 1965.  The tariffed rate cannot be altered and there is no state-law claim

that is 'saved' under §414 that would allow Plaintiff to accomplish what she seeks to do — pay

something other than the tariffed rate.  The filed tariff doctrine prohibits any deviation from what

---

[6]        *Bryceland v. AT&T Corp.*, 2000 WL 1745173 (N.D. Tex. 2000), does not require a different result.
In *Bryceland*, the court easily concluded that plaintiff's consumer fraud and misrepresentation claims stemming from
a wireless carrier's defective service  satisfied the first two prongs of the complete preemption test, but found that the
statute lacked clear congressional intent to create removal jurisdiction. *Bryceland* at *4.  Wireless carriers are subject
to Section 332 of the FCA, which reserves rate and entry regulation of wireless carrier's to the federal government, but
leaves the "terms and conditions" of service for state regulation. Thus, some areas of a wireless carrier's relationship
with its customers are "carved out" for state regulation.  The court in *Bryceland* found that although Section 332
preempted certain state law causes of action,  the savings clause in Section 414 was evidence that Congress did not
intend to invoke the doctrine of complete preemption with respect to the Plaintiff's claims. *Bryceland* at * 5.  Because
Section 332 reserves something for the states to regulate, the savings clause is activated and the Plaintiff may pursue
residue state claims.

[7]        The Magistrate's Report suggests that the doctrine of complete preemption is applicable only if
Congress intended to occupy the entire interstate telecommunications field. The doctrine of complete preemption,
however, is claim-based.  For example,  under ERISA,  claims for benefits or enforcement of rights are completely
preempted, whereas a claim for damages for ignoring a tax levy by the state are not. *Compare Metropolitan Life. Ins.
Co. v.* Taylor, 481 U.S. 58 (1987); *with Franchise Tax Bd. v. Construction Laborers Vacation Trust*, 463 U.S. 1 (1983).

is set forth in the tariff because any intrusion into the regulatory system disrupts it key purpose: to prevent discrimination in rates paid by consumers.

It is not just the comprehensiveness of the FCA in the field of telecommunications, but the absolute elimination of state regulation in interstate rates that demonstrates the Congress's intent to completely preempt claims such as Plaintiff's. Because of the preemptive force of sections 201, 206, and 207 and the parallel cause of action these sections create, the Plaintiff's state court claims are necessarily displaced by federal law, and removal jurisdiction exists. *See Taylor*, 481 U.S. at 65.

## IV.   The Magistrate improperly based his recommendation on *Head v. New Mexico Board of Examiners in Optometry*, 374 U.S. 424 (1963).

One need only compare the opinions in *Cahnmann, Marcus*, and *Bastien* to *Head* to see that *Head* is not controlling. This 1963 Supreme Court case addressed  the  preemption of state law under the provisions of the FCA that deal with radio communications. *Head v. New Mexico Board of Examiners in Optometry*, 374 U.S. 424 (1963). *Head* is not a even a removal case. The Supreme Court in *Head* was not deciding whether a Plaintiff's action against a tariffed carrier was properly removed to federal court, it was asked to decide whether a New Mexico state law prohibiting optometrists to advertise on the radio should be struck down under the FCA. *Head*, 574 U.S. at 426. Thus, unlike *Cahnmann, Marcus*, and *Bastien*, the Supreme Court in *Head* was not deciding whether claims challenging federally filed tariffs are properly removed to federal court. Furthermore, the Court in *Head* based its decision on the FCA's savings clause. As earlier discussed, the savings clause does not save Plaintiff's claims, so the Magistrate Report's reliance upon it as support for a finding of a lack of congressional intent is misplaced.

## CONCLUSION

The Magistrate's Report failed to address three recent, on-point appellate court cases dealing with removal of claims under the filed tariff doctrine, instead relying on a case in which totally different claims and provisions of the FCA were at issue. The standard for analyzing whether complete preemption exists in the Fifth Circuit is the *Aaron* test. The Magistrate's Report lacks discussion of the prongs of the *Aaron* test and thus fails to apply the proper Fifth Circuit standard for complete preemption.

Finally, WorldCom objects to the finding that there is no congressional intent to preempt. The creation of a parallel cause of action that can be pursued in Federal Court or the FCC only, and the elimination of state regulation in the area of interstate rate making express the necessary intent to confer removal jurisdiction where tariffs are challenged. The Magistrate's Report's reliance on the savings clause is wholly unsupported by the FCA and is inconsistent with the Supreme Court's decision in *Central Office*.

Respectfully submitted,

John C. Eichman
Attorney-in-Charge
Federal ID No. 19376
State Bar No. 06494800
Kerry C. Ahern
State Bar No. 24012195
JENKENS & GILCHRIST
*A Professional Corporation*
1445 Ross Avenue, Suite 3200
Dallas, Texas  75202
Telephone:      (214) 855-4500
Facsimile:      (214) 855-4300

John Alex Huddleston
Texas Bar No. 10148400
JENKENS & GILCHRIST
*A Professional Corporation*
1800 Frost Bank Tower
100 West Houston Street
San Antonio, Texas 78205
Telephone:      (210) 246-5000
Facsimile:      (210) 246-5999

**ATTORNEYS FOR DEFENDANT MCI
WORLDCOM COMMUNICATIONS,
INC.**

OF COUNSEL:

Thomas F. O'Neil III
William E. Smith
WORLDCOM, INC.
Law and Public Policy
1133 19th Street, N.W.
Washington, D.C. 20036
Telephone:      (202)736-6612
Facsimile:      (202) 736-6482

## CERTIFICATE OF CONFERENCE

I certify that I discussed these objections with Ray Vela, one of the attorneys for Plaintiff Maria

McKenzie, by telephone on February 22, 2001, asking him to advise me of Ms. McKenzie's position

concerning those objections. Mr. Vela indicated that his client would not support WorlCom's objections.

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the above and foregoing instrument was served on

the following counsel of record by regular mail, on this the 22 day of February, 2001:

> Richard C. Jaramillo
> Ray L. Vela
> Law Offices of Richard Jaramillo &
> Associates, P.C.
> 1412 Main Street, 22nd Floor
> Dallas, Texas 75202
> (214) 744-3364
> (214) 748-6603 - fax

CVisPDF – www.fenino.com

CHsPDF - www.fastio.com

IN THE UNITED STATES DISTRICT COURT FOR
THE MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION


ANGELA HUNT, on behalf of Herself )
and All Others Similarly Situated, )
      Plaintiffs, )
     )
    v. ) No. 3:00-0244
     ) Judge Nixon
     )
PRISON REALTY TRUST, INC., et al., )
    Defendants. )


## MEMORANDUM

Pending before the Court is Plaintiff's Motion to Remand and Motion for an award of fees

and expenses, (Doc. No. 12), to which Defendants have responded, (Doc. No 19). On May 15,

2000, a hearing was held on Plaintiff's Motion to Remand. (Doc. No. 28.) For the reasons stated

below, the Motion to Remand is denied. Accordingly, Plaintiff's Motion for an award of fees and

expenses is also denied.

## I. BACKGROUND

On February 23, 2000, Plaintiff Angela Hunt initiated this class action in the Chancery

Court for Davidson County, Tennessee against Defendants, Prison Realty Trust, Inc.,

Correctional Management Services, Juvenile and Jail Facilities Management Services, Inc., Prison

Management Services, Inc., and DOES 1-100, (collectively referred to as "CCA Defendants").

(See Doc. No. 1.) Defendants are correctional service providers that operate correctional

facilities throughout the United States. (Doc. No. 20 at 1.)

This document was entered on
the docket in compliance with
Rule 58 and / or Rule 79 (a).

FRCP, on 8/25/00 By ALT

(30)

Plaintiff Hunt brings this civil action collectively on behalf of all recipients of collect phone calls from inmates confined in prison facilities operated by the Defendants. (See generally Compl.)[1] Plaintiff alleges violations of the Tennessee Consumer Protection Act of 1977 ("TCPA"), and a claim for common law unjust enrichment arising from Defendants' Inmate Pay Telephone Agreements (the "Agreements") with telephone service providers. (Compl. at ¶¶19-25.) Under the Agreements, collect telephone services are furnished to inmates by a single provider selected by the Defendants. (Compl. at ¶12.) Specifically, Plaintiff alleges that Defendants have entered into agreements with a single telephone service provider, granting the provider exclusive rights to furnish telephone services to inmates incarcerated at Defendants' facilities, to the exclusion of other providers. (Id.) Plaintiff further alleges that in return, the provider is forced to "kick-back" large portions of the charges it collects from Plaintiff and other class members to the Defendants (hereinafter referred to as "the kickback scheme"). (Id.) Plaintiff alleges that the Agreements have resulted in the charging of unconscionable rates for phone services and illegal commissions paid to Defendants by the telephone service providers via the kickback scheme. (Compl. at ¶¶13-15.)

On March 17, 2000, Defendants removed this action pursuant to 28 U.S.C. §1441, alleging that this Court has original jurisdiction pursuant to 28 U.S.C. §1331. (Doc. No. 1.) Specifically, Defendants contend that Plaintiff's claims constitute a challenge to the rates approved by the Federal Communications Commission ("FCC"), and as such, are completely preempted by the Federal Communications Act ("FCA"). (Id. at ¶10.)

---

[1] A copy of the Complaint is attached to Defendants' Notice of Removal. (Doc. No. 1.)

2

On April 12, 2000, Plaintiff filed a Motion to Remand, requesting that this Court remand the case to the Chancery Court for Davidson County, Tennessee. (Doc. No. 12.) Plaintiff argues that this action is not removable because she has not asserted federal causes of action on the face of the Complaint, but rather has alleged state-law causes of action under the TCPA and Tennessee common law. (Doc. No. 13 at 2.) Insofar as Defendants claim that the FCA preempts Plaintiff's claims, Plaintiff argues that this is simply an invocation of a preemption defense which, as a matter of law, cannot confer removal jurisdiction on this Court. (Id.) Further, Plaintiff argues that removal jurisdiction pursuant to the complete preemption doctrine is also lacking because the FCA does not provide relief for her claims. Plaintiff asserts that this action challenges Defendants' exclusive dealing arrangements and the illegal kickbacks it collects, and does not challenge the reasonableness of any tariff or rate charged by any service provider. (Id.) In support of this argument, Plaintiff notes that she has not named any telephone service providers as defendants. (Id.)

In Response, Defendants contend that removal is proper in this case under the doctrine of complete preemption. (See generally Doc. No. 20.) Defendants argue that the Complaint challenges the rates that Plaintiffs must pay when they voluntarily accept collect calls from incarcerated callers. (Id. at 2.) In support, Defendants point to eleven claims in the Complaint wherein Plaintiffs allege that the exclusive contracts have the effect of imposing "*unconscionable and excessive*" rates upon Plaintiffs who accept collect phone calls. (Id. at 2-3) (citing Compl. at ¶¶1, 3, 5, 6, 7, 11, 13, 14, 15, 21, 24). Defendants break Plaintiff's Complaint down into four main claims: (1) the rates are excessive; (2) Plaintiffs are subject to discriminatory rates because they pay more for collect calls than members of the general public; (3) Plaintiffs challenge the

3

exclusivity of the telephone services contracts; and (4) Plaintiffs challenge the commission provisions of the telephone service contracts. (Id. at 9.) Thus, Defendants argue that because Plaintiff's claims essentially challenge the rates, services, and practices of the telephone service provider, this suit is governed by Sections 201 to 205 of the FCA which regulate and grant the FCC plenary authority over telephone companies' interstate rates, services, and practices. (Id. at 5-6.) Defendants argue that the fact that Plaintiff chose not to sue the telephone service provider, but instead sued Defendants, should not alter the Court's analysis in applying complete preemption. (Id. at 10.)

Defendants argue that the specific preemptive effect of the FCA is reflected in the filed tariff or rate doctrine. (Id. at 6-8.) Specifically, Defendants argue that a suit concerning the validity or reasonableness of charges or conditions set forth in a FCC approved tariff is governed by the FCA. (Id. at 9.) Defendants argue that although Plaintiff cloaks her Complaint in terms of a challenge to the *agreements* between Defendants and telephone service providers, the terms of these agreements are based upon the tariffs that the telephone service providers have filed with the FCC. (Id.)

And finally, Defendants contend that the filed rate doctrine forbids courts from awarding any relief, including damages, that would result in customers effectively being charged a rate different from the rate approved by the FCC. (Id. at 10.) Defendants note that Plaintiff has requested both injunctive relief and restitution for "the entire amounts they collected under the agreements and contracts . . . ." (Id.) (quoting Compl. at 6-7.) Defendants argue that the effect of this requested relief would be to lower the rates and commission practices authorized by the tariffs approved by the FCC. (Id.)

4

## II. LEGAL STANDARD

A civil action may be removed from state to federal court if it could have been brought
originally in federal court. 28 U.S.C. §1441(a) (West 2000). If a court lacks diversity jurisdiction
over an action, as in the instant case, the action must "arise under the Constitution, laws or
treaties of the United States." 28 U.S.C. §1331 (West 2000). In a motion to remand, the party
who removed the action to federal court bears the burden of establishing federal jurisdiction.
Wilson v. Republic Iron & Steel Co., 257 U.S. 92, 97 (1921); W. Watson v. First Union Nat'l
Bank of S.C., 837 F.Supp. 146, 147-48 (D.S.C. 1993).

In construing a motion to remand, a court "must assume as true all factual allegations of
the complaint. It also must resolve any uncertainties as to the current state of controlling
substantive law in favor of the plaintiff." Batoff v. State Farm Ins. Co., 977 F.2d 848, 851-52 (3d
Cir. 1992); see also Alexander v. Electronic Data Sys. Corp., 13 F.3d 940, 949 (6th Cir. 1994).
Removal statutes must be strictly construed and any doubts about whether removal is proper must
be resolved in favor of state court jurisdiction. See In re Business Men's Assur. Co. of America,
992 F.2d 181, 183 (8th Cir. 1993). Furthermore, because motions to remand are generally
unreviewable, see 28 U.S.C. § 1447(d) (West 2000), a court must carefully consider whether a
party's claim for access to a federal forum is properly invoked. See Zuniga v. Blue Cross and
Blue Shield of Michigan, 52 F.3d 1395, 1400 (6th Cir. 1995) (holding that "'[i]f a district court
remands a case based on the grounds listed in [Section 1447(c)], this [C]ourt cannot review the
remand order.' This is true even if the district court's decision to remand is 'based on erroneous
principles or analysis'") (internal citations omitted).

5

### A.    Well-Pleaded Complaint Rule

Determination of whether removal to federal court is proper is made by reference to the "well-pleaded complaint" rule. Franchise Tax Board v. Constr. Laborers Vacation Trust, 463 U.S. 1, 9-10 (1983). Under this doctrine, the "plaintiff is master of his complaint, and the fact that the wrong asserted could be addressed under either state or federal law does not ordinarily diminish the plaintiff's right to choose a state law cause of action." Alexander, 13 F.3d at 943; see also Louisville & Nashville R.R. v. Mottley, 211 U.S. 149 (1908). In other words, a "defendant cannot, merely by injecting a federal question into an action that asserts what is plainly a state law-claim, transform the action into one arising under federal law, thereby selecting the forum in which the claim shall be litigated." Warner v. Ford Motor Co., 46 F.3d 531, 534 (6th Cir. 1995). It is "settled law that a case may not be removed to federal court on the basis of a federal defense, including the defense of [federal] pre-emption, even if the defense is anticipated in the plaintiff's complaint, and even if both parties concede that the federal defense is the only question truly at issue." Caterpillar, Inc. et al. v. Williams, et al., 482 U.S. 386, 392 (1987). The federal question must appear on the face of the plaintiff's well-pleaded complaint, and/or the federal right or immunity must be an essential element of plaintiff's cause of action. Franchise Tax Board, 463 U.S. at 9-10.

### B.    Complete Preemption

The doctrine of "complete preemption" constitutes an exception to the "well-pleaded complaint" rule. If Congress intends the preemptive force of a federal statute to be so extraordinary that it "completely preempts" an area of state law, any complaint alleging claims under that area of state law is presumed to allege a claim arising under federal law. See

6

<u>Metropolitan Life Ins. Co. v. Taylor</u>, 481 U.S. 58, 63-65 (1987) (stating that the doctrine "converts an ordinary state common law complaint into one stating a federal claim for purposes of the well-pleaded complaint rule"); <u>Avco Corp. v. Aero Lodge No. 735</u>, 390 U.S. 557 (1968). The Sixth Circuit has held that the congressional intent "necessary to confer removal jurisdiction upon the federal district courts through complete preemption is expressed through the creation of a parallel federal cause of action that would 'convert' a state cause of action into the federal action for purposes of the well-pleaded complaint rule." <u>Strong v. Telectronics Pacing Systems, Inc.</u>, 78 F.3d 256, 261 (6ᵗʰ Cir. 1996) (<u>citing</u> <u>Warner</u>, 46 F.3d at 534-35).

A complaint may thus be removed to federal court and will be treated as alleging a federal cause of action, notwithstanding that on its face, the complaint alleges only a state-law cause of action. <u>Hanks v. General Motors Corp.</u>, 26 F.Supp.2d 977, 979 (E.D. Mich. 1998). However, complete preemption is applied in very limited circumstances and courts should be "reluctant to find" that a federal statute completely preempts state law. <u>Warner</u>, 46 F.3d at 534. Indeed, the Supreme Court has found only two federal statutes to have this broad preemptive scope: §301 of the Labor Management Relations Act, <u>Avco, supra</u>, and §502(a)(1)(B) of the Employee Retirement Income and Security Act, <u>Metropolitan Life, supra</u>.

### III. DISCUSSION

Given that Plaintiff's Complaint does not state a federal claim on its face, this action may not be removed unless Defendant can establish that the exception of complete preemption applies. Defendants contend that the essence of Plaintiff's claims is a challenge to the rates contained in FCC-approved tariffs which class members must pay when they accept collect calls from incarcerated callers. As such, Defendants argue that Plaintiff's claims are subject to complete

**7**

preemption under the FCA which provides a parallel federal cause of action for claims attacking

FCC-approved rates.

A.    The Federal Communications Act, 47 U.S.C. §§151-613

The purpose of the FCA is to "regulat[e] interstate and foreign commerce in

communication by wire and radio so as to make available . . . to all people of the United States a

rapid, efficient . . . communication service with adequate facilities at reasonable charges." 47

U.S.C. §151.  As such, the FCA provides that "[a]ll charges, practices, classifications, and

regulations for and in connection with such communication service, shall be just and reasonable,

and any such charge, practice, classification, or regulation that is unjust or unreasonable is

declared to be unlawful." 47 U.S.C. § 201(b).  Section 207 of the Act provides that any person

alleging harm by a carrier under Section 201(b) may make a complaint to the FCC under Section

208 or bring suit in federal court. 47 U.S.C. §207.  Section 205 allows the FCC to enjoin a

telephone company from continuing unlawful rates, services, or practices.  In addition, a party

may recover damages under Sections 207-209 of the Act.

Section 203 of the FCA requires all common carriers of interstate and foreign

telecommunications to file a schedule of their charges, as well as the classifications, practices, and

regulations affecting such charges. 47 U.S.C. §203.  A common carrier may only charge the rates

listed in the schedule, otherwise known as a tariff. 47 U.S.C. §203(c)(1).  Under the filed tariff

doctrine, deviation from the filed rate is not permitted upon any pretext, and carriers and

customers are charged with notice of it and must abide by it unless the FCC finds it unreasonable.

Funeral Financial Services, Ltd. v. NOS Communications, Inc., 17 F.Supp.2d 781, 782 (N.D. Ill.

1998); see also Louisville & Nashville R. Co. v. Maxwell, 237 U.S. 94 (1915) (describing the filed

tariff doctrine in the context of the Interstate Commerce Act upon which the FCA's filed tariff

doctrine is based). Ignorance or misquotation of rates is not an excuse for paying or charging

either less or more than the rate filed. Id. Thus, "[t]he filed tariff doctrine simply forbids a

regulated entity to charge rates for its services other than those properly filed with the appropriate

federal regulatory authority, and therefore forbids courts from ordering relief that would

contravene the filed tariff." Kutner v. Sprint Communications Co. L.P., 971 F.Supp. 302, 305-

306 (W.D. Tenn. 1997) (internal quotations omitted).

Because "allowing attacks on filed rates in judicial proceedings would entangle the

courts in the rate making process and undermine the regulatory agency's authority," the Supreme

Court has withdrawn the power to alter the filed rate from the courts. Id. at 306 (citing Montana-

Dakota Util. Co. v. Northwestern Public Serv. Co., 341 U.S. 246, 251 (1951) (holding that the

"right to a reasonable rate is the right to the rate which the Commission files or fixes . . . [and] the

courts can assume no right to a different one")). "This restriction precludes not only the award of

remedies that actually change the filed rate, but also of remedies that would have that effect." Id.

(citing Arkansas Louisiana Gas Co. v. Hall, 453 U.S. 571, 579 (1981) (holding that "[i]t would

undermine the congressional scheme of uniform rate regulation . . . to award as damages a rate

never filed with the Commission and thus never found to be reasonable within the meaning of the

Act")). Because a tariff filed with a federal agency "is the equivalent of a federal regulation, . . . a

suit to enforce it, and even more clearly a suit to invalidate it as unreasonable under federal law,

. . . arise under federal law." Cahnmann v. Sprint Corp., 133 F.3d 484, 488 (7th Cir. 1998)

(internal citations omitted). Where a claim challenges the validity or reasonableness of a filed

rate, federal law occupies the whole field, displacing state law. Id. at 489. Accordingly, such

9

claims may be properly removed under the doctrine of complete preemption. See Cahnmann, 133 F.3d at 488 (holding that the FCA extinguishes the right to bring a state-law suit that challenges a tariff), Funeral Financial Services, supra.

Thus, Congress' intent to completely preempt the area of rate-setting and to vest the FCC with primary jurisdiction to determine the validity of tariffs is clear in light of the FCA's incorporation of the filed tariff doctrine. In addition, Congress has expressed the necessary intent to confer removal jurisdiction through complete preemption by creating a parallel federal cause of action via Section 207 of the FCA that would "convert" a state-law cause of action into a federal action for purposes of the well-pleaded complaint rule. Accordingly, if Plaintiff's claims challenge the validity of the rates contained in FCC-approved tariffs, and thus fall within the scope of the federal cause of action, they necessarily arise under federal law and are subject to removal via the complete preemption doctrine. See Franchise Tax Board, 463 U.S. at 24 (noting that "[i]t is well-settled that "if a federal cause of action completely preempts a state cause of action any complaint that comes within the scope of the federal cause of action necessarily 'arises under' federal law").

B.    Analysis

Plaintiff argues that this case does not challenge the validity or reasonableness of rates charged by a common carrier, and as such, is not subject to removal under the complete preemption doctrine. (Doc. No. 13 at 1-2.) Rather, Plaintiff contends that her claims challenge Defendants' actions of entering into exclusive dealing arrangements with telephone service providers and receiving "kick-backs" from the service providers. (Id.) Plaintiff further argues that the FCA does not offer a parallel federal remedy for her claims because the FCA does not apply to the Defendants who are not common carriers, but rather are in the business of prison

10

management. (Id. at 6) (noting that Sections 207 and 208 of the FCA only provide federal claims for actions undertaken by common carriers). Moreover, Plaintiff argues that the FCA does not provide remedies for the damages caused by Defendants' actions. (Id. at 6-7.)

A court may examine the entire record to determine if the real nature of a plaintiff's claim is federal, notwithstanding the plaintiff's characterization to the contrary, when the plaintiff has, by "artful pleading," attempted to defeat defendant's right to a federal forum. See Federated Dep't Stores, Inc. v. Moitie, 452 U.S. 394, 397 n.2 (1981). A complainant cannot "avoid federal jurisdiction simply by omitting from the complaint federal law essential to his claim, or by casting in state law terms a claim that can be made only under federal law." Harper v. San Diego Transit Corp., 764 F.2d 663, 666 (9th Cir. 1985). A complaint that is "artfully pleaded" to avoid federal jurisdiction may be recharacterized as one arising under federal law. Franchise Tax Board, 463 U.S. at 22-23.

Upon review of the record in this case, the Court finds that the true gravamen behind Plaintiff's Complaint is a challenge to the reasonableness of the rates charged by the phone companies. Although Plaintiff chose not to sue the phone companies and she is correct that the FCA provides federal remedies only for actions taken by common carriers, a review of the Complaint reveals that the true essence of her claims is a challenge to the reasonableness of the rates contained in the tariffs filed with the FCC.[2] In determining whether a complaint challenges an FCC-approved rate, courts look both to the nature of the claim as well as to the relief sought. See Cahnmann, 133 F.3d at 488-89, 490 (holding that because the principal relief sought via

---

[2] Defendants have provided a copy of a tariff filed with the FCC by one of the phone companies which includes the FCC-approved rate for collect phone calls. (Doc. No. 27, Ex.A at 30.)

11

plaintiff's fraud claim was damages to compensate plaintiff for an increase in the original rate occasioned by the filing of an amended tariff, fraud claim sought to attack the validity of the amended tariff and as such, was completely preempted); Funeral Financial Services, 17 F.Supp.2d at 782-83 (holding that where relief sought is damages for overcharging, claim is preempted by federal law); In Re Comcast Cellular Telecommunications Litigation, 949 F.Supp. 1193, (E.D. Penn. 1996) (holding that "the remedies sought by the Plaintiffs further demonstrate that the true gravamen behind their allegations is a challenge to Comcast's rates and the way in which they are applied").

Claim I alleges that the Defendants' "illegal agreement with and defendants' receipt of kickbacks from telephone service providers constitute unfair and deceptive acts and practices affecting the conduct of trade and commerce," in violation of the Tennessee Consumer Protection Act ("TCPA"). (Compl. at ¶20.) The Complaint alleges that "[a]s a result of those exclusive arrangements and the kickbacks CCA requires to be paid to it, Plaintiff and the other consumers who must accept those collect call charges pay unconscionable connection fees and per-minute charges to speak to their loved ones, family members and friends who are held in [Defendants'] facilities. At the same time, CCA has collected millions of dollars in illegal kickbacks and other payments as a result of its unfair and deceptive acts in violation of the [TCPA] . . . ." (Compl. at ¶15.) The Complaint reveals that Plaintiff's theory as to how Defendants' "unfair or deceptive acts or practices affect[ed] the conduct of any trade or commerce," Tenn. Code Ann. §47-18-104, is that Defendants' engaging in the exclusive service agreements had the effect of raising the rates charged by the phone companies to an unconscionable and excessive amount. Indeed, the Complaint alleges that in order "[t]o comply

12

with that kickback requirement and to maintain their contract, the telephone providers charge excessive and unconscionable rates for calls made to Plaintiff and the other Class members." (Compl. at ¶13.) Thus, a court determining this claim would have to determine whether the rates were unconscionable or excessive, and if so, whether the phone companies raised the rates as a result of the kickback requirement. As such, an essential element of Plaintiff's state-law claim attacks the reasonableness of the FCC-approved tariff.

Moreover, a review of the damages alleged by Plaintiff and of her requested relief reveals that Claim I is really challenging the reasonableness of the rates charged by the phone companies. Plaintiff alleges that due to the Defendants' violations of the TCPA, she and the class "have been injured and damaged by paying more for telephone services than they would pay absent defendants' illegal conduct and agreements . . . ." (Compl. at ¶21.) Plaintiff seeks recovery of "three times the damages sustained by virtue of defendants' violation of the [TCPA] . . .," the damages being the difference between what Plaintiff paid for collect calls and what she would have paid absent Defendants' alleged illegal conduct. (Compl. at ¶¶B, 21.) Thus, a court would be required to determine what would constitute a reasonable rate absent the complained of activity in order to determine the extent of Plaintiff's damages. Such a determination would undermine the congressional scheme of uniform rate regulation. Moreover, the Court would be essentially reimbursing Plaintiff for a portion of the FCC-approved rate which she paid to the phone company. As such, Claim I arises under federal law.

With respect to Claim II, the Complaint alleges that in exchange for the exclusive right to provide telephone services at the Defendants' facilities, the Defendants have required phone companies to pay them a substantial portion of the rates collected from consumers such as

13

Plaintiff in the form of a kickback, resulting in the phone companies charging excessive and unconscionable rates for calls made by inmates to Plaintiff and other class members. (Compl. at ¶¶12, 13-15.) Thus, Claim II alleges that Defendants were unjustly enriched "via the kickbacks received as a portion of the unconscionable charges paid by Plaintiff and the Class for collect services for calls [sic] they received." (Compl. at ¶24.) Plaintiff seeks "restitution [of] the entire amounts [Defendants] collected under the agreements and contracts . . . ." (Compl. at ¶C.)

Because the Complaint alleges that the commissions paid to the Defendants were derived from the allegedly excessive rates which the phone companies charged as a result of the kickback requirement, the restitution which Plaintiff seeks is essentially a reimbursement of a portion of the FCC-approved rate which she paid to the phone company. If a court were to find for Plaintiff on this claim, it would be required to find that the FCC-approved rate was unreasonable insofar as it was inflated by the phone companies in order to pay the Defendants a kickback. Moreover, by reimbursing Plaintiff for a portion of the rate which she paid, the court would effectively be lowering the FCC-approved rate. Given that this claim seeks to invalidate the FCC-approved rate as unreasonable, it arises under federal law and thus, is subject to removal.

Thus, because Plaintiff is essentially challenging the FCC-approved rates charged by the phone companies, the FCA provides her with a parallel federal remedy. By giving Plaintiff a federal action against the phone companies, the FCA enables Plaintiff to challenge the reasonableness of the phone companies' rates, which is the true gravamen behind her Complaint. Plaintiff's argument that the FCA does not provide a remedy for the damages caused by Defendants' actions because Defendants are not common carriers is meritless; the FCA provides the precise remedy for the relief which Plaintiff seeks, namely a reimbursement for being

14

overcharged. The fact that Plaintiff sued the Defendants instead of the common carriers cannot mask the true nature of Plaintiff's claims challenging the validity of the rates contained in the tariffs and seeking to recover money allegedly paid in excess of a reasonable rate. Thus, because Plaintiff is challenging the reasonableness of the rates, her claims arise under federal law. The Court finds that Plaintiff's claims were properly removed under the complete preemption doctrine, and that it has original jurisdiction over this action.

## CONCLUSION

Based upon the foregoing discussion, the Court finds that Plaintiff's claims against Defendants are subject to removal under the complete preemption doctrine. Thus, Plaintiff's Motion to Remand, (Doc. No. 12), is hereby DENIED. Accordingly, Plaintiff's Motion for an award of fees and expenses, (Doc. No. 12), is also DENIED.

An Order consistent with this Memorandum shall be entered contemporaneously.

Entered this the _____ day of _____, 2000.

JOHN T. NIXON
UNITED STATES DISTRICT COURT

15

# IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF TEXAS
### BROWNSVILLE DIVISION

| | | |
|---|---|---|
| **MARIA McKENZIE, on behalf of herself** | § | **CIVIL ACTION NO. B-00-148** |
| **and all others similarly situated,** | § | **JURY** |
| | § | |
| **Plaintiffs,** | § | |
| | § | |
| **v.** | § | |
| | § | |
| **WORLDCOM, INC. a/k/a MCI** | § | |
| **WORLDCOM, INC. a/k/a MCI** | § | |
| **WORLDCOM COMMUNICATIONS,** | § | |
| **INC.,** | § | |
| | § | |
| **Defendant.** | § | |

## ORDER DENYING PLAINTIFF'S MOTION TO REMAND

Defendant MCI WORLDCOM Communications, Inc.'s Objections to the Magistrate Judge's Report and Recommendation came on for consideration. The Court, having reviewed the objections, is of the opinion that they should be sustained and the recommendation should not be adopted. The Court finds that it has jurisdiction of this matter pursuant to 28 U.S.C. §§ 1331 and 1337 and the Federal Communications Act of 1934, 47 U.S.C. §§ 151 et seq.

It is therefore ORDERED that Plaintiff's Motion to Remand is hereby DENIED.

SIGNED this _____ day of _____, 2001.


_____

UNITED STATES DISTRICT JUDGE


**ORDER DENYING PLAINTIFF'S MOTION TO REMAND** - Page 1